Theresa J. Barta, Esq. CA State Bar No. 150995
Mark J. Peacock, Esq., CA State Bar No. 156625
LAW OFFICES OF MARK PEACOCK
5160 Campus Drive
Newport Beach, California 92660
Telephone: (949) 660-7762
Fax: (949) 660-7764
Email: mark@markpeacocklaw.com
Website: www.markpeacocklaw.com
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ESTATE OF MANUEL A. GONZALEZ JR., et al.,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**RODERICK Q. HICKMAN; JEANNE S. WOODFORD; SUZAN HUBBARD, JOHN DOVEY, LORI DICARLO; CAROL RODDY; GREG MELLOTT, and DOES 1 THROUGH 50, INCLUSIVE,**<br><br>**Defendants.** | **CASE No. ___________________**<br><br>**(U.S. Dist. Court Central District Case No.: CV- 05-00660 MMM (RCx))**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS**<br><br>**[Filed Concurrently with the Joint Statement of Discovery Dispute and the Declaration of Theresa J. Barta.]**<br><br>**Date: ____________, 2006**<br>**Time: ________ a.m./p.m.**<br>**Crtroom: ______** |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**YOU ARE HEREBY NOTIFIED THAT** on ____________**, 2006** at ____ **a.m./p.m.** or as soon thereafter as the matter can be heard before the Honorable _______, United States Magistrate/ Judge presiding, in **Courtroom ______,** located at 501 "I" Street, Sacramento, California, Plaintiffs will, and hereby do, move for an order to compel the State of California Department of Corrections to comply with subpoenas issued to it by the Plaintiffs on July 24, 2006, pursuant to F.R.C.P. Rules 45 and 37(a)(2)(B).

Specifically, the Plaintiffs seek ***an order compelling the State of California to comply with its obligations of 1) producing all responsive documents requested in the subpoenas, and 2) designating one or more officers, directors, managing agents, or other persons who consent to testify on its behalf to each of the matters set forth in the subpoenas, which were served by Plaintiffs on July 24, 2006 (a copy of which are attached collectively as Exhibit "A" to the "Joint Statement of Discovery Dispute" for the convenience of the court), within three days of the Court's order.***

Plaintiffs further seek ***an order compelling the State of California to comply with its obligations of providing testimony by each of the persons it designates in response to each of the matters set forth in the subpoenas which were served by Plaintiffs on July 24, 2006 (a copy of which are attached collectively as Exhibit "A" to the "Joint Statement of Discovery Dispute" for the convenience of the court), within two weeks of the Court's order.***

Plaintiff brings this motion pursuant to F.R.C.P. Rules 45 and 37(a)(2)(B). Plaintiffs' motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed Joint Statement of Discovery Dispute and the Declaration of Theresa J. Barta, and all papers, pleadings and papers on file herein, and further argument and evidence as may be presented.

Dated: August 31, 2006

Respectfully Submitted,

LAW OFFICES OF MARK J. PEACOCK

By: ______________________

MARK J. PEACOCK

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION AND SUMMARY OF CASE

This case is brought pursuant to 42 U.S.C. Section 1983, and seeks damages for the death of Manual A. Gonzales, Jr., a correctional officer at California Institution for Men ("CIM.") A more detailed statement of the facts is included in the "Joint Statement of Discovery Dispute" filed concurrently herewith, and is incorporated herein by reference.

The case is set for trial on December 5, 2006 in the U.S. District Court for the Central District of California before the Honorable Judge Margaret Morrow. The Discovery Cut-off date is September 29, 2006.

In June, 2006 Plaintiffs served subpoenas, issued from the U.S. District Court for the Eastern District of California, on the California Department of Corrections ("CDCR") seeking the production of documents and appearance of witnesses pursuant to Fed. Rule Civ. Proc. 45 and 30(b)(6). The documents and testimony pertain directly to issues relevant to the Plaintiffs' proof of their case (*e.g.*, Defendants' classification and housing of the inmate who killed Officer Gonzales at CIM, operational and security policies and procedures of CIM, and the Defendants' refusal to provide Officer Gonzales with a protective vest.)

The CDCR objected to the subpoenas in their entirety, and have refused to 1) produce any of the documents requested, 2) designate any persons as required by F.R.C.P. 30(b)(6), and 3) produce any persons for deposition. Although the parties tried to informally resolve their dispute, their efforts were unsuccessful.

## II.

## F.C.P.R. RULES 45 AND 37 AUTHORIZE THIS COURT TO ENTER APPROPRIATE RELIEF.

Rule 45(c)(2)(B) provides:

> "If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production."

Rule 37(a)(2)(B) provides:

> "[I]f . . an entity fails to make a designation under Rule 30(b)(6) . . .the discovering party may move for an order compelling . . . a designation. . . in accordance with the request."

Here, the CDCR has objected to the Plaintiffs' subpoena for documents and has failed and refused to make a designation as required by F.R.C.P. 30(b)(6). The documents and testimony sought by the Plaintiffs' subpoenas are central to the Plaintiffs' proof of their 1983 claim. Without the crucial documents, and testimony, from the CDCR, Plaintiffs cannot

prepare their case for trial. Knowing this, the CDCR has stonewalled the discovery process by asserting meritless objections, with the specific intent of disrupting Plaintiffs' trial preparation. Consequently, and for the reasons set forth in the concurrently filed "Joint Statement of Discovery Dispute," Plaintiffs bring this motion to compel.

## III.

## CONCLUSION

Plaintiffs respectfully urge this Court to enter an appropriate Order compelling the CDCR to cooperate immediately, and produce all responsive documents as well as designate appropriate witnesses, so that discovery can proceed.

Respectfully Submitted,

DATED: August 31, 2006

LAW OFFICES OF MARK J. PEACOCK

By: ______________________________
MARK J. PEACOCK

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 5160 Campus Drive Newport Beach, California 92660.

On, September 6, 2006, I served the foregoing documents described as: **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

BILL LOCKYER
DAVID ADIDA
STATE OF CALIFORNIA DEPARTMENT OF JUSTICE
Ronald Reagan Building
300 South Spring St.
Suite 1702
Los Angeles, CA 90013
Fax: 213-897-2810
Attorney for Defendants, Roderick Q. Hickman, Jeanne S. Woodford, Suzan Hubbard, John Dovey and Wendy Still

MICHAEL BELL, ESQ.
La Follette, Johnson, et al
3403 Tenth Street
Suite #820
Riverside, CA 92501
Fax: 951-275-9249
Attorney for Defendants, Lori DiCarlo, Greg Mellott and Carol Roddy

Antonio Ibarra, Esq.
7211 Painter Avenue
Whittier, CA 90602
Attorney for Plaintiffs

___ (BY MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Newport Beach, California.

_X_ (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee.

___ (VIA TELECOPY - PER AGREEMENT) I caused the above-mentioned document(s) to be telecopied to the parties named on the attached list.

Executed on September 5, 2006, at Newport Beach, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

MARK J. PEACOCK

Signature

Theresa J. Barta, Esq. CA State Bar No. 150995
Mark J. Peacock, Esq., CA State Bar No. 156625
LAW OFFICES OF MARK PEACOCK
5160 Campus Drive
Newport Beach, California 92660
Telephone: (949) 660-7762
Fax: (949) 660-7764
Email: mark@markpeacocklaw.com
Website: www.markpeacocklaw.com
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ESTATE OF MANUEL A. GONZALEZ JR., et al.,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**RODERICK Q. HICKMAN; JEANNE S. WOODFORD; SUZAN HUBBARD, JOHN DOVEY, LORI DICARLO; CAROL RODDY; GREG MELLOTT, and DOES 1 THROUGH 50, INCLUSIVE,**<br><br>**Defendants.** | **CASE No. ___________________**<br><br>**(U.S. Dist. Court Central District Case No.: CV- 05-00660 MMM (RCx))**<br><br>**DECLARATION OF THERESA J. BARTA FILED IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS**<br><br>**[Filed Concurrently with Plaintiffs' Notice of Motion and Motion to Compel Compliance with Subpoenas and the Joint Statement of Discovery Dispute]** |

# DECLARATION OF THERESA J. BARTA

I, Theresa J. Barta, declare:

1. I am an attorney admitted to practice in this state, and before this Court. I am also an attorney for Plaintiffs, ESTATE OF MANUAL A. GONZALES JR., GUSTAVO GONZALES, MANUAL GONZALEZ, MARK GONZALES and STEVEN GONZALES, in the above-entitled action. This declaration is submitted in support of Plaintiff's Motion to Compel Compliance with Subpoenas, filed concurrently herewith.

2. On or about June 16 and June 23, 2006, Plaintiffs served subpoenas on the Department of Corrections seeking the production of documents and appearance of witnesses pursuant to Fed. Rule Civ. Proc. 45 and 30(b)(6). The documents and testimony pertain directly to the Defendants' classification and housing decisions for Blaylock while at CIM, operational and security policies and procedures, and the Defendants' refusal to provide Officer Gonzales with his protective vest.

3. On July 7, 2006, Deputy Attorney General David Adida (attorney for five of the Defendants) served written objections, on behalf of the California Department of Corrections ("CDCR"), to all of the requests for documents and deposition testimony. The objections asserted, among other objections, that the categories in the subpoenas were over broad, ambiguous and did not describe with sufficient particularity the documents and information being sought.

4. In response to the State's objections, I engaged in two separate telephone conferences with Mr. Adida, during which we discussed each request and category in each subpoena in order to narrow the scope of the requests and clarify them so as to address the objections that the requests were "over broad, ambiguous and did not describe with sufficient

particularity the documents and information being sought." I confirmed each of our telephonic conferences in writing. (Attached hereto as Exhibits "A" and "B" respectively are my confirming letters to Mr. Adida.) Thereafter, I revised the subpoenas to reflect our discussions (*i.e.,* to specifically narrow the scope of the requests, and clarify what documents and testimony the Plaintiffs are specifically seeking.) Plaintiffs then re-served the *revised* subpoenas on July 24, 2006.

5. The State of California now asserts that Plaintiffs have subpoenaed "in excess of 20 individuals." The State, however, has only objected to the Plaintiffs' *two* subpoenas issued pursuant to F.R.C.P. 30(b)(6). Although each of those subpoenas identify several categories of testimony being sought, many of the categories overlap. Based on the overlap of the subject matter of the categories, I believe that it is likely that only a few individuals will need to be designated to provide testimony in response to the subpoenas.

6. Finally, contrary to the claims of the CDCR, in its "Contentions/Arguments and Legal Authority" (*i.e.,* that Plaintiffs could not articulate, during meet-and-confer communications, how the items relating to the protective vest or defendants' personnel files are relevant), I discussed those issues specifically with Mr. Adida (including, the arguments set forth in the Plaintiff's Contentions/Arguments and Legal Authority Re: Protective Vests and Defendants' Employment Records.)

I hereby declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on August 30, 2006 at Newport Beach, California.

THERESA J. BARTA

# EXHIBIT A

LAW OFFICES
MARK J. PEACOCK
5160 CAMPUS DRIVE
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE (949) 660-7762
FACSIMILE (949) 660-7764
EMAIL mark@markpeacocklaw.com
WEBSITE www.markpeacocklaw.com

ADDITIONAL OFFICES
WESTLAKE VILLAGE, CA
BAKERSFIELD, CA

July 20, 2006

David Adida, Esq.
State of California - Department of Justice
Ronald Reagan Building
300 S. Spring Street
Suite 1702
Los Angeles, CA 90013

Re: Gonzalez v. Hickman et al

Dear David,

This letter will confirm our "meet and confer" yesterday afternoon, July 19, 2006, with regard to the subpoenas issued to Department of Corrections and Rehabilitations and the California Institution of Men.

Subpoenas to Dept. of Corrections and California Institution of Men

First, we have agreed to re-issue the subpoenas to the Department of Corrections and Rehabilitations and the California Institution of Men to address certain of the objections you raised in your "Written Objections to Deposition Subpoenas and Inspection or Copying of Any and All of the Designated Materials" and "Additional Written Objection to Deposition Subpoenas and Inspection or Copying of Any and All of the Designated Materials" (each of which we received on July 11, 2006.)

In that regard, on behalf of your clients and the State of California, you agreed that service of the re-issued subpoenas is acceptable by faxing each of the subpoenas to your office on Monday, July 24, 2006 and that personal service to the Department of Corrections in Sacramento is not necessary. We further agreed that where documents are sought, the date of production of such documents will be Tuesday, August 8, 2006. The dates for appearance of "persons most knowledgeable" ("PMKs") will be set for the following week.

You also informed me, and agreed, that the subpoenas should be issued *only* to the Department of Corrections and Rehabilitations in Sacramento, California (and not the California Institution of Men); and that, such subpoenas would encompass the production of

any documents or PMKs located at the California Institution of Men in Chino. In that regard, even though the deposition subpoenas will command appearance in Sacramento (so as to comply with FRCP 45), we agreed that if any of the individuals designated as a PMK reside in Southern California, their depositions will be taken at the Law Offices of Mark Peacock, located at 5160 Campus Drive, Newport Beach, California.

Witness Fees

With regard to witness fees, you informed me that it is your clients' position that because the PMKs are state employees that a particular California Government Code section governs; you agreed to provide me with that cite. Please do so today so that I have time to look into the matter before we meet and confer tomorrow, and so that we can include proper witness fees when we re-issue the subpoenas.

Issue of "Sovereign Immunity"

We also discussed your objection and contention that the State of California is not required to comply with the subpoenas because they have not waived their sovereign immunity under the 11th Amendment. You informed me that it is your clients' position that such immunity applies to not only lawsuits filed against the State, but also to subpoenas issued to the State compelling the production of documents and/or appearance of witnesses. Although you did not provide me with any legal authority to support that position during our telephone conversation, you did agree to send such authority if there is any. Please forward that to me immediately so that we may consider the validity of your clients' objection.

In that same regard, you acknowledged that the information sought by the subpoenas we issued is not "immune" from disclosure under the 11st Amendment, but rather, the process we used of "subpoenaing" the information is the problem; *i.e.*, you informed me that the information should be sought pursuant to the Freedom of Information Act.

Assertion of Privileges

The objections assert generally and without specificity that the subpoenas "require disclosure of privileged or otherwise protected and sensitive matters." As we discussed, and you did not dispute, the federal rules require that:

> "[when a] witness withholds information on a claim of privilege or other pr otection, they *must state the claim expressly and support it with sufficient documentation to enable demanding party to contest the claim.*"

Thus, for each of the documents that will be withheld from production you agreed to provide me a privilege log identifying the information/documents being withheld and the precise privilege and/or claim of protection that is the basis for the refusal to produce.

As an example, we specifically discussed Blaylock's C-File, and you indicated that although there is not a problem with producing the file itself, there may be specific documents withheld or produced only after the parties have entered into a protective order (e.g., Blaylock's medical records or records relating to the specifics of crimes he committed.) You did agree, however, that there would be no problem producing documents relating to Blaylock's classification, discipline, and other matters relating to what happened at CIM and other institutions relative to Blaylock that are in his C-File.

Specific Categories of Requested Documents re: Vests

We discussed line-by-line each of the categories of documents that were requested in the subpoena issued on June 14, 2006 to the California Institution of Men for the production of documents on July 14, 2006, which contained 23 categories. We did this to address the objections that the subpoena was allegedly "abusively drawn" and "undue burden, annoyance, oppression and expense," and to determine which, if any, of the categories needed to be more specifically written.

In that regard, you agreed that each of the following categories were not objectionable as written so long as the time frame for the request is limited to the time before and up to the date of the incident on January 10, 2005: 1,3 through 10, 13 through 15, and 19. You further agreed that with further clarification as we discussed (including the limited time frame), each of the following categories would not be objectionable as overbroad or causing undue burden, etc.: 12,16 through18, and 20 through 23.

Further Meet and Confer

Finally, we agreed to complete our meet and confer – to discuss the remaining requests for documents and categories of testimony of PMKs – this Friday, July 21, 2006 at 9:30 a.m. (I will contact you.) Specifically, we agreed to discuss line-by-line the categories in each of the following two subpoenas:

1) That issued to the California Department of Corrections and Rehabilitations (in Sacramento) on June 23, 2006, with a production date of July 24, 2006 and 43 categories of documents identified; and

2) That issued to the California Department of Corrections and Rehabilitations (in Sacramento) on June 23, 2006, and seeking the appearance of a PMK on July 31, 2006 with regard to 32 topics.

I look forward to completing our discussion and appreciate your cooperation in these matters. If this letter does not comport with your understanding of our conversation and agreements, please notify me immediately in writing.

Very truly yours,

THERESA J. BARTA, Esq.
/tfn

cc: Michael Bell, Esq.

# EXHIBIT B

LAW OFFICES
MARK J. PEACOCK
5160 CAMPUS DRIVE
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE (949) 660-7762
FACSIMILE (949) 660-7764
EMAIL mark@markpeacocklaw.com
WEBSITE www.markpeacocklaw.com

ADDITIONAL OFFICES
WESTLAKE VILLAGE, CA
BAKERSFIELD, CA

July 24, 2006

David Adida, Esq.
State of California - Department of Justice
Ronald Reagan Building
300 S. Spring Street
Suite 1702
Los Angeles, CA 90013

Re: Gonzalez v. Hickman et al

Dear David,

This letter will confirm our "meet and confer" this past Friday morning, July 21, 2006, with regard to the subpoenas issued to Department of Corrections and Rehabilitations and the California Institution of Men.

Witness Fees

First, thank you for providing me with the government code sections your client is relying upon as authority for demanding witnesses for each individual PMK at a rate of one day's full pay, *i.e.*, Govt. Code Sections 68096.1 and 68097.2. Those code sections, however, do not apply to the subpoenas issued to the Department of Corrections pursuant to FRCP 30. This action is pending in federal court on the basis of a federal question. Accordingly, the federal rules govern discovery procedures and matters, including, issuance of subpoenas and payment of witness fees. Moreover, neither of the sections you have cited apply to the witnesses who will appear as designees of the Department of Corrections.

Govt. Code § 68096.1 applies only when an "employee of a local agency" is obliged by a subpoena. Local agency is defined by subsection (f) as "a city, county, city and county, special district, redevelopment agency, or any other political subdivision of the state." It does not include the State's Department of Corrections.

With regard to Govt. Code § 68097.2, that section only applies when a "peace officer [as defined by section 830 of the Penal Code], firefighter, state employee, trial court employee or county employee, is obliged by a subpoena issued pursuant to Section 68097.1." Those employed by the Department of Corrections are *not* employees of

Department of Justice, the Department of the California Highway Patrol, or any of the other categories of subpoenaed peace officers in Section 68097.1 (*see, Fox v. State Personnel Board* (1996) 49 Cal.App.4th 1034, 57 Cal.Rptr.2d 279); nor does Section 68097.1 apply to the subpoenas we issued. Hence, the provisions of Section 68097.2 are inapplicable, because the are conditioned on Section 68097.1.

If your client is going to continue to demand payment of witness fees pursuant to Cal. Govt. Code Sections 68096.1 and/or 68097.2, then we will need to include a section in the Motion to Compel. Please let me know *by tomorrow morning, Tuesday, July 25, 2006* so that I know whether to prepare and include such a section in the Joint Stipulation.

<u>Motion to Compel</u>

We regard to the Motion to Compel, we agreed that each of the following issues will be addressed in the motion:

1) Your client's contention that the State of California does not need to comply with the subpoenas, because it has not waived its sovereign immunity under the 11st Amendment.

2) Your client's refusal to produce documents, or provide testimony by PMKs, regarding the vests based on its contention that issues regarding the vest are irrelevant and outside the scope of issues remaining in the case (after the court's ruling on the Motion to Dismiss.) Your client did agree, however, that documents and testimony relating to the issue of whether or not Gonzales would have died had he been wearing the vest will be produced and are not objectionable (i.e., documents and testimony regarding the characteristics of the vest, its make, model, how it was made, what it's supposed to do, how it should be maintained, etc. ) You also confirmed that it is undisputed that Gonzales' vest had been ordered and received by CIM, but had not yet been distributed to him at the time he was killed on January 10, 2005.

3) The Defendants' Employment Records.

4) Blaylock's Medical and Psychiatric Records.

5) Policies and Procedures of CIM, and the Department of Corrections (as more specifically described below by specific categories); based your client's contention that the disclosure of such information could jeopardize the health and safety of correctional officers and inmates.

6) Any documents or testimony which may be withheld on the grounds of an asserted privilege or confidentiality, and which will be disclosed in a privilege log to be provided to me. In the regard, please provide me with the privilege log by the end of the day Tuesday, July 25, 2006 so that I can determine whether we need to include any particular items in the motion or whether we can agree to a protective order to cover the production or testimony.

Finally, with regard to the motion to compel, you agreed to waive, as to all subpoenas, any assertion or objection that the subpoenas must be issued by the U.S. District Court for the Eastern District of California. Not only did you confirm that your client will waive such objections, but you also agreed that the subpoenas could be properly served on you by fax. Accordingly, we agreed that the motion to compel should be filed here in the Central District before Magistrate Chapman, as required by Judge Morrow's local rules.

Specific Categories in the Subpoenas

On Friday morning we also discussed each of the categories of documents and testimony requested in the subpoena issued on June 23, 2006 to the California Department of Corrections and Rehabilitation for the appearance of a PMK and the production of documents on July 31, 2006. The subpoena included 32 categories of testimony and 31 categories of documents to be produced. Our discussion was for the specific purpose of addressing the objections that the subpoena was allegedly "abusively drawn" and "undue burden, annoyance, oppression and expense," and to determine which, if any, of the categories needed to be more specifically written, or with regard to which your client is completely refusing to produce documents.

A. PMK Categories

You agreed, that unless testimony was objectionable as privileged (e.g., medical information, confidential or otherwise ordered not to be disclosed by the criminal court) that each of the following categories do not need further clarification: 1 through 10 (except as to the medical information contained in Blaylock's C-file as requested in category no. 2), 12 through 14, 20, 21, 22, 24, and 25 through 30. You requested that I further clarify category 32 (which I will do), and you informed me that we would need to bring a motion to compel on each of the following categories: 9 through 11 to the extent they seek medical or psychiatric information of Blaylock, 15 through 17, 23, and 31.

With regard to each of the following categories, you agreed that your client would provide testimony if we enter into a protective order to keep the testimony confidential: 18 and 19.

B. Documents Requested

As for the documents requested, you agreed that each of the following categories did not need further clarification and were not objectionable (with the exception of those documents which may be withheld on the grounds of an asserted privilege, e.g., medical information, and which will be described on a privilege log to be produced by you): 1 through 7, 10, 13 through 15, 18, 19, 23 through 28, 30 and 31.

You requested further clarification as to categories nos. 8, 9, 16,17, 21 and 22, which I agreed to.

With regard to categories nos. 11, 12, 20 and 29, you indicated that these documents would need to be addressed in the motion to compel.

Defendants' Depositions

We also discussed that in order to proceed with the Defendants' depositions, we must have all of the documents and testimony requested by the subpoenas which are the subject of our meet and confers (last Wednesday and Friday.) Inquiry of the Defendants during their depositions will include the issues and documents requested in the subpoenas, since such issues/documents are directly relevant and necessary for the Plaintiffs' case.

Your client's objections and refusal to produce documents or witnesses (in compliance with the subpoenas) necessitates the filing of a motion to compel. Taking into account the time necessary to prepare the Jt. Stipulation (motion to compel), the soonest possible hearing date for the motion will be Wednesday, August 30, 2006. Hence, as we discussed, the depositions of the Defendants will need to be continued until after that date.

During our discussion regarding such continuance, you informed me that your clients will not further seek to continue their depositions, nor will they request any change of the dates of the depositions once we have selected mutually agreeable dates. I informed you that the only reason we would need to further continue the depositions is in the event, which I am hoping won't be the case, that your clients (including the State of California) delays, or further refuses, to produce the documents or PMK testimony sought by the subpoenas.

Joint Stipulation of Discovery Dispute re: Motion to Compel

Pursuant to Local Rule 37–2.1, we are required to file a stipulation signed by both counsel along with the Notice of Motion to Compel. Rule 37–2.2 governs the procedure preparing the Joint Stipulation. In that regard, please be advised that you will have 5 court days from your receipt of plaintiff's draft portion of the stipulation to deliver back to me (personally or by fax) your client's portion. (I intend to get the plaintiffs' draft to you by Thursday.) I suggest that we e-mail our respective portions so as to expedite the preparation of the Joint Stipulation. After I receive your client's portion of the Joint Stipulation, it will be included in the Joint Stipulation and returned to you for signature. The Rule requires that you "sign [the Joint Stipulation] and *return it by hand to [me], no later than the end of the next business day*." I will then file the Stipulation with the Notice of Motion.

Thank you in advance for your cooperation in this regard. If this letter does not comport with your understanding of our conversation and agreements, please notify me immediately in writing.

Very truly yours,

THERESA J. BARTA, Esq.
/tfn

cc: Michael Bell, Esq.

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 5160 Campus Drive Newport Beach, California 92660.

On, September 6, 2006 I served the foregoing documents described as: **DECLARATION OF THERESA J. BARTA FILED IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

BILL LOCKYER
DAVID ADIDA
STATE OF CALIFORNIA DEPARTMENT OF JUSTICE
Ronald Reagan Building
300 South Spring St.
Suite 1702
Los Angeles, CA 90013
Fax: 213-897-2810
Attorney for Defendants, Roderick Q. Hickman, Jeanne S. Woodford, Suzan Hubbard, John Dovey and Wendy Still

MICHAEL BELL, ESQ.
La Follette, Johnson, et al
3403 Tenth Street
Suite #820
Riverside, CA 92501
Fax: 951-275-9249
Attorney for Defendants, Lori DiCarlo, Greg Mellott and Carol Roddy

Antonio Ibarra, Esq.
7211 Painter Avenue
Whittier, CA 90602
Attorney for Plaintiffs

__ (BY MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Newport Beach, California.
X (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee.
__ (VIA TELECOPY - PER AGREEMENT) I caused the above-mentioned document(s) to be telecopied to the parties named on the attached list.

Executed on September 5, 2006 at Newport Beach, California.
I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

MARK J. PEACOCK

Signature

Theresa J. Barta, Esq. CA State Bar No. 150995
Mark J. Peacock, Esq., CA State Bar No. 156625
LAW OFFICES OF MARK PEACOCK
5160 Campus Drive
Newport Beach, California 92660
Telephone: (949) 660-7762
Fax: (949) 660-7764
Email: mark@markpeacocklaw.com
Website: www.markpeacocklaw.com
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ESTATE OF MANUEL A. GONZALEZ JR., et al.,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**RODERICK Q. HICKMAN; JEANNE S. WOODFORD; SUZAN HUBBARD, JOHN DOVEY, LORI DICARLO; CAROL RODDY; GREG MELLOTT, and DOES 1 THROUGH 50, INCLUSIVE,**<br><br>**Defendants.** | **CASE No. ____________________**<br><br>**(U.S. Dist. Court Central District Case No.: CV- 05-00660 MMM (RCx))**<br><br>**JOINT STATEMENT OF DISCOVERY DISPUTE RE: PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS**<br><br>**[Filed Concurrently with Plaintiffs' Notice of Motion and Motion to Compel Compliance with Subpoenas]**<br><br>**[Declaration of Theresa J. Barta also filed concurrently herewith.]** |

# TABLE OF CONTENTS


I. STATEMENT OF THE CASE . . . . . 1

II. SUMMARY OF DISCOVERY DISPUTE AND CONFERENCES OF COUNSEL . . . . . 5

III. DISCOVERY IN DISPUTE AND THE CONTENTIONS AND LEGAL AUTHORITY OF THE PARTIES REGARDING EACH ISSUE . . . . . 6

A. SOVEREIGN IMMUNITY . . . . . 6

DISCOVERY AT ISSUE RE: SOVEREIGN IMMUNITY . . . . . 6

CDC'S OBJECTIONS RE: SOVEREIGN IMMUNITY . . . . . 6

1. PLAINTIFFS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: SOVEREIGN IMMUNITY . . . . . 7

2. DEPARTMENT OF CORRECTIONS' CONTENTIONS/ CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE:SOVEREIGN IMMUNITY . . . . . 10

A. THE ELEVENTH AMENDMENT PREVENTS THE ENFORCEMENT OF FEDERAL SUBPOENAS DIRECTED AT THE STATE OF CALIFORNIA . . . . . 10

B. THE CASE PLAINTIFFS ARE RELYING UPON IS CLEARLY DISTINGUISHABLE . . . . . 15

B. DOCUMENTS AND FRCP 30(b)(6) TESTIMONY RE: PROTECTIVE VESTS . . . . . 17

DISCOVERY AT ISSUE RE: PROTECTIVE VESTS . . . . . 17

CDC'S OBJECTIONS RE: PROTECTIVE VESTS . . . . . 20

1. PLAINTIFFS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: PROTECTIVE VESTS . . . . . . . . 30

A. The Trial Court Has *NOT* Made Findings of Fact or Conclusions of Law . . . . . . . . . . . . . . . . . . . . . . . . 31

B. The Information Regarding the Vests is Relevant . . . . . 32

2. DEPARTMENT OF CORRECTIONS' CONTENTIONS/ ARGUMENTS AND LEGAL AUTHORITY RE: PROTECTIVE VESTS . . . . . . . . . . . . . . . . 36

A. PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . 36

B. DOCUMENTS RELATED TO THE CONTRACT TO PROVIDE, BIDS REGARDING, PAYMENT FOR, COMMUNICATIONS REGARDING, AND THE ISSUANCE OF PROTECTIVE VESTS ARE NOT RELEVANT TO PLAINTIFFS' SUBSTANTIAL DUE PROCESS CLAIMS . . . . . . . . . . . 39

C. PLAINTIFFS' ARGUMENTS THAT THE DOCUMENTS RELATED TO THE PROTECTIVE VESTS ARE RELEVANT TO PLAINTIFFS' SUBSTANTIAL DUE PROCESS CLAIMS ARE MISPLACED . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

C. DEFENDANTS' EMPLOYMENT RECORDS . . . . . . . . . . . . . . . . . . 44

DISCOVERY AT ISSUE RE EMPLOYMENT RECORDS . . . . . . . . 44

CDC'S OBJECTIONS RE: EMPLOYMENT RECORDS . . . . . . . . . 44

1. PLAINTIFFS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: DEFENDANTS' EMPLOYMENT RECORDS . . . . . . . . . . . . . . . . . . . . . . . . . 46

2. DEPARTMENT OF CORRECTIONS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: DEFENDANTS' EMPLOYMENT RECORDS . . . . . . . . . . . . . . . . . . . . . . . . . 49

3. DEFENDANTS LORI DICARLO, GREGORY MELLOTT AND CAROL RODDY CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY . . . . . 53

D. WITNESS FEES . . . . . 55

DISCOVERY AT ISSUE RE: WITNESS FEES . . . . . 55

CDC'S OBJECTIONS RE: WITNESS FEES . . . . . 55

1. PLAINTIFFS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: WITNESS FEES . . . . . 55

2. DEPARTMENT OF CORRECTIONS' CONTENTIONS/ ARGUMENTS AND LEGAL AUTHORITY RE: WITNESS FEES . . . . . 56

**Exhibit "1":** Plaintiff's Subpoenas (which are at issue in this motion)

**Exhibit "2":** The State of California's "Written Objections to Subpoenas"

**Exhibit "3":** Trial Court's "Order Denying Defendants' Motions to Dismiss"

## JOINT STATEMENT RE: DISCOVERY DISPUTE

## I.

## STATEMENT OF THE CASE

This case, brought pursuant to 42 U.S.C. Section 1983, seeks damages for the death of Manual A. Gonzelas, Jr., a correctional officer at California Institution for Men ("CIM.")

Plaintiffs allege that Defendants, Roderick Hickman, Jeanne Woodford, Suzan Hubbard, John Dovey, Wendy Still, Lori DiCarlo, Carol Roddy and Gregory Mellott (hereinafter referred to collectively as "Defendants"), were each responsible for supervising, administering, monitoring, commanding, overseeing and controlling the operation and management of CIM, and were responsible for the safety and security of employees at CIM. Defendants are sued in their individual capacity. In this case, the Plaintiffs allege that each of the Defendants participated in classification, placement, incarceration, and handling of inmate Jon Christopher Blaylock and in the creation, development, promotion, encouragement and advancement of dangerous conditions at CIM, and acted with deliberate indifference to known and obvious dangers that resulted in the tragic death of Officer Gonzales.

Correctional Officer Gonzales was fatally stabbed on January 10, 2005, on Tier 1 of Sycamore Hall at CIM, by inmate Jon Christopher Blaylock. At the time of the murder, Blaylock had been housed at CIM's reception center for more than six months awaiting permanent placement. Blaylock was initially incarcerated at CIM on June 23, 2004, after being convicted in the Los Angeles County Superior Court and sentenced to a 75-year prison term for attempted murder of a police officer.

Blaylock previously had been incarcerated twice for robbery with a firearm, the most recent for a 10-year term between 1993 and 2003. During his incarceration for that crime, Blaylock was found to be in possession of a weapon and transferred to the security housing unit ("SHU") at California State Prison, Corcoran. Thereafter, because he was deemed a security threat, Blaylock placed in a single cell on the walk-alone yard, and was classified as a Level IV inmate with a custody score of 376, indicating that he required confinement in a Level IV, 180-design prison – with external and internal armed coverage, the most secure configuration of the State's Level IV prisons. Thereafter, Blaylock was released from prison in 2003

When Blaylock arrived at the CIM reception center in June 2004, he was placed, in what Plaintiffs allege, was a general population cell at Sycamore Hall, and what Defendants allege was the highest level of security at CIM, except for administrative segregation. Blaylock remained there for nearly all of the seven months before he murdered Officer Gonzales, despite his classification as a Level IV inmate with 376 custody points. Within one month of arriving at CIM, Blaylock's Central File ("C-File") arrived. It contained unequivocal information that Blaylock had repeatedly been involved in incidents of violence toward or prison staff and other inmates, including possession and use of weapons, during his prior incarcerations.

Plaintiffs allege that knowing that Blaylock had violent propensities and was a serious and real danger to Officer Gonzales as well as other correctional staff, Defendants acted with deliberate indifference and placed Officer Gonzales at significant risk. Plaintiffs further allege that Defendants placed Blaylock in the general prison population (because of policies and practices that CIM and the Defendants engaged in), denied Officer Gonzales the use of a protective vest that had been ordered and individually fitted for him, and took other actions that created and increased the risk of danger to Officer Gonzales. Defendants deny these

allegations, and allege that they acted appropriately under the circumstances. Defendants further allege that the death of Officer Gonzales occurred because Officer Gonzales failed to follow written policy existing at CIM at the time of his murder.

On March 16, 2005, the Office of the Inspector General issued a report setting forth its findings of a special review that was conducted into the death of Officer Gonzales. The report's findings referenced, what the Inspector General considered to be, the improper housing of Blaylock in general population despite his known propensities for violence, the fact that standard security protocols, policies and procedures at CIM were routinely violated, and that despite CIM's receipt of an individually fitted protective vest for Officer Gonzales in September 2004, the vest had not been issued to him, even four months later, when he was stabbed. Defendants assert that the report of the Inspector General is irrelevant to the issues and/or subject matter of this case and has nothing to do with the discovery dispute at issue here.

Plaintiffs are not seeking discovery from the Office of the Inspector General, but merely note the report, because it provides the factual basis for Plaintiffs' knowledge that certain documents are in the possession of the Department of Corrections which contain relevant information necessary to the Plaintiffs' proof of their case.

## II.
## SUMMARY OF DISCOVERY DISPUTE AND CONFERENCES OF COUNSEL

On or about June 16 and June 23, 2006 Plaintiffs served subpoenas on the Department of Corrections seeking the production of documents and appearance of witnesses pursuant to Fed. Rule Civ. Proc. 45 and 30(b)(6). The documents and testimony pertain directly to the Defendants' classification and housing decisions for Blaylock while at CIM, operational and security policies and procedures, and the Defendants' refusal to provide Officer Gonzales with his protective vest.

On July 7, 2006, Deputy Attorney General David Adida (attorney for five of the Defendants) served written objections, on behalf of the California Department of Corrections ("CDCR"), to all of the requests for documents and deposition testimony. The objections asserted that the categories were over broad, ambiguous and did not describe with sufficient particularity the documents and information being sought. In response, Plaintiffs' counsel engaged in two separate telephone conferences with Mr. Adida, during which they discussed each request and category in each subpoena and what changes to make, if any, in order to narrow the scope of the requests or clarify them. Plaintiffs thereafter revised the subpoenas and re-served them on July 24, 2006.

On August 7, 2006, Mr. Adida, on behalf of the CDCR, again served written objections. Written objections were also served by Michael Bell, attorney for the remaining three Defendants, on July 27, 2006, and by the Public Defender's Office, on behalf of Blaylock.

On August 10, 2006, Plaintiffs' counsel, Mr. Adida, Mr. Bell and Mr. Steven Mapes of the Public Defender's Officer engaged in a further telephonic conference in an attempt to resolve and narrow the issues that are in dispute regarding the subpoenas to the CDCR. All of the attorneys' agreed that it would be appropriate to enter into a Confidentiality/Protective Order with regard to certain of the documents and information being sought (*e.g.,* the Defendants' personnel files, the medical and psychiatric records of Blaylock.) The parties' agreement with regard to specific documents are noted within the pertinent sections below.

Despite the parties' agreements on some issues, their efforts to resolve all disputes were unsuccessful. Hence, Plaintiffs file (concurrently herewith) a motion to compel the CDCR to produce documents and provide testimony as sought in the two subpoenas which are the subject of this Joint Statement of Discovery Dispute.

The case is set for trial on December 5, 2006 in the U.S. District Court for the Central District of California before the Honorable Judge Margaret Morrow. Because the CDCR is not a party to the case, the subpoenas at issue here were issued from the Eastern District of California; thus, this motion is likewise brought in the Eastern District of California.

## III.

## DISCOVERY IN DISPUTE AND THE CONTENTIONS AND LEGAL AUTHORITY OF THE PARTIES REGARDING EACH ISSUE

### A. SOVEREIGN IMMUNITY

**DISCOVERY AT ISSUE RE: SOVEREIGN IMMUNITY:**

Pursuant to Local Rule 37-251(c) (3), which provides that "when a protective order is sought that is unrelated to specific, individual items, repetition of the original document is not required." Here, the State objects on the basis of its sovereign immunity to the Plaintiffs' deposition subpoena and subpoena duces tecum (in their entirety), on the grounds that the State has not waived its sovereign immunity.

Even though the Local Rules do not require the individual items to be repeated, the parties attach copies of each subpoena, collectively as Exhibit "A," for the court's convenience and reference. Similarly, the State's "Written Objections to Subpoenas" are attached as Exhibit "B."

**CDCR'S OBJECTIONS RE: SOVEREIGN IMMUNITY:**

General Objections Applicable to All Requests

The State of California is not subject to this discovery subpoena under the FRCP because it has not waived its sovereign immunity.

**1. PLAINTIFFS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: SOVEREIGN IMMUNITY**

Plaintiffs served subpoenas, pursuant to F.R.C.P. 45, on the California Department of Corrections seeking the production of documents and testimony, pursuant to F.R.C.P. 30(b)(6), with regard to various categories. The State of California objected to the subpoenas contending that it "is not subject to the discovery subpoena[s], because it has not waived its sovereign immunity." More specifically, the State's attorney has asserted that the sovereign immunity of the Eleventh Amendment applies not only to lawsuits against the state, but also to bar discovery proceedings against the state.

The State's position is contrary to case law directly on point (*Laxalt v. C.K. McClatchy* (1986) 109 F.R.D. 632) that supports enforcement of the Plaintiffs' subpoenas, as well as Ninth Circuit authority holding that the doctrine of sovereign immunity does *not* authorize the government to refuse to provide discovery in a civil action in federal court. [*Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d. 774 (9th Cir. 1994.]

In *Laxalt, supra,* a state agency moved to quash both a discovery subpoena and notice of deposition directed at it. The state agency claimed that it was immune, under the Eleventh Amendment, from the discovery demands because it was a nonparty state agency in a federal court action. The federal court, however, denied the motion and ruled that the Eleventh Amendment does not bar discovery. Specifically, the court stated:

> It is clear that the Eleventh Amendment establishes that a federal court has no jurisdiction over any lawsuit against a state. However, it has been construed to refer to assertions of liability on the state's part and claims for relief against it. [*Id.* at 634; citations omitted.]

Just as in *Laxalt*, the Plaintiffs here have served subpoenas for documents and deposition testimony on a nonparty state agency, the California Department of Corrections ("CDCR".) The CDCR asserts that it is immune from discovery, under the Eleventh Amendment, for the same reasons the state agency argued in *Laxalt.* Hence, for the same reasons the court enforced the subpoenas in *Laxalt*, this court should also compel the CDCR to comply with the Plaintiffs' subpoenas.

In the case at bar, the CDCR (during the meet and confer conferences between counsel) asserted that its refusal to comply with Plaintiffs' subpoenas was in reliance on two cases that involve federal subpoenas issued to nonparty *federal* (not state) agencies (*i.e., United States Environmental Protection Agency v. General Electric Co.* 197 F.3d 592 (2nd Cir. 1999) and *Comsat Corp v. Natl Science Foundation* 109 F.3d 269 (4th Cir. 1999). Each of those cases are not only inapposite, but lack authority in this circuit. The Ninth Circuit has specifically held that the doctrine of sovereign immunity does *not* authorize a nonparty federal agency to refuse to provide discovery in a civil action in federal court. [*Exxon Shipping, supra,* 778-779 (9th Cir. 1994), emphasis added.]

In *Exxon*, the plaintiff issued subpoenas to ten federal employees who worked for federal agencies. The federal government objected to the subpoenas arguing that because of its sovereign immunity, the federal officials could not be compelled to testify in an action not involving the United States. The government reasoned, just as the State argues in the case at bar, that the subpoenas, which seek relief against a federal official, constitute an "action" against the United States. The Ninth Circuit rejected that argument.

Since the Ninth Circuit's decision in *Exxon Shipping*, several other courts have followed suit. *See e.g., In re Fayed,* 91 F.Supp.2d 137, 138 (C.D. D.C. 2000) (the court held that sovereign immunity does not bar the enforcement of a federal subpoena to a nonparty federal agency); *Connaught Labs v. SmithKline Beecham*, 7 F.Supp.2d 477, 479 (D.Del. 1998) (court ruled that "in an action in federal court, sovereign immunity does not bar the federal court from enforcing a federal subpoena against the federal government"); and *Leyh v. Modicon, Inc.* 881 F.Supp. 420 (S.D. Ind. 1995) (holding that sovereign immunity did not bar enforcement of a subpoena issued to a non-party government agency.)

As set forth in the CDCR's "contentions and legal authority" below, the CDCR argues that requiring it to comply with the subpoenas would create an undue burden. The court in *Exxon* and several other cases, when presented with the same argument, pointed out that

> "[W]hile the courts have recognized the legitimacy of such concerns, they have also recognized the district court's ability to balance the government's concerns with the private litigant's interest in obtaining evidence by applying the limitations and protections contained in F.R.C.P. 26(c) and 45(c)(3) which give courts discretion to quash or modify subpoenas causing 'undue burden.'"

Here, the CDCR claims that "plaintiffs have requested the State to produce in excess of 20 individuals, and produce thousands of documents." The truth of the matter, however, is that Plaintiffs have limited their subpoenas to specific categories of documents within a particular period of time and scope after discussions and agreement with the CDCR's attorney, and the CDCR has agreed to produce documents to almost all categories requested. The deposition subpoenas have also been similarly limited in time and scope. [*See,* Para. 4 of the Declaration of Theresa J. Barta, filed concurrently herewith.]

Contrary to CDCR's claim that Plaintiffs' have subpoenaed "in excess of 20 individuals," the Plaintiffs have issued only two deposition subpoenas, and because of the overlap in the categories it is likely that only a few individuals will need to provide testimony. [*See,* para. 5 of Barta Decl.] Finally, the information being sought (*e.g.,* classification and housing of Blaylock, policies and procedures governing safety and security, and information relating to the vests ordered for Officer Gonzales) are all directly relevant and necessary for the Plaintiffs' case and proof that the Defendants acted with deliberate indifference to a known or obvious danger. To bar the Plaintiffs from obtaining such information from the CDCR in this case would, as the Ninth Circuit recited in *Exxon Shipping*, "violate the fundamental principle that the public has a right to every man's evidence. " [*Id.* at 779, internal citations omitted.]

For these reasons, the Plaintiffs respectfully submit that the CDCR's objection based on its claim of sovereign immunity be overruled.

## 2. DEPARTMENT OF CORRECTIONS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: SOVEREIGN IMMUNITY

### A. THE ELEVENTH AMENDMENT PREVENTS THE ENFORCEMENT OF FEDERAL SUBPOENAS DIRECTED AT THE STATE OF CALIFORNIA

The Eleventh Amendment to the Constitution provides:

> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." (U.S. Const., Amend. XI.)

"The Eleventh Amendment is an explicit limitation of the judicial power of the United States." (*Missouri v. Fiske*, 290 U.S. 18, 25 (1933).) "It deprives a federal court of power to decide certain claims against States that would otherwise be within the scope of Article III's jurisdiction." (*Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 119-20 (1984).) The bar of the Eleventh Amendment applies regardless of whether the claims arise under state, federal or common law. (*Pennhurst*, 465 U.S. at 100, 120-21; *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 251 (1985).)

A judicial proceeding is considered brought against the sovereign if the result could serve "to restrain the Government from acting, or to compel it to act." ( *Dugan v. Rank*, 372 U.S. 609, 620, 10 L. Ed. 2d 15, 83 S. Ct. 999 (1963) [citations and internal quotation marks omitted].) The enforcement of the subpoena duces tecum issued by the plaintiffs to the State of California would compel the State of California to act. Plaintiffs are not seeking deponents who will testify as to personal matters or will produce personal notes or documents. Plaintiffs' subpoenas will compel the State of California to produce for deposition a slew (not less than 20) of State employees, appearing in their official capacities, to testify about State of California matters, obtained by them while acting as State employees, and to produce thousands of State documents. On this basis, the subpoenas in question will, indeed, operate against one of the United States. Therefore, they are barred by sovereign immunity[1].

---

[1]In a similar context, regarding "'the power . . . to issue subpoenas to compel the attendance of witnesses and the production of documents, and to punish by fine and imprisonment,'" the court in *United States v. McLeod*, 385 F.2d at page 752, noted that "'When this power is asserted by a state sovereignty over the federal sovereignty, it is in contravention of our dual form of government and in derogation of the powers of the federal sovereignty.'"

The Ninth Circuit has held that a federal subpoena issued against a tribe could not be enforced because of sovereign tribal immunity. In *United States v. James*, 980 F.2d 1314 (9th Cir. 1992), the Indian defendant was prosecuted by the federal government for the crime of rape against another Indian pursuant to the grant of federal jurisdiction through the Indian Major Crimes Act, 18 U.S.C. § 1153. The defendant appealed his criminal conviction in part on the ground that the federal district court erred in quashing a subpoena that ordered the Quinault Tribe to release documents in its possession relating to the victim's alcohol and drug problem. (Id. at 1319.) In affirming the district court's order to quash the subpoena, the court noted that "Congress did not address implicitly, much less explicitly, the amenability of the tribes to the processes of the court in which the prosecution is commenced" when it granted federal criminal jurisdiction over individual Indians for certain crimes pursuant to 18 U.S.C. 1153. (Id. at 1319.) The court held that the Tribe was possessed of tribal immunity, and thus the federal court lacked the jurisdiction to enforce a subpoena against an unwilling sovereign even though the federal government had jurisdiction to enforce federal criminal laws against individual Indians. (Id. at 1319.)

The ruling in *James* is directly relevant to plaintiffs' motion. The *James* court correctly focused on the status of Indian tribes as sovereigns and denied the federal government the authority to compel disclosure of tribal documents. That the federal government may not pierce the sovereignty of Indian tribes, notwithstanding its constitutionally preemptive authority over Indian affairs, see U.S. CONST. art. I, { 8, should carry considerable weight in favor of the State of California's position[2].

---

[2]Following principles of comity and this Circuit's jurisprudence, comparison to cases denying enforcement of state court subpoenas against the United States government is also appropriate. (See *Quechan Tribe of Indians*, 595 F.2d at 1155 (noting that the "sovereign immunity of Indian tribes is similar to the sovereign immunity of the United States"). In *Elko County Grand Jury v. Siminoe*, 109 F.3d 554, 556 (9th Cir. 1997), the Ninth Circuit denied the enforcement of a subpoena against a Forest Service employee,

In *James*, the Quinault Tribe asserted sovereign immunity to "protect the Native American victim and to foster confidence in the tribe's Social and Health Services." The James Court held that the protection of tribal sovereignty justified the withholding of tribal documents even though they might be relevant to a federal criminal prosecution. (*James*, 980 F.2d at 1319-1320.) In the present case, the State of California asserts sovereign immunity to protect its right to self-government. The essential nature and effect of the plaintiffs' subpoenas will interfere with the conservation of government resources and the protection of orderly governmental operations. "If [agency] employees were routinely permitted to testify in private suits, significant loss of manpower hours would predictably result. . . . The doctrine of sovereign immunity confers such 'protection from direct judicial interference.'" (*Reynolds Metals Co. v. Crowther* , 572 F. Supp. 288, 290 (D.C. Mass. 1982), quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 704, 93 L. Ed. 1628, 69 S. Ct. 1457 (1949).) The State of California does not want its officials finding themselves spending all of their time doing nothing but complying with federal discovery orders, and thus have little opportunity to pursue important governmental responsibilities[3].

The State of California, like the federal government, has adopted certain polices and procedures regarding its jail system. These policies promote its interests, such as, among other things, accuracy of the records, the health and safety of inmates and its employees, and the confidentiality of its employees' personal information. These interests weigh more than

---

holding that principles of sovereign immunity bar a state court from enforcing a subpoena against the United States.

[3]In two subpoenas, the State of California has been requested to provide persons most knowledgeable to more than 50 categories of issues, and yet plaintiffs insist on paying only $90 for that burdensome endeavor. The State has also been requested to produce thousands of documents. There is no question that the absence of the State employees for even a short time from their duties will be disruptive.

plaintiffs' interest in investigating their underlying claims[4] in this case - something that could be accomplished through far less intrusive means than infringing on the State of California's sovereignty[5]. It is clear that the interests at stake for the State of California are equally as great as those at stake for the Quinault Tribe in James. Moreover, the plaintiffs' interest in this case--the investigation of its underlying claims--is not as great as the federal government's interest in the judicious criminal prosecution in James, and it is certainly not as great as protecting the State of California's sovereign immunity.

The bar of the Eleventh Amendment applies unless the State has waived its sovereign immunity. (*Florida Dep't of State v. Treasurer Salvors, Inc.*, 485 U.S. 670, 684 (1982).) The test for determining whether a state has waived its constitutional right to immunity from federal court suit is a stringent one. (*Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 239-41 (1985); *Micomonaco v. State of Washington*, 45 F.3d 316, 321 (9th Cir. 1995) ("Waiver will be found only where the State gives an unequivocal indication that it consents to suit in federal court.").) A state can consent to be sued in federal court through: 1) a constitutional or statutory provision expressly consenting to suit in federal court (*Atascadero*, 473 U.S. at 238 ftn.1); or 2) a knowing and unequivocal expression by a state official or representative who is authorized by state law to waive the state's Eleventh Amendment immunity. (*Ford*

---

[4]The trial court ruled that the only allegations in the complaint which could give rise to the defendants' liability are (1) the defendants' alleged improper assignment of Blaylock to a general population cell upon his arrival at CIM, and (2) the defendants' alleged return of Blaylock to the general prison population after he was detained in administrative segregation for purportedly assaulting another inmate.

[5]For example, plaintiffs seek the production of thousands of documents related to the protective vests that the State purchased for some of its correctional officers. Production would be unnecessarily burdensome because many of the documents originated from the manufacturer of the vests and may be discovered from that organization. Also, because the documents are available via FOIA or through the makers of the protective vests, compliance is unnecessary to prevent a miscarriage of justice.

*Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 465-67 (1945).) Here, there is no State constitutional or statutory provision consenting to suit in federal court. In addition, the State has taken no action whatsoever that would evidence its consent to jurisdiction in this proceeding.

## B. THE CASE PLAINTIFFS ARE RELYING UPON IS CLEARLY DISTINGUISHABLE

In *Laxalt v. C.K. McClatchy* (1986) 109 F.R.D. 632), the case cited by the plaintiffs, the District Court was faced with the issue of whether the Eleventh Amendment barred discovery requests against a nonparty state in civil litigation. The District Court found it did not, but the District Court found no cases on point to support its holding, and its analysis was limited to the following two sentences:

> "In *Florida Dept. of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 699, 73 L. Ed. 2d 1057, 102 S. Ct. 3304 (1982), the plurality approved the service of process on state officials to secure possession of artifacts held by them. The analogy to the instant proceedings, where inspection and copying of State records is all that is being sought, is apparent."

The plaintiff corporation in *Treasure Salvors*, *supra*, had located the wreck of a 17th-century Spanish galleon off the Florida coast, and the State of Florida immediately claimed ownership of the galleon and its artifacts pursuant to a Florida statute. Plaintiff filed a motion in the District Court for an order commanding the United States Marshal to arrest and take custody of the galleon artifacts and bring them within the court's jurisdiction. The District Court granted the motion and issued a warrant of arrest that was addressed to Florida state officials holding the property.

The State of Florida argued that the Eleventh Amendment barred exercise of the District Court's jurisdiction, but the district Court rejected this argument. The Supreme Court affirmed on the following grounds: (1) The Eleventh Amendment, while barring an action directly against the state itself or any agency thereof, does not bar an action against a state official that is based on the theory that the official acted beyond the scope of his statutory authority or, if within that authority, that such authority was unconstitutional; (2) Here, the process was not barred by the Eleventh Amendment as a direct action against the State, because it was directed only at state officials; (3) the relief sought by the plaintiff is not barred by the Eleventh Amendment because the warrant of arrest does not seek an attachment of state funds, and would impose no burden on the state treasury.

*Treasure Salvors* is clearly distinguishable, and of no relevance to the issue in this case, i.e., whether the Eleventh Amendment bars service of subpoenas on one of the United States to secure possession of its own documents and employees at a great cost to the State. As noted by the Supreme Court, *Treasure Salvors* is a case subject to the doctrine of *Ex parte Young*, 209 U.S. 123 (1908). The rule of *Ex parte Young* is premised on the axiom that state officials cannot evade responsibility when their conduct "comes into conflict with the superior authority of [the] Constitution." (Id. at 159.) The Supreme Court permitted the service of process on Florida state officials to secure possession of property they were illegally holding:

> "It is clear that the process at issue was directed only at state officials and not at the State itself or any agency of the State.... The process thus is not barred by the Eleventh Amendment as a direct action against the State."

In this case, the subpoenas are directed specifically at the State of California, and/or the California Department of Corrections and Rehabilitation, a State agency. Thus, the subpoenas are barred by the Eleventh Amendment as a direct action against the State of California.

In conclusion, enforcement of the subpoenas at issue must be denied because this court has no jurisdiction to compel the State of California to respond to plaintiff's subpoenas.

## B. DOCUMENTS AND FRCP 30(b)(6) TESTIMONY RE: PROTECTIVE VESTS

**DISCOVERY AT ISSUE RE: PROTECTIVE VESTS:**

**Plaintiffs' Subpoena to the California Department of Corrections (Requests for Production of Documents:**

1. Contract No. 1-03-84-09 and all supplements and amendments.
2. [Intentionally left blank.]
3. All Bids regarding Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.
4. All Notices of Intent relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.
5. All Order relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.
6. All Contract Delegation Orders relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.
7. All sizing sheets relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.
8. All instructions relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.
9. All requests for custom fitting relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.
10. All invoices relating to Contract No. 1-03-84-09 for the time period prior to and

including January 10, 2005.

11. Documents reflecting payments made for purchases relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.

12. All usage reports (quarterly or otherwise) relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.

13. Any reports (quarterly or otherwise) relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.

14. All Purchase Estimate Forms (STD.66) submitted for processing to the Department of General Services for the time period prior to and including January 10, 2005, and which relate to Soft Body Armor, Stab Resistant, Spike Level III (*i.e.,* protective vests which are the subject matter of Contract No. 1-03-84-09.

16. All Documents reflecting any communications (written or oral) between the California Department of Corrections and Rehabilitations (including, California Institution for Men) and All State Police Equipment (Vendor No. 625808).

17. All Documents, including, but not limited to advertising, marketing materials, correspondence, memorandums, relating to All State Police Equipment (Vendor No. 625808) for the time period prior to and including January 10, 2005.

18. All Documents, including, but not limited to, correspondence, memoranda, and documents reflecting any communication (written or oral) relating to Purchase Order No. 51312128 for the time period prior to and including January 10, 2005.

19. All Documents, including, for example, marketing or advertising materials, testing results, representations, communications, received from All State Police Equipment (Vendor 625808) relating to Soft Body Armor, Stab Resistant, Spike Level III (*i.e.,* protective vests which are the subject matter of Contract No. 1-03-84-09) for the time period prior to and including January 10, 2005.

20. All Documents reflecting any communications (written oral) between the California Department of Corrections and Rehabilitation and the California Correctional Peace Officers Association (CCPOA) regarding the individually fitted protective vests referred to in Section 7.05 of the Agreement between the State of California and CCPOA, including, for example, correspondence, memos and documents reflecting when and for whom the vests were ordered and fitted for the time period prior to and including January 10, 2005.

21. [Intentionally left blank.]

22. All grievances filed by any California correctional peace officer of the

California Correctional Peace Officers Association (CCPOA), or anyone on their behalf, regarding the Soft Body Armor, Stab Resistant, Spike Level III (*i.e.,* protective vests which are the subject matter of Contract No. 1-03-84-09) for the time period prior to and including July 10, 2005.

23. All Documents reflecting any communications (written or oral) regarding any grievance filed by a California correctional peace officer of the California Correctional Peace Officers Association (CCPOA), or anyone on their behalf, regarding the Soft Body Armor, Stab Resistant, Spike Level III (*i.e.,* protective vests which are the subject matter of Contract No. 1-03-84-09) for the time period prior to and including July 10, 2005.

24. Purchase Order No. 51312128 for peace officer of the California Correctional Peace Officers Association (CCPOA), or anyone on their behalf, regarding the Soft Body Armor, Stab Resistant, Spike Level III from All State Police Equipment.

25. All Stock Received Reports, including, but not limited to No. 12873, for the Soft Body Armor, Stab Resistant, Spike Level III (*i.e.,* protective vests which are the subject matter of Contract No. 1-03-84-09) for the time period prior to and including July 10, 2005.

26. All Documents reflecting any communications (written or oral) regarding the distribution, statewide and at all institutions, of individually fitted protective vests referred to in Section 7.05 of the Agreement between the State of California and CCPOA for the time period prior to and including July 10, 2005.

27. All Documents reflecting any communications (written or oral) regarding the availability for distribution, statewide and at all institutions, , of individually fitted protective vests referred to in Section 7.05 of the Agreement between the State of California and CCPOA for the time period prior to and including July 10, 2005.

28. All Documents relating to the distribution, at California Institution of Men, of individually fitted protective vests, referred to in Section 7.05 of the Agreement between the State of California and CCPOA for the time period prior to and including July 10, 2005.

29. All Documents relating to the California Department of Corrections and Rehabilitation's use, implementation, testing and distribution of individually fitted protective vests referred to in Section 7.05 of the Agreement between the State of California and CCPOA for the time period prior to and including July 10, 2005.

**CDCR'S OBJECTIONS RE: PROTECTIVE VESTS:**

General Objections Applicable to All Requests

1. The State of California is not subject to this discovery subpoena under the FRCP because it has not waived its sovereign immunity.
2. The subpoena is invalid because it was not accompanied by the appropriate witness fees, pursuant to Gov. Code § 68096.1, et. seq.; failure to simultaneously the appropriate tender witness invalidates the subpoena [sic].
3. The discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome or less expensive.
4. The burden or expense of the proposed discovery on the State of California, who has an interest in conserving scarce government resources, outweighs its likely benefit. Compliance with this subpoena, where plaintiffs are seeking a tremendous number of C.R.C.R. agency documents, and demand the presence of dozens of agency employees at depositions, will measurably strain agency resources and divert agency personnel from their official duties.
5. The internal C.D.C.R. documents sought by this subpoena are protected from disclosure by federal and state "official information," "self-critical analysis," "state secrets," and "deliberative process" privileges because they relate to state interests which are usually protected by these privileges, e.g., institutional security, privacy rights of citizens and inmates, encouragement of public cooperation, negotiations between state agencies and unions. Legitimate interests of the State will be adversely affected by the release of these documents.
6. This subpoena seeks information and documents, such as investigative reports not already produced by the parties in their disclosures in the hands of the District Attorney's Office, that pertain to pending criminal litigation to which the State of California is a party, and which cannot be released until the

pending litigation or claim has been finally adjudicated or otherwise settled.

**Request Nos. 1-7, 10-12, 21, 28**

In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. Further, the State objects on the ground that inmate Blaylock's personal or private information concerning his education, medical history, criminal or employment records, finger and voice prints, photographs of his presence, institutional summaries, social history reports, progress reports, educational, vocational and diagnostic reports, as well as his medical, psychiatric and psychological reports, criminal intelligence information and information of clinical reports, are confidential and their release would constitute an unwarranted invasion of his personal privacy.

**Request Nos. 8-9, 19**

Further objection is made on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further, these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive confidential information which would constitute an unwarranted invasion of the personal privacy of individuals that cooperated in the investigations in question.

**Request Nos. 13-18**

In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. Further, these requests impermissibly seek the production of sensitive, confidential information which would endanger the

safety of State employees. The documents are protected from disclosure by the "official information," "state secrets," and "deliberative process" privileges because they relate to state interests which are usually protected by these privileges, e.g., institutional security, privacy rights of citizens and inmates.

**Request Nos. 20-22, 26-27**

In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further, these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive confidential information which would endanger the safety of the state agency's personnel.

**Request Nos. 24-25**

In addition, the State of California objects to these requests on the ground they are abusively drawn: they subject the responding party to undue burden, annoyance, oppression and expense, and they fail to allow reasonable time for compliance. Further objection is made on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. These documents are protected from disclosure by federal and state "official information," "self-critical analysis," "state secrets," and "deliberative process" privileges because they relate to state interests which are usually protected by these privileges, e.g., institutional security, privacy rights of citizens and inmates. Finally, they seek the production of sensitive, confidential information which would endanger the safety of the state agency's personnel, as well as that of the inmates.

**Request Nos. 29**

In addition, the State of California objects to these requests on the

ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. Further, they seek the production of sensitive, confidential information which would constitute an unwarranted invasion of the defendants' personal privacy.

C.

SUBPOENA NAMING "CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATIONS" [Protective Vest PMK, Prod. Date of August 16, 2006, in Sacramento]

General Objections Applicable to All PMK categories

1. The State of California is not subject to this discovery subpoena under the FRCP because it has not waived its sovereign immunity;
2. The subpoena is invalid because it was not accompanied by the appropriate witness fees, pursuant to Gov. Code § 68096.1, et seq.; failure to simultaneously the appropriate tender witness invalidates the subpoena;
3. The discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;
4. The burden or expense of the proposed discovery on the State of California, who has an interest in conserving scarce government resources, outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Compliance with this subpoena, where plaintiffs are seeking a tremendous number of C.D.C.R. agency documents, and demand the presence of dozens of agency employees at depositions, will measurably strain agency resources and divert agency personnel from their official duties.
5. The internal C.D.C.R. information sought by this subpoena are protected from disclosure by the "official information," "self-critical analysis," "state secrets," and "deliberative process"

privileges because they relate to state interests which are usually protected by these privileges, e.g., institutional security, privacy rights of citizens and inmates, encouragement of public cooperation, negotiations between state agencies and unions. Legitimate interests of the State would be adversely affected by the release of this information.

**CATEGORY NO. 1**

In addition, the State objects on the ground that this category is overbroad, vague and ambiguous. The subpoena does not describe with reasonable particularity the matters on which examination is requested. Finally, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence.

**CATEGORY NOS. 2-6**

In addition, the State of California objects to these categories on the ground they are abusively drawn: they subject the responding party to undue burden, annoyance, oppression, and expense, and they fail to allow reasonable time for compliance. Further objection is made on the ground the information requested is irrelevant to the remaining matters at issue in this litigation, and its production will not lead to the discovery of relevant evidence. In addition, the State objects to these categories on the ground they seek information related to preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek information related to a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Further, they seek sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety. Finally, they do not describe with reasonable particularity the matters on which examination is requested.

**CATEGORY NO. 7**

In addition, the State of California objects to this category on the ground it is abusively drawn: it subjects the responding party to undue burden, annoyance, oppression, and expense, and it fails to allow reasonable time for compliance. Further objection is made on the ground the information requested is irrelevant to the remaining matters at issue in this litigation, and its production will not lead to the discovery of relevant evidence. In addition, the State objects to this category on the ground it seeks information contained in preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further this category impermissibly seeks the production of information that reveals a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Further, it seeks the release of sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety. Finally, it does not describe with reasonable particularity the matters on which examination is requested.

**CATEGORY NO. 8**

In addition, the State objects to this category on the ground it seeks information contained in preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further this category impermissibly seeks the production of information that reveals a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, it seeks the release of sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety.

**CATEGORY NOS. 9-10**

Further objection is made on the ground the information requested is irrelevant to the remaining matters at issue in this litigation, and its production will not lead to the discovery of relevant evidence. Further, it does not describe with reasonable particularity the matters on which examination is requested. In addition, the State objects to this category on the ground it seeks information

contained in preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Finally, this category impermissibly seeks the production of information that reveals a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy.

**CATEGORY NOS. 11-13**

In addition, the State of California objects to these categories on the ground they are abusively drawn: they subject the responding party to undue burden, annoyance, oppression, and expense, and they fail to allow reasonable time for compliance. Further objection is made on the ground the information requested is irrelevant to the remaining matters at issue in this litigation, and its production will not lead to the discovery of relevant evidence. Finally, they do not describe with reasonable particularity the matters on which examination is requested.

General Objections Applicable to All Requests to Produce documents

1. The State of California is not subject to this discovery subpoena under the FRCP because it has not waived its sovereign immunity;
2. The subpoena is invalid because it was not accompanied by the appropriate witness fees, pursuant to Gov. Code § 68096.1, et seq.; failure to simultaneously the appropriate tender witness invalidates the subpoena;
3. The discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;
4. The burden or expense of the proposed discovery on the State of California, who has an interest in conserving scarce government resources, outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Compliance with this subpoena, where plaintiffs are seeking a tremendous number of C.D.C.R. agency documents, and demand the presence of dozens of agency employees at

depositions, will measurably strain agency resources and divert agency personnel from their official duties.

5. The internal C.D.C.R. documents sought by this subpoena are protected from disclosure by the "official information," "self-critical analysis," "state secrets," and "deliberative process" privileges because they relate to state interests which are usually protected by these privileges, e.g., institutional security, privacy rights of citizens and inmates, encouragement of public cooperation, negotiations between state agencies and unions.

**REQUEST NOS. 1, 24**

In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence.

**REQUEST NOS. 3-14**

In addition, the State of California objects to these requests on the ground they are abusively drawn: they subject the responding party to undue burden, annoyance, oppression, and expense, and they fail to allow reasonable time for compliance. Further objection is made on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety.

**REQUEST NO. 15-18**

In addition, the State of California objects to these requests on the ground the

information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety.

**REQUEST NO. 19**

In addition, the State of California objects to this request on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence.

**REQUEST NO. 20**

In addition, the State of California objects to these requests on the ground they are abusively drawn: they subject the responding party to undue burden, annoyance, oppression, and expense, and they fail to allow reasonable time for compliance. Further objection is made on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety.

**REQUEST NO. 21-23, 25-29**

In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety.

**REQUEST NO. 30**

If the State is held not to be protected by sovereign immunity, the State will comply with this request, and will produce the vest to be viewed at a time that a mutually convenient for every one.

**1. <u>PLAINTIFFS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: PROTECTIVE VESTS</u>**

Plaintiffs seek documents and testimony relating to the individually fitted vests that were ordered and procured for Officer Gonzales and other correctional officers; a stab resistant vest that would have saved Officer Gonzales' life if he had been wearing it on January 20, 2005 – the day he was fatally stabbed by an inmate at California Institute of Men ("CIM") in Chino, California.

On September 9, 2004, three hundred and sixty-two (362) protective vests were delivered to CIM, including one specifically fitted and designated for Officer Gonzales. The protective vests were designed to prevent the exact type of injuries that were inflicted upon Officer Gonzales. Over four months later, the protective vests, including the one fitted and designated for Officer Gonzales, were still in the warehouse at CIM. Despite the obvious need for immediately issuing the vests, and because the vests could simply have been distributed to the designated officers upon their receipt, the fact the vests were still in the warehouse four months later means that someone made a decision to withhold, and refuse to distribute, the vests to Officer Gonzales and other correctional officers. Such refusal to distribute the protective vest to Officer Gonzales was a deliberate act that subjected Officer Gonzales to increased risk and obvious and known dangers.

The Department of Corrections ("CDCR") is refusing to produce documents and testimony regarding the procurement, distribution and other information about the vests, based on an objection that the information is irrelevant to the claims "remaining in the case." That objection, however, is based on the CDCR's false contention that the trial court has made findings of fact and conclusions of law in this case (*see* pages 36 & 40 of its argument below, where the CDCR states: "in response to the defendants' motion to dismiss the complaint, the

trial court *found*: . . ." and "the trial court has *already ruled* that [Gonzales'] failure to receive a protective vest cannot form the basis of liability." (Emphasis added.)

### A. **The Trial Court Has *NOT* Made Findings of Fact or Conclusions of Law**

On October 12, 2005, Defendants filed a motion to dismiss pursuant to F.R.C.P. 12(b)(6). Thereafter, the court issued an "Order Denying Defendants' Motions to Dismiss."[6] At no time, in either the Order, or otherwise, did the trial court ever make "findings of fact or conclusions of law." Rather, the court's Order simply set forth the facts and allegations of the complaint and engaged in a *analysis* of the legal sufficiency of the Plaintiffs' claims for purposes of deciding a Rule 12(b)(6) motion to dismiss. The trial court did *not* rule, or make findings, as to the Plaintiffs' claim regarding the protective vest, or any other issues.[7]

---

[6] Because both parties refer to the "Order Denying Defendants' Motions to Dismiss," a copy of the Order is attached hereto as Exhibit "C," for the convenience of the court.

[7] When a court makes "findings of fact and conclusions of law," it is specifically stated in its order or decision. [*See e.g., In re Duncan* 123 B.R. 383 (1991) (The judge wrote "[t]his memorandum opinion shall constitute my findings of fact and conclusions of law."); *Matter of Visioneering Const.* 661 F.2d 119 (1981) (Court found that the judge in his findings of fact and conclusions of law entered with his Order clearly stated that he was not making a finding regarding the truth of jurisdictional allegations.); *Nishiyama v. North Am. Rockwell Corp.* 49 F.R.D. 288 (1970) (On a motion to dismiss, the judge stated "[b]y reason of the foregoing Decision, Findings of Fact and Conclusions of Law, it is hereby ordered that defendant's Motion to Dismiss the Complaint be granted and that Plaintiff be given 30 days within which to file an Amended Complaint.")]

Moreover, F.RC.P. 52(a) provides that: "[f]indings of fact and conclusions of law are unnecessary in decisions of motions under Rule 12 . . . except as provided in subdivision (c) of this rule. Subdivision (c) provides:

> "If during a trial without a jury a party *has been fully heard on an issue* and the court finds against the party on the issue, the court may enter judgment as a matter of law against the party with respect to a claim . . Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule.

Here, the Plaintiffs' claim regarding the protective vests has not been fully heard, nor has the trial court made any findings of fact or rulings of law on the issue. In fact, a "court may not make fact findings of a controverted matter when ruling on a Rule 12(b)(6) motion." [*U.S. v. LSL Biotechnologies,* 379 F.3d 672, 700 (9th Cir. 2004).] In the case at bar, the issue regarding the vests is certainly controverted as evidenced by the CDCR's adamant refusal to produce any information on the subject matter.)

**B. <u>The Information Regarding the Vests is Relevant</u>**

In *Shoen v. Shoen,* 5 F.3d 1289 (9th Cir. 1993), the Ninth Circuit held that a non-party can be compelled to produce evidence regarding any matter "relevant to the subject matter involved in the pending action" or "reasonably calculated to lead to the discovery of admissible evidence." [*See also,* Fed.R.Civ.P. 26(b)(1).] The court explained that:

> "This broad right of discovery is based on the general principle that litigants have a right to 'every man's evidence' (citations omitted), and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth. [*Id.* at 1292.]

The protective vests, at issue here, are relevant, or at the very least reasonably calculated to lead to the discovery of admissible evidence, because they were designed to prevent the exact type of injury that was inflicted upon Officer Gonzales, a known and obvious danger. Further, because the vests should simply have been distributed to the designated officers upon their receipt, the reason why the vests were still in the warehouse four months later is relevant, or could lead to admissible evidence, showing that the Defendants acted with deliberate indifference to known or obvious dangers. Specifically, for example, the information sought will reveal why the vests were not immediately distributed to Officer Gonzales and others, (*i.e.,* whether the vests were intentionally withheld based on a policy or directive of CIM or the CDCR, or whether a decision was made by someone specifically to withhold the vests.)

The CDCR, in opposing this motion, argues that the trial court "ruled that the failure to receive a vest cannot form a basis of liability." That argument fails for several reasons. First, as detailed herein above, the trial court made no such ruling. Second, the issue is not a "failure to receive vest" or even a "failure to distribute,"[8] but the deliberate indifference of someone in refusing to distribute the vests to the correctional officers. Third, even if the refusal or failure to distribute the vests does not constitute an affirmative act on its own – which the Plaintiffs do not concede, but assert here only for the sake of argument – that fact is circumstantial evidence of a state of mind of deliberate indifference or conscious disregard, a necessary part of the Plaintiffs' case.

---

[8] Plaintiffs' counsel acknowledges that this language is part of the verbiage used in the complaint, and that the complaint in that regard may not be as artfully pled as it could have been. Nevertheless, the arguments asserted in this motion, and in this case, are based on *facts* asserted in the complaint, not the "phraseology" of the legal allegations.

First, the State argues that Plaintiffs' allegations regarding the vest are "omissions or a failure to act." That is incorrect. The Plaintiffs do not allege that the State failed to order or procure a vest for Officer Gonzales (one had actually been fitted and ordered for him), or failed to obtain the vest from the manufacturer, or simply did not get around to distributing the vests. Rather, the Plaintiffs allege that, because the vests were available and should have been distributed as a matter of course, some affirmative act (*i.e.,* a decision or some other interference) must have been taken to prevent the vests from being distributed.

Such facts and allegations are analogous to *Wood v. Ostrander,* 879 F.2d 583 (9th Cir. 1989) (where the court found a state trooper had acted with deliberate indifference for the plaintiff's safety by leaving her stranded alone at night in an area of high crime) and *Monfils v. Taylor,* 165 F.3d 511 (7th Cir. 1998) (where a 1983 claim was based on an officer's act of not preventing the release of a tape recording of an anonymous informant.) In each of those cases, the acts consisted of a "failure to do something," which the court found to be an act that increased an existing risk of danger. That is exactly what happened when some one, or more, prevented Officer Gonzales from receiving his vest; *i.e.,* they increased the existing risk of being stabbed by an inmate.

Plaintiffs believe that one, or more, of the Defendants issued a directive, or made a specific decision, to withhold the vests from the correctional officers at CIM. If that is true, one can only imagine the fury that will follow when that fact becomes known. For that reason, and others, Plaintiff believes that the CDCR is refusing to produce any documents or testimony regarding the protective vests.

Finally, even if the refusal or failure to distribute the vests does not constitute an affirmative act – which the Plaintiffs do not concede, but assert here only for the sake of argument – the facts would constitute circumstantial evidence of a deliberate indifference,

or conscious disregard, state of mind; something that is part of the proof in the Plaintiffs' case. [*See, L.W. v. Grubbs,* 92 F.3d 894, 900 (9th Cir. 1996) "plaintiff must show that [Defendants] .. acted with deliberate indifference to the known or obvious danger."] In discussing the element of "deliberate indifference," the Ninth Circuit, relying on other circuits, referred to "deliberate indifference" as a *state of mind.* [*Id.* at 898-899.]

It is well recognized that circumstantial evidence can be used to prove, or establish, a "state of mind," and specifically that of "deliberate indifference" in a 1983 action. [*See e.g., In re Ariba, Inc. Securities Litigation,* 2005 WL 608278 (2005); *Babb v. Calvo*, 2005 WL 1503930 (E.D. Cal. 2005); *Estate of Abdollahi v. County of Sacramento,* 405 F.Supp.2d 1194 (E.D.Cal. 2005); *Gibson v. County of Washoe, Nev.,* 290 F.3d 1175 (9th Cir. 2002) .]

In other words, Plaintiffs will establish that Defendants' acted with "deliberate indifference," by presenting facts and evidence that, when viewed in isolation may seem inconsequential or even irrelevant, but when taken together will constitute strong circumstantial evidence that the Defendants acted consciously, deliberately, and without regard for Officer Gonzales' safety. Such evidence, for example, will include the fact that Officer Gonzales was denied the protection of his personally fitted stab-resistant vest, when the vest was available, and should have been, distributed to him four months earlier.

Contrary to the claims of the CDCR in its opposing contentions below, each of these legal arguments and explanations of how the items relating to the protective vest are relevant, or would lead to admissible evidence, were discussed ad nauseam between Plaintiffs' counsel and the attorney for the State during meet and confer conferences. [See, para. 6 of Barta Decl.]

## 2. DEPARTMENT OF CORRECTIONS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: PROTECTIVE VESTS

### A. PROCEDURAL BACKGROUND

In this case, the Due Process Clause of the Fourteenth Amendment in its substantive guise is the sole potential basis for relief under section 1983. (*L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992) ("*Grubbs I*").)

In order to successfully state a due process violation, plaintiffs must show: (1) the defendants' act was directed toward a specific plaintiff (*see, e.g., Wood*, 879 F.2d at 590 (reasoning that the state's action "distinguished [the plaintiff] from the general public and triggered a duty of the police to afford her some measure of peace and safety"); (2) the government acted affirmatively, and not simply failed to act; (*see, e.g., Grubbs I*, 974 F.2d at 121 [requiring "affirmative conduct on the part of the state in placing the plaintiff in danger"]; *Munger*, 227 F.3d at 1086 [phrasing the inquiry as "whether [the state] did in fact affirmatively place [the plaintiff] in danger"]; (3) the government's act caused the harm, rather than merely increased the risk; (*see, e.g., Grubbs I*, 974 F.2d at 121 [finding state-created danger where the state's action "created an opportunity for [the inmate] to assault [the plaintiff] that would not otherwise have existed"]; *Penilla*, 115 F.3d at 708 [same]; *Munger*, 227 F.3d at 1087 [same]; and (4) the defendants' acted with deliberate indifference; (*see, e.g., Grubbs II*, 92 F.3d 894, 899-900 (1996) [requiring the plaintiff to show that the state official "acted with deliberate indifference to the known or obvious danger"].)

In response to the defendants' earlier motions to dismiss the complaint, the trial court found:

> "While it is sufficient for plaintiffs to allege defendants took affirmative acts that exacerbated an existing danger or created an opportunity for Blaylock to attack Gonzalez, they cannot base their state created danger claim on allegations of negligence, failures to act, or failures to interfere. [citations omitted.]
>
> Plaintiffs' allegations regarding defendants' conduct fall into five broad categories: (1) placement of Blaylock in the general prison population; (2) failure and refusal to provide Gonzalez with a protective vest[9]; (3) failure and refusal to provide supervision, administration, and support to the correctional staff to make sure that Blaylock was not given authority as a "shot caller"; (4) failure and refusal to provide supervision, administration, and support to the correctional staff to ensure that safety protocols and procedures - and in particular, the modified program and modified lockdown directives - were enforced; and (5) failure to equip the medical staff and train the medical staff adequately.

---

[9]In an earlier portion of the court's ruling, the court took note that

> "[p]laintiffs also allege that defendants acted with deliberate indifference to Gonzalez's safety by failing and refusing to provide him with a protective vest, knowing that he had been specially fitted for a vest and that CIM had received a delivery of 362 vests on September 09, 2004. Plaintiffs assert that defendants acted in reckless disregard of Gonzalez's well being by keeping the vests in a warehouse for more than four months and making no effort to distribute them. They also contend that defendants failed and refused to prepare quarterly protective vest inventory reports, which would have ensured the timely distribution of the vests. Plaintiffs assert that had the vests been made available, Gonzalez would have survived Blaylock's assault." (Court's Order, Exhibit "C ..., p. 8.)

With the exception of the first category, the "acts" plaintiffs allege are omissions, i.e., failures to act or intervene. Inserting the word "refusal" following the word "failure" does not transform an omission into an affirmative act.

Without any underlying factual allegations of an affirmative act, the conclusory statement that defendants "created" a dangerous condition is inadequate. See Pinder v. Johnson, 54 F.3d 1169, 1175-76 ("No amount of semantics can disguise the fact that the real "affirmative act" here was committed by Pittman, not by Officer Johnson. As was true in DeShaney, the state did not 'create' the danger, it simply failed to provide adequate protection from it. In both cases, '[t]he most that can be said of the state functionaries ... is that they stood by and did nothing when suspicious circumstances dictated a more active role for them.' Pinder's case is purely an omission claim ... While it is true that inaction can often be artfully recharacterized as 'action,' courts should resist the temptation to inject this alternate framework into omissions cases by stretching the concept of 'affirmative acts' beyond the context of immediate interactions between the officer and the plaintiff.").

The complaint does allege two affirmative acts that created or increased the risk of danger to Gonzalez, however. It pleads that defendants improperly assigned Blaylock to a general population cell upon his arrival at CIM, and that they returned Blaylock to the general prison population after he was detained in administrative segregation for purportedly assaulting another inmate. Plaintiffs contend that Blaylock's misclassification and improper placement created a dangerous condition. Plaintiffs' allegations regarding improper classification and placement sufficiently plead affirmative acts by defendants that may have created or exacerbated a dangerous condition." (Court's Order, Exhibit "C"..., pp. 26-27.)

Plaintiffs argue that since the foregoing does not constitute findings of fact or conclusions of law, this District Court is entitled to disregard the foregoing analysis made by the trial court[10], and *de novo* analyze whether their subpoena seeking information regarding protective vests is relevant to claims which the trial has already found cannot give rise to liability. For obvious reasons, plaintiffs' attempt to have this District Court reconsider the trial court's earlier analysis that the defendants' alleged acts regarding their failure to provide a protective vest to the plaintiffs' decedent are nothing more than "omissions, i.e., failures to act or intervene," and therefore not viable under the Due Process Clause of the Fourteenth Amendment, should be rejected.

## B. DOCUMENTS RELATED TO THE CONTRACT TO PROVIDE, BIDS REGARDING, PAYMENT FOR, COMMUNICATIONS REGARDING, AND THE ISSUANCE OF PROTECTIVE VESTS ARE NOT RELEVANT TO PLAINTIFFS' SUBSTANTIAL DUE PROCESS CLAIMS

Plaintiffs cite the case of *Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) for the proposition that the Ninth Circuit has held that a non-party can be compelled to produce evidence "relevant to the subject matter involved in the pending action." That misstates the standard that must be applied in this case.

In 2001, Federal Rule of Civil Procedure 26(b)(1) was amended to reflect that parties to litigation "may obtain discovery regarding any matter, not privileged**, that is relevant to**

---

[10]As recognized by the plaintiffs in their brief, "the court's Order simply set forth the facts and allegations of the complaint and engaged in a *analysis* of the legal sufficiency of the Plaintiffs' claims for purposes of deciding a Rule 12(b)(6) motion to dismiss." [emphasis in original]

**the claim or defense of any party."** [emphasis added.] The stated purpose of the amendment was to narrow the scope of discovery. Previous to the amendment, a party could obtain discovery into any matter, not privileged, that is "relevant to the subject matter involved in the pending action."

Once a request for discovery strays outside of an area "relevant to a claim or defense...," new Rule 26(b)(1) requires a showing of "good cause" as follows:

> "For good cause shown, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

In this manner, Rule 26(b)(1) now focuses discovery on the actual claims and defenses at issue in the case. Discovery will only be broadened when demanded by the reasonable needs of the action, as the Advisory Committee intended:

> "The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. In general, it is hoped that reasonable lawyers can cooperate to manage discovery without the need for judicial intervention. When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested." (Fed. R. Civ. P. 26(b)(1)(advisory committee notes).)

The documents sought by plaintiffs concerning the protective vests are not relevant to the plaintiffs' claims in this action. In addition, there is no reasonable likelihood that allowing discovery of these documents will lead to the discovery of evidence relevant to the underlying action. As already discussed by the trial court, the relevant issues alleged in plaintiffs' complaint relate to the two affirmative acts that created or increased the risk of danger to the plaintiffs' decedent, which are (1) defendants' alleged improper assignment of Blaylock to a general population cell upon his arrival at CIM, and (2) the defendants' alleged return of Blaylock to the general prison population after he was detained in administrative segregation for purportedly assaulting another inmate. Both of these issues turn primarily on the housing of inmate Blaylock. All of the documents requested relate to the protective vests plaintiffs claim should have been provided plaintiffs' decedent on the day of the incident. Any information plaintiffs hope to glean from their document requests would have no bearing on the merits of the case, since all that plaintiffs are required to establish in order to recover damages is that the defendants were deliberately indifferent in allegedly improperly assigning housing to Blaylock at CIM.

In meet-and-confer communications, plaintiffs were requested to articulate a plausible chain of inferences showing how discovery of the items related to the protective vests would lead to other admissible evidence. Plaintiffs could not articulate what kind of information they reasonably expect to find in these documents, and how this will lead to other admissible evidence.

Moreover, the trial court has already ruled that plaintiffs' decedent's failure to receive a protective vest cannot form a basis of liability against these defendants. Thus, documents concerning the State's contract to buy the protective vests, the bids for the contract, the payment for the vests, and more generally, the failure to issue the vest to the plaintiffs' decedent are not "relevant to the claim or defense of any party" in this action. The relevance

standard of Rule 26 is not without bite. (See, e.g., Epstein v. MCA, Inc., 54 F.3d 1422, 1423 (9th Cir. 1995) [holding that district court abused its discretion in allowing discovery of documents that "would have no bearing on either the merits of the case or on the motion for class certification" and that therefore were irrelevant under Rule 26(b)(1).])

## C. PLAINTIFFS' ARGUMENTS THAT THE DOCUMENTS RELATED TO THE PROTECTIVE VESTS ARE RELEVANT TO PLAINTIFFS' SUBSTANTIAL DUE PROCESS CLAIMS ARE MISPLACED

As stated earlier, plaintiffs' attempt to have this District Court reconsider the trial court's earlier analysis that the defendants' alleged acts regarding their failure to provide a protective vest to the plaintiffs' decedent are nothing more than "omissions, i.e., failures to act or intervene," and therefore not viable under the Due Process Clause of the Fourteenth Amendment, should be rejected.

As recognized by the plaintiffs in their brief, "the court's Order simply set forth the facts and allegations of the complaint and engaged in a *analysis* of the legal sufficiency of the Plaintiffs' claims for purposes of deciding a Rule 12(b)(6) motion to dismiss." [emphasis in original]. The plaintiffs' complaint contains many more salient (arguably, more egregious) facts in support of the claim that the defendants' failure to provide protective vest to the plaintiffs' decedent violated his civil rights, than what plaintiffs assert in this brief. (See footnote 10 of this brief.) Even construing plaintiffs' complaint in the light most favorable to plaintiffs, which the trial court did in determining defendants' motions to dismiss, the trial court still found that the complaint's allegations regarding the defendants' failure to provide the plaintiffs' decedent with a protective vest did not, and could not, state a valid claim under the Due Process Clause of the Fourteenth Amendment.

Also, plaintiff argue that information concerning the defendants' alleged refusal or failure to distribute the vests is relevant because it "would constitute circumstantial evidence of a deliberate indifference, or conscious disregard, state of mind; something that is part of the proof in the Plaintiffs' case." Plaintiffs are correct in asserting that they need to prove defendants' deliberate indifference to the plaintiffs' decedent's civil rights. However, plaintiffs need to show that defendants' affirmative acts, and not simply their failure to act, placed the plaintiffs' decedent in danger. Plaintiffs' attempt to substantiate the claim that defendants' failure to provide a protective vest to their decedent was done in a deliberately indifferent manner is irrelevant, and would not lead to the discovery of relevant evidence, because the trial court has already found that this "omission" does not, and cannot, give rise to a claim under the Due Process Clause of the Fourteenth Amendment.

In final, the issues in this case turn primarily on the alleged improper housing of inmate Blaylock while at CIM, and the alleged deliberate indifference of the defendants to it. The thousands of documents requested, all of which relate to the protective vests plaintiffs claim should have been provided plaintiffs' decedent, are not germane to these issues. Consequently, there is no likelihood that useful evidence might be uncovered from these documents which is relevant to the plaintiffs' claims in this case. Plaintiffs' wide-ranging, intrusive, and ultimately irrelevant discovery must undeniably be found to cross the legitimate boundaries of Rule 26.

## C. DEFENDANTS' EMPLOYMENT RECORDS

**DISCOVERY AT ISSUE RE: EMPLOYMENT RECORDS:**

**Plaintiffs' Subpoena to the California Department of Corrections (Request for Production of Document No. 29:**

"Each of the Defendants' Individual employment and personnel files including but not limited to the following:

a. Personnel files which include summary of all hours worked, disciplinary reports, EMIS Reports (notices of adverse action)
b. Supervisory File
c. CDCR 1123 Employee Counseling Record
d. Rainbow Sheets
e. Attendance Record
f. Personnel Summary of Jobs
g. Training Records (IST: In Service Training) including, summary of all training hours, on the job training, personnel assignments, summary of all posts worked, job specifications.

**Plaintiffs' Subpoena to the California Department of Corrections for Testimony Pursuant to FRCP 30(b)(6) – Category No. 19:**

"Defendants' Individual Employment Files."

**CDCR'S OBJECTIONS RE: EMPLOYMENT RECORDS:**

General Objections Applicable to All Requests

1. The State of California is not subject to this discovery subpoena under the FRCP because it has not waived its sovereign immunity.
2. The subpoena is invalid because it was not accompanied by the appropriate witness fees, pursuant to Gov. Code § 68096.1, et. seq.; failure to simultaneously the appropriate tender witness invalidates the subpoena [sic].

3. The discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome or less expensive.
4. The burden or expense of the proposed discovery on the State of California, who has an interest in conserving scarce government resources, outweighs its likely benefit. Compliance with this subpoena, where plaintiffs are seeking a tremendous number of C.R.C.R. agency documents, and demand the presence of dozens of agency employees at depositions, will measurably strain agency resources and divert agency personnel from their official duties.
5. The internal C.D.C.R. documents sought by this subpoena are protected from disclosure by federal and state "official information," "self-critical analysis," "state secrets," and "deliberative process" privileges because they relate to state interests which are usually protected by these privileges, e.g., institutional security, privacy rights of citizens and inmates, encouragement of public cooperation, negotiations between state agencies and unions. Legitimate interests of the State will be adversely affected by the release of these documents.
6. This subpoena seeks information and documents, such as investigative reports not already produced by the parties in their disclosures in the hands of the District Attorney's Office, that pertain to pending criminal litigation to which the State of California is a party, and which cannot be released until the pending litigation or claim has been finally adjudicated or otherwise settled.

**Document Request No. 29:**

"In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. Further, they seek the production of sensitive,

confidential information which would constitute an unwarranted invasion of the defendants' personal privacy.

**Subpoena for Testimony No. 19:**

"In addition, the State of California objects to this category on the ground the information requested is irrelevant to the remaining matters in this litigation, and it will not lead to the discovery of relevant evidence. Further objection is made on the ground this category does not describe with reasonable particularity the matters on which examination is requested. Finally, this category seeks the production of sensitive, confidential information which would constitute an unwarranted invasion of the defendants' personal privacy."

## 1. PLAINTIFFS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: DEFENDANTS' EMPLOYMENT RECORDS

Plaintiffs seek the production of *portions* of each of the Defendants' personnel files (employment records), as well as a designee from the CDCR to testify regarding any questions that Plaintiffs have concerning such matters.

The State has objected to such requests on the grounds of privacy and confidentiality. Plaintiffs understand that Defendants Lori Di Carlo, Gregory Mellott and Carol Roddy take a similar position, but do not object to the production of those portions of their personnel files a) that deal with their training and experience, b) reference any complaints made against them in their capacity as officials of CDCR, and c) matters pertaining to the facts and circumstances giving rise to this case.

Theresa J. Barta, Esq. CA State Bar No. 150995
Mark J. Peacock, Esq., CA State Bar No. 156625
LAW OFFICES OF MARK PEACOCK
5160 Campus Drive
Newport Beach, California 92660
Telephone: (949) 660-7762
Fax: (949) 660-7764
Email: mark@markpeacocklaw.com
Website: www.markpeacocklaw.com
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ESTATE OF MANUEL A. GONZALEZ JR., et al.,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**RODERICK Q. HICKMAN; JEANNE S. WOODFORD; SUZAN HUBBARD, JOHN DOVEY, LORI DICARLO; CAROL RODDY; GREG MELLOTT, and DOES 1 THROUGH 50, INCLUSIVE,**<br><br>**Defendants.** | **CASE No. ____________________**<br><br>**(U.S. Dist. Court Central District Case No.: CV- 05-00660 MMM (RCx))**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS**<br><br>**[Filed Concurrently with the Joint Statement of Discovery Dispute and the Declaration of Theresa J. Barta.]**<br><br>**Date: __________, 2006**<br>**Time: _______ a.m./p.m.**<br>**Crtroom: ______** |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**YOU ARE HEREBY NOTIFIED THAT** on **____________, 2006** at **____ a.m./p.m.** or as soon thereafter as the matter can be heard before the Honorable _______, United States Magistrate/ Judge presiding, in **Courtroom ______,** located at 501 "I" Street, Sacramento, California, Plaintiffs will, and hereby do, move for an order to compel the State of California Department of Corrections to comply with subpoenas issued to it by the Plaintiffs on July 24, 2006, pursuant to F.R.C.P. Rules 45 and 37(a)(2)(B).

Specifically, the Plaintiffs seek ***an order compelling the State of California to comply with its obligations of 1) producing all responsive documents requested in the subpoenas, and 2) designating one or more officers, directors, managing agents, or other persons who consent to testify on its behalf to each of the matters set forth in the subpoenas, which were served by Plaintiffs on July 24, 2006 (a copy of which are attached collectively as Exhibit "A" to the "Joint Statement of Discovery Dispute" for the convenience of the court), within three days of the Court's order.***

Plaintiffs further seek ***an order compelling the State of California to comply with its obligations of providing testimony by each of the persons it designates in response to each of the matters set forth in the subpoenas which were served by Plaintiffs on July 24, 2006 (a copy of which are attached collectively as Exhibit "A" to the "Joint Statement of Discovery Dispute" for the convenience of the court), within two weeks of the Court's order.***

Plaintiff brings this motion pursuant to F.R.C.P. Rules 45 and 37(a)(2)(B). Plaintiffs' motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed Joint Statement of Discovery Dispute and the Declaration of Theresa J. Barta, and all papers, pleadings and papers on file herein, and further argument and evidence as may be presented.

Dated: August 31, 2006

Respectfully Submitted,

LAW OFFICES OF MARK J. PEACOCK

By: ______________________

MARK J. PEACOCK

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION AND SUMMARY OF CASE**

This case is brought pursuant to 42 U.S.C. Section 1983, and seeks damages for the death of Manual A. Gonzales, Jr., a correctional officer at California Institution for Men ("CIM.") A more detailed statement of the facts is included in the "Joint Statement of Discovery Dispute" filed concurrently herewith, and is incorporated herein by reference.

The case is set for trial on December 5, 2006 in the U.S. District Court for the Central District of California before the Honorable Judge Margaret Morrow. The Discovery Cut-off date is September 29, 2006.

In June, 2006 Plaintiffs served subpoenas, issued from the U.S. District Court for the Eastern District of California, on the California Department of Corrections ("CDCR") seeking the production of documents and appearance of witnesses pursuant to Fed. Rule Civ. Proc. 45 and 30(b)(6). The documents and testimony pertain directly to issues relevant to the Plaintiffs' proof of their case (*e.g.,* Defendants' classification and housing of the inmate who killed Officer Gonzales at CIM, operational and security policies and procedures of CIM, and the Defendants' refusal to provide Officer Gonzales with a protective vest.)

The CDCR objected to the subpoenas in their entirety, and have refused to 1) produce any of the documents requested, 2) designate any persons as required by F.R.C.P. 30(b)(6), and 3) produce any persons for deposition. Although the parties tried to informally resolve their dispute, their efforts were unsuccessful.

## II.

## F.C.P.R. RULES 45 AND 37 AUTHORIZE THIS COURT TO ENTER APPROPRIATE RELIEF.

Rule 45(c)(2)(B) provides:

> "If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production."

Rule 37(a)(2)(B) provides:

> "[I]f . . an entity fails to make a designation under Rule 30(b)(6) . . .the discovering party may move for an order compelling . . . a designation. . . in accordance with the request."

Here, the CDCR has objected to the Plaintiffs' subpoena for documents and has failed and refused to make a designation as required by F.R.C.P. 30(b)(6). The documents and testimony sought by the Plaintiffs' subpoenas are central to the Plaintiffs' proof of their 1983 claim. Without the crucial documents, and testimony, from the CDCR, Plaintiffs cannot

prepare their case for trial. Knowing this, the CDCR has stonewalled the discovery process by asserting meritless objections, with the specific intent of disrupting Plaintiffs' trial preparation. Consequently, and for the reasons set forth in the concurrently filed "Joint Statement of Discovery Dispute," Plaintiffs bring this motion to compel.

## III.
## CONCLUSION

Plaintiffs respectfully urge this Court to enter an appropriate Order compelling the CDCR to cooperate immediately, and produce all responsive documents as well as designate appropriate witnesses, so that discovery can proceed.

Respectfully Submitted,

DATED: August 31, 2006

LAW OFFICES OF MARK J. PEACOCK

By: ______________________________
MARK J. PEACOCK

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 5160 Campus Drive Newport Beach, California 92660.

On, September 6, 2006, I served the foregoing documents described as: **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

BILL LOCKYER
DAVID ADIDA
STATE OF CALIFORNIA DEPARTMENT OF JUSTICE
Ronald Reagan Building
300 South Spring St.
Suite 1702
Los Angeles, CA 90013
Fax: 213-897-2810
Attorney for Defendants, Roderick Q. Hickman, Jeanne S. Woodford, Suzan Hubbard, John Dovey and Wendy Still

MICHAEL BELL, ESQ.
La Follette, Johnson, et al
3403 Tenth Street
Suite #820
Riverside, CA 92501
Fax: 951-275-9249
Attorney for Defendants, Lori DiCarlo, Greg Mellott and Carol Roddy

Antonio Ibarra, Esq.
7211 Painter Avenue
Whittier, CA 90602
Attorney for Plaintiffs

__ (BY MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Newport Beach, California.

X (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee.

__ (VIA TELECOPY - PER AGREEMENT) I caused the above-mentioned document(s) to be telecopied to the parties named on the attached list.

Executed on September 5, 2006, at Newport Beach, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

MARK J. PEACOCK

Signature

Theresa J. Barta, Esq. CA State Bar No. 150995
Mark J. Peacock, Esq., CA State Bar No. 156625
LAW OFFICES OF MARK PEACOCK
5160 Campus Drive
Newport Beach, California 92660
Telephone: (949) 660-7762
Fax: (949) 660-7764
Email: mark@markpeacocklaw.com
Website: www.markpeacocklaw.com
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ESTATE OF MANUEL A. GONZALEZ JR., et al.,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**RODERICK Q. HICKMAN; JEANNE S. WOODFORD; SUZAN HUBBARD, JOHN DOVEY, LORI DICARLO; CAROL RODDY; GREG MELLOTT, and DOES 1 THROUGH 50, INCLUSIVE,**<br><br>**Defendants.** | **CASE No. ____________________**<br><br>**(U.S. Dist. Court Central District Case No.: CV- 05-00660 MMM (RCx))**<br><br>**DECLARATION OF THERESA J. BARTA FILED IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS**<br><br>**[Filed Concurrently with Plaintiffs' Notice of Motion and Motion to Compel Compliance with Subpoenas and the Joint Statement of Discovery Dispute]** |

**DECLARATION OF THERESA J. BARTA**

I, Theresa J. Barta, declare:

1. I am an attorney admitted to practice in this state, and before this Court. I am also an attorney for Plaintiffs, ESTATE OF MANUAL A. GONZALES JR., GUSTAVO GONZALES, MANUAL GONZALEZ, MARK GONZALES and STEVEN GONZALES, in the above-entitled action. This declaration is submitted in support of Plaintiff's Motion to Compel Compliance with Subpoenas, filed concurrently herewith.

2. On or about June 16 and June 23, 2006, Plaintiffs served subpoenas on the Department of Corrections seeking the production of documents and appearance of witnesses pursuant to Fed. Rule Civ. Proc. 45 and 30(b)(6). The documents and testimony pertain directly to the Defendants' classification and housing decisions for Blaylock while at CIM, operational and security policies and procedures, and the Defendants' refusal to provide Officer Gonzales with his protective vest.

3. On July 7, 2006, Deputy Attorney General David Adida (attorney for five of the Defendants) served written objections, on behalf of the California Department of Corrections ("CDCR"), to all of the requests for documents and deposition testimony. The objections asserted, among other objections, that the categories in the subpoenas were over broad, ambiguous and did not describe with sufficient particularity the documents and information being sought.

4. In response to the State's objections, I engaged in two separate telephone conferences with Mr. Adida, during which we discussed each request and category in each subpoena in order to narrow the scope of the requests and clarify them so as to address the objections that the requests were "over broad, ambiguous and did not describe with sufficient

particularity the documents and information being sought." I confirmed each of our telephonic conferences in writing. (Attached hereto as Exhibits "A" and "B" respectively are my confirming letters to Mr. Adida.) Thereafter, I revised the subpoenas to reflect our discussions (*i.e.,* to specifically narrow the scope of the requests, and clarify what documents and testimony the Plaintiffs are specifically seeking.) Plaintiffs then re-served the *revised* subpoenas on July 24, 2006.

5. The State of California now asserts that Plaintiffs have subpoenaed "in excess of 20 individuals." The State, however, has only objected to the Plaintiffs' *two* subpoenas issued pursuant to F.R.C.P. 30(b)(6). Although each of those subpoenas identify several categories of testimony being sought, many of the categories overlap. Based on the overlap of the subject matter of the categories, I believe that it is likely that only a few individuals will need to be designated to provide testimony in response to the subpoenas.

6. Finally, contrary to the claims of the CDCR, in its "Contentions/Arguments and Legal Authority" (*i.e.,* that Plaintiffs could not articulate, during meet-and-confer communications, how the items relating to the protective vest or defendants' personnel files are relevant), I discussed those issues specifically with Mr. Adida (including, the arguments set forth in the Plaintiff's Contentions/Arguments and Legal Authority Re: Protective Vests and Defendants' Employment Records.)

I hereby declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on August 30, 2006 at Newport Beach, California.

[signature]

THERESA J. BARTA

# EXHIBIT A

LAW OFFICES
MARK J. PEACOCK
5160 CAMPUS DRIVE
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE (949) 660-7762
FACSIMILE (949) 660-7764
EMAIL mark@markpeacocklaw.com
WEBSITE www.markpeacocklaw.com

ADDITIONAL OFFICES
WESTLAKE VILLAGE, CA
BAKERSFIELD, CA

July 20, 2006

David Adida, Esq.
State of California - Department of Justice
Ronald Reagan Building
300 S. Spring Street
Suite 1702
Los Angeles, CA 90013

Re: Gonzalez v. Hickman et al

Dear David,

This letter will confirm our "meet and confer" yesterday afternoon, July 19, 2006, with regard to the subpoenas issued to Department of Corrections and Rehabilitations and the California Institution of Men.

Subpoenas to Dept. of Corrections and California Institution of Men

First, we have agreed to re-issue the subpoenas to the Department of Corrections and Rehabilitations and the California Institution of Men to address certain of the objections you raised in your "Written Objections to Deposition Subpoenas and Inspection or Copying of Any and All of the Designated Materials" and "Additional Written Objection to Deposition Subpoenas and Inspection or Copying of Any and All of the Designated Materials" (each of which we received on July 11, 2006.)

In that regard, on behalf of your clients and the State of California, you agreed that service of the re-issued subpoenas is acceptable by faxing each of the subpoenas to your office on Monday, July 24, 2006 and that personal service to the Department of Corrections in Sacramento is not necessary. We further agreed that where documents are sought, the date of production of such documents will be Tuesday, August 8, 2006. The dates for appearance of "persons most knowledgeable" ("PMKs") will be set for the following week.

You also informed me, and agreed, that the subpoenas should be issued *only* to the Department of Corrections and Rehabilitations in Sacramento, California (and not the California Institution of Men); and that, such subpoenas would encompass the production of

any documents or PMKs located at the California Institution of Men in Chino. In that regard, even though the deposition subpoenas will command appearance in Sacramento (so as to comply with FRCP 45), we agreed that if any of the individuals designated as a PMK reside in Southern California, their depositions will be taken at the Law Offices of Mark Peacock, located at 5160 Campus Drive, Newport Beach, California.

<u>Witness Fees</u>

With regard to witness fees, you informed me that it is your clients' position that because the PMKs are state employees that a particular California Government Code section governs; you agreed to provide me with that cite. Please do so today so that I have time to look into the matter before we meet and confer tomorrow, and so that we can include proper witness fees when we re-issue the subpoenas.

<u>Issue of "Sovereign Immunity"</u>

We also discussed your objection and contention that the State of California is not required to comply with the subpoenas because they have not waived their sovereign immunity under the 11th Amendment. You informed me that it is your clients' position that such immunity applies to not only lawsuits filed against the State, but also to subpoenas issued to the State compelling the production of documents and/or appearance of witnesses. Although you did not provide me with any legal authority to support that position during our telephone conversation, you did agree to send such authority if there is any. Please forward that to me immediately so that we may consider the validity of your clients' objection.

In that same regard, you acknowledged that the information sought by the subpoenas we issued is not "immune" from disclosure under the 11st Amendment, but rather, the process we used of "subpoenaing" the information is the problem; *i.e.*, you informed me that the information should be sought pursuant to the Freedom of Information Act.

<u>Assertion of Privileges</u>

The objections assert generally and without specificity that the subpoenas "require disclosure of privileged or otherwise protected and sensitive matters." As we discussed, and you did not dispute, the federal rules require that:

> "[when a] witness withholds information on a claim of privilege or other pr otection, they *must state the claim expressly and support it with sufficient documentation to enable demanding party to contest the claim.*"

Thus, for each of the documents that will be withheld from production you agreed to provide me a privilege log identifying the information/documents being withheld and the precise privilege and/or claim of protection that is the basis for the refusal to produce.

As an example, we specifically discussed Blaylock's C-File, and you indicated that although there is not a problem with producing the file itself, there may be specific documents withheld or produced only after the parties have entered into a protective order (e.g., Blaylock's medical records or records relating to the specifics of crimes he committed.) You did agree, however, that there would be no problem producing documents relating to Blaylock's classification, discipline, and other matters relating to what happened at CIM and other institutions relative to Blaylock that are in his C-File.

Specific Categories of Requested Documents re: Vests

We discussed line-by-line each of the categories of documents that were requested in the subpoena issued on June 14, 2006 to the California Institution of Men for the production of documents on July 14, 2006, which contained 23 categories. We did this to address the objections that the subpoena was allegedly "abusively drawn" and "undue burden, annoyance, oppression and expense," and to determine which, if any, of the categories needed to be more specifically written.

In that regard, you agreed that each of the following categories were not objectionable as written so long as the time frame for the request is limited to the time before and up to the date of the incident on January 10, 2005: 1,3 through 10, 13 through 15, and 19. You further agreed that with further clarification as we discussed (including the limited time frame), each of the following categories would not be objectionable as overbroad or causing undue burden, etc.: 12,16 through18, and 20 through 23.

Further Meet and Confer

Finally, we agreed to complete our meet and confer – to discuss the remaining requests for documents and categories of testimony of PMKs – this Friday, July 21, 2006 at 9:30 a.m. (I will contact you.) Specifically, we agreed to discuss line-by-line the categories in each of the following two subpoenas:

1) That issued to the California Department of Corrections and Rehabilitations (in Sacramento) on June 23, 2006, with a production date of July 24, 2006 and 43 categories of documents identified; and

2) That issued to the California Department of Corrections and Rehabilitations (in Sacramento) on June 23, 2006, and seeking the appearance of a PMK on July 31, 2006 with regard to 32 topics.

I look forward to completing our discussion and appreciate your cooperation in these matters. If this letter does not comport with your understanding of our conversation and agreements, please notify me immediately in writing.

Very truly yours,

THERESA J. BARTA, Esq.
/tfn

cc: Michael Bell, Esq.

# EXHIBIT B

LAW OFFICES
MARK J. PEACOCK
5160 CAMPUS DRIVE
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE (949) 660-7762
FACSIMILE (949) 660-7764
EMAIL mark@markpeacocklaw.com
WEBSITE www.markpeacocklaw.com

ADDITIONAL OFFICES
WESTLAKE VILLAGE, CA
BAKERSFIELD, CA

July 24, 2006

David Adida, Esq.
State of California - Department of Justice
Ronald Reagan Building
300 S. Spring Street
Suite 1702
Los Angeles, CA 90013

Re: Gonzalez v. Hickman et al

Dear David,

This letter will confirm our "meet and confer" this past Friday morning, July 21, 2006, with regard to the subpoenas issued to Department of Corrections and Rehabilitations and the California Institution of Men.

Witness Fees

First, thank you for providing me with the government code sections your client is relying upon as authority for demanding witnesses for each individual PMK at a rate of one day's full pay, *i.e.*, Govt. Code Sections 68096.1 and 68097.2. Those code sections, however, do not apply to the subpoenas issued to the Department of Corrections pursuant to FRCP 30. This action is pending in federal court on the basis of a federal question. Accordingly, the federal rules govern discovery procedures and matters, including, issuance of subpoenas and payment of witness fees. Moreover, neither of the sections you have cited apply to the witnesses who will appear as designees of the Department of Corrections.

Govt. Code § 68096.1 applies only when an "employee of a local agency" is obliged by a subpoena. Local agency is defined by subsection (f) as "a city, county, city and county, special district, redevelopment agency, or any other political subdivision of the state." It does not include the State's Department of Corrections.

With regard to Govt. Code § 68097.2, that section only applies when a "peace officer [as defined by section 830 of the Penal Code], firefighter, state employee, trial court employee or county employee, is obliged by a subpoena issued pursuant to Section 68097.1." Those employed by the Department of Corrections are *not* employees of

Department of Justice, the Department of the California Highway Patrol, or any of the other categories of subpoenaed peace officers in Section 68097.1 (see, *Fox v. State Personnel Board* (1996) 49 Cal.App.4th 1034, 57 Cal.Rptr.2d 279); nor does Section 68097.1 apply to the subpoenas we issued. Hence, the provisions of Section 68097.2 are inapplicable, because the are conditioned on Section 68097.1.

If your client is going to continue to demand payment of witness fees pursuant to Cal. Govt. Code Sections 68096.1 and/or 68097.2, then we will need to include a section in the Motion to Compel. Please let me know *by tomorrow morning, Tuesday, July 25, 2006* so that I know whether to prepare and include such a section in the Joint Stipulation.

<u>Motion to Compel</u>

We regard to the Motion to Compel, we agreed that each of the following issues will be addressed in the motion:

1) Your client's contention that the State of California does not need to comply with the subpoenas, because it has not waived its sovereign immunity under the 11st Amendment.

2) Your client's refusal to produce documents, or provide testimony by PMKs, regarding the vests based on its contention that issues regarding the vest are irrelevant and outside the scope of issues remaining in the case (after the court's ruling on the Motion to Dismiss.) Your client did agree, however, that documents and testimony relating to the issue of whether or not Gonzales would have died had he been wearing the vest will be produced and are not objectionable (i.e., documents and testimony regarding the characteristics of the vest, its make, model, how it was made, what it's supposed to do, how it should be maintained, etc. ) You also confirmed that it is undisputed that Gonzales' vest had been ordered and received by CIM, but had not yet been distributed to him at the time he was killed on January 10, 2005.

3) The Defendants' Employment Records.

4) Blaylock's Medical and Psychiatric Records.

5) Policies and Procedures of CIM, and the Department of Corrections (as more specifically described below by specific categories); based your client's contention that the disclosure of such information could jeopardize the health and safety of correctional officers and inmates.

6) Any documents or testimony which may be withheld on the grounds of an asserted privilege or confidentiality, and which will be disclosed in a privilege log to be provided to me. In the regard, please provide me with the privilege log by the end of the day Tuesday, July 25, 2006 so that I can determine whether we need to include any particular items in the motion or whether we can agree to a protective order to cover the production or testimony.

Finally, with regard to the motion to compel, you agreed to waive, as to all subpoenas, any assertion or objection that the subpoenas must be issued by the U.S. District Court for the Eastern District of California. Not only did you confirm that your client will waive such objections, but you also agreed that the subpoenas could be properly served on you by fax. Accordingly, we agreed that the motion to compel should be filed here in the Central District before Magistrate Chapman, as required by Judge Morrow's local rules.

Specific Categories in the Subpoenas

On Friday morning we also discussed each of the categories of documents and testimony requested in the subpoena issued on June 23, 2006 to the California Department of Corrections and Rehabilitation for the appearance of a PMK and the production of documents on July 31, 2006. The subpoena included 32 categories of testimony and 31 categories of documents to be produced. Our discussion was for the specific purpose of addressing the objections that the subpoena was allegedly "abusively drawn" and "undue burden, annoyance, oppression and expense," and to determine which, if any, of the categories needed to be more specifically written, or with regard to which your client is completely refusing to produce documents.

A. PMK Categories

You agreed, that unless testimony was objectionable as privileged (e.g., medical information, confidential or otherwise ordered not to be disclosed by the criminal court) that each of the following categories do not need further clarification: 1 through 10 (except as to the medical information contained in Blaylock's C-file as requested in category no. 2), 12 through 14, 20, 21, 22, 24, and 25 through 30. You requested that I further clarify category 32 (which I will do), and you informed me that we would need to bring a motion to compel on each of the following categories: 9 through 11 to the extent they seek medical or psychiatric information of Blaylock, 15 through 17, 23, and 31.

With regard to each of the following categories, you agreed that your client would provide testimony if we enter into a protective order to keep the testimony confidential: 18 and 19.

B. Documents Requested

As for the documents requested, you agreed that each of the following categories did not need further clarification and were not objectionable (with the exception of those documents which may be withheld on the grounds of an asserted privilege, e.g., medical information, and which will be described on a privilege log to be produced by you): 1 through 7, 10, 13 through 15, 18, 19, 23 through 28, 30 and 31.

You requested further clarification as to categories nos. 8, 9, 16,17, 21 and 22, which I agreed to.

With regard to categories nos. 11, 12, 20 and 29, you indicated that these documents would need to be addressed in the motion to compel.

Defendants' Depositions

We also discussed that in order to proceed with the Defendants' depositions, we must have all of the documents and testimony requested by the subpoenas which are the subject of our meet and confers (last Wednesday and Friday.) Inquiry of the Defendants during their depositions will include the issues and documents requested in the subpoenas, since such issues/documents are directly relevant and necessary for the Plaintiffs' case.

Your client's objections and refusal to produce documents or witnesses (in compliance with the subpoenas) necessitates the filing of a motion to compel. Taking into account the time necessary to prepare the Jt. Stipulation (motion to compel), the soonest possible hearing date for the motion will be Wednesday, August 30, 2006. Hence, as we discussed, the depositions of the Defendants will need to be continued until after that date.

During our discussion regarding such continuance, you informed me that your clients will not further seek to continue their depositions, nor will they request any change of the dates of the depositions once we have selected mutually agreeable dates. I informed you that the only reason we would need to further continue the depositions is in the event, which I am hoping won't be the case, that your clients (including the State of California) delays, or further refuses, to produce the documents or PMK testimony sought by the subpoenas.

Joint Stipulation of Discovery Dispute re: Motion to Compel

Pursuant to Local Rule 37–2.1, we are required to file a stipulation signed by both counsel along with the Notice of Motion to Compel. Rule 37–2.2 governs the procedure preparing the Joint Stipulation. In that regard, please be advised that you will have 5 court days from your receipt of plaintiff's draft portion of the stipulation to deliver back to me (personally or by fax) your client's portion. (I intend to get the plaintiffs' draft to you by Thursday.) I suggest that we e-mail our respective portions so as to expedite the preparation of the Joint Stipulation. After I receive your client's portion of the Joint Stipulation, it will be included in the Joint Stipulation and returned to you for signature. The Rule requires that you "sign [the Joint Stipulation] and *return it by hand to [me], no later than the end of the next business day*." I will then file the Stipulation with the Notice of Motion.

Thank you in advance for your cooperation in this regard. If this letter does not comport with your understanding of our conversation and agreements, please notify me immediately in writing.

Very truly yours,

THERESA J. BARTA, Esq.
/tfn

cc: Michael Bell, Esq.

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 5160 Campus Drive Newport Beach, California 92660.

On, September 6, 2006 I served the foregoing documents described as: **DECLARATION OF THERESA J. BARTA FILED IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

BILL LOCKYER
DAVID ADIDA
STATE OF CALIFORNIA DEPARTMENT OF JUSTICE
Ronald Reagan Building
300 South Spring St.
Suite 1702
Los Angeles, CA 90013
Fax: 213-897-2810
Attorney for Defendants, Roderick Q. Hickman, Jeanne S. Woodford, Suzan Hubbard, John Dovey and Wendy Still

MICHAEL BELL, ESQ.
La Follette, Johnson, et al
3403 Tenth Street
Suite #820
Riverside, CA 92501
Fax: 951-275-9249
Attorney for Defendants, Lori DiCarlo, Greg Mellott and Carol Roddy

Antonio Ibarra, Esq.
7211 Painter Avenue
Whittier, CA 90602
Attorney for Plaintiffs

___ (BY MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Newport Beach, California.

_X_ (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee.

___ (VIA TELECOPY - PER AGREEMENT) I caused the above-mentioned document(s) to be telecopied to the parties named on the attached list.

Executed on September 5, 2006 at Newport Beach, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

MARK J. PEACOCK

Signature

Theresa J. Barta, Esq. CA State Bar No. 150995
Mark J. Peacock, Esq., CA State Bar No. 156625
LAW OFFICES OF MARK PEACOCK
5160 Campus Drive
Newport Beach, California 92660
Telephone: (949) 660-7762
Fax: (949) 660-7764
Email: mark@markpeacocklaw.com
Website: www.markpeacocklaw.com
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ESTATE OF MANUEL A. GONZALEZ JR., et al.,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**RODERICK Q. HICKMAN; JEANNE S. WOODFORD; SUZAN HUBBARD, JOHN DOVEY, LORI DICARLO; CAROL RODDY; GREG MELLOTT, and DOES 1 THROUGH 50, INCLUSIVE,**<br><br>**Defendants.** | **CASE No. ____________________**<br><br>**(U.S. Dist. Court Central District Case No.: CV- 05-00660 MMM (RCx))**<br><br>**JOINT STATEMENT OF DISCOVERY DISPUTE RE: PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS**<br><br>**[Filed Concurrently with Plaintiffs' Notice of Motion and Motion to Compel Compliance with Subpoenas]**<br><br>**[Declaration of Theresa J. Barta also filed concurrently herewith.]** |

## TABLE OF CONTENTS


I. STATEMENT OF THE CASE . . . . . 1

II. SUMMARY OF DISCOVERY DISPUTE AND CONFERENCES OF COUNSEL . . . . . 5

III. DISCOVERY IN DISPUTE AND THE CONTENTIONS AND LEGAL AUTHORITY OF THE PARTIES REGARDING EACH ISSUE . . . . . 6

A. SOVEREIGN IMMUNITY . . . . . 6

DISCOVERY AT ISSUE RE: SOVEREIGN IMMUNITY . . . . . 6

CDC'S OBJECTIONS RE: SOVEREIGN IMMUNITY . . . . . 6

1. PLAINTIFFS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: SOVEREIGN IMMUNITY . . . . . 7

2. DEPARTMENT OF CORRECTIONS' CONTENTIONS/ CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE:SOVEREIGN IMMUNITY . . . . . 10

A. THE ELEVENTH AMENDMENT PREVENTS THE ENFORCEMENT OF FEDERAL SUBPOENAS DIRECTED AT THE STATE OF CALIFORNIA . . . . . 10

B. THE CASE PLAINTIFFS ARE RELYING UPON IS CLEARLY DISTINGUISHABLE . . . . . 15

B. DOCUMENTS AND FRCP 30(b)(6) TESTIMONY RE: PROTECTIVE VESTS . . . . . 17

DISCOVERY AT ISSUE RE: PROTECTIVE VESTS . . . . . 17

CDC'S OBJECTIONS RE: PROTECTIVE VESTS . . . . . 20

1. PLAINTIFFS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: PROTECTIVE VESTS . . . . . . . . 30

A. The Trial Court Has *NOT* Made Findings of Fact or Conclusions of Law . . . . . . . . . . . . . . . . . . . . . . . . 31

B. The Information Regarding the Vests is Relevant . . . . . 32

2. DEPARTMENT OF CORRECTIONS' CONTENTIONS/ ARGUMENTS AND LEGAL AUTHORITY RE: PROTECTIVE VESTS . . . . . . . . . . . . . . . . 36

A. PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . 36

B. DOCUMENTS RELATED TO THE CONTRACT TO PROVIDE, BIDS REGARDING, PAYMENT FOR, COMMUNICATIONS REGARDING, AND THE ISSUANCE OF PROTECTIVE VESTS ARE NOT RELEVANT TO PLAINTIFFS' SUBSTANTIAL DUE PROCESS CLAIMS . . . . . . . . . . . 39

C. PLAINTIFFS' ARGUMENTS THAT THE DOCUMENTS RELATED TO THE PROTECTIVE VESTS ARE RELEVANT TO PLAINTIFFS' SUBSTANTIAL DUE PROCESS CLAIMS ARE MISPLACED . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

C. DEFENDANTS' EMPLOYMENT RECORDS . . . . . . . . . . . . . . . . . . 44

DISCOVERY AT ISSUE RE EMPLOYMENT RECORDS . . . . . . . . 44

CDC'S OBJECTIONS RE: EMPLOYMENT RECORDS . . . . . . . . . 44

1. PLAINTIFFS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: DEFENDANTS' EMPLOYMENT RECORDS . . . . . . . . . . . . . . . . . . . . . . . . . . 46

2. DEPARTMENT OF CORRECTIONS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: DEFENDANTS' EMPLOYMENT RECORDS . . . . . . . . . . . . . . . . . . . . . . . . . . 49

3. DEFENDANTS LORI DICARLO, GREGORY MELLOTT AND CAROL RODDY CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY . . . . . 53

D. WITNESS FEES . . . . . 55

DISCOVERY AT ISSUE RE: WITNESS FEES . . . . . 55

CDC'S OBJECTIONS RE: WITNESS FEES . . . . . 55

1. PLAINTIFFS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: WITNESS FEES . . . . . 55

2. DEPARTMENT OF CORRECTIONS' CONTENTIONS/ ARGUMENTS AND LEGAL AUTHORITY RE: WITNESS FEES . . . . . 56

Exhibit "1": Plaintiff's Subpoenas (which are at issue in this motion)

Exhibit "2": The State of California's "Written Objections to Subpoenas"

Exhibit "3": Trial Court's "Order Denying Defendants' Motions to Dismiss"

## JOINT STATEMENT RE: DISCOVERY DISPUTE

## I.

## STATEMENT OF THE CASE

This case, brought pursuant to 42 U.S.C. Section 1983, seeks damages for the death of Manual A. Gonzelas, Jr., a correctional officer at California Institution for Men ("CIM.")

Plaintiffs allege that Defendants, Roderick Hickman, Jeanne Woodford, Suzan Hubbard, John Dovey, Wendy Still, Lori DiCarlo, Carol Roddy and Gregory Mellott (hereinafter referred to collectively as "Defendants"), were each responsible for supervising, administering, monitoring, commanding, overseeing and controlling the operation and management of CIM, and were responsible for the safety and security of employees at CIM. Defendants are sued in their individual capacity. In this case, the Plaintiffs allege that each of the Defendants participated in classification, placement, incarceration, and handling of inmate Jon Christopher Blaylock and in the creation, development, promotion, encouragement and advancement of dangerous conditions at CIM, and acted with deliberate indifference to known and obvious dangers that resulted in the tragic death of Officer Gonzales.

Correctional Officer Gonzales was fatally stabbed on January 10, 2005, on Tier 1 of Sycamore Hall at CIM, by inmate Jon Christopher Blaylock. At the time of the murder, Blaylock had been housed at CIM's reception center for more than six months awaiting permanent placement. Blaylock was initially incarcerated at CIM on June 23, 2004, after being convicted in the Los Angeles County Superior Court and sentenced to a 75-year prison term for attempted murder of a police officer.

Blaylock previously had been incarcerated twice for robbery with a firearm, the most recent for a 10-year term between 1993 and 2003. During his incarceration for that crime, Blaylock was found to be in possession of a weapon and transferred to the security housing unit ("SHU") at California State Prison, Corcoran. Thereafter, because he was deemed a security threat, Blaylock placed in a single cell on the walk-alone yard, and was classified as a Level IV inmate with a custody score of 376, indicating that he required confinement in a Level IV, 180-design prison – with external and internal armed coverage, the most secure configuration of the State's Level IV prisons. Thereafter, Blaylock was released from prison in 2003

When Blaylock arrived at the CIM reception center in June 2004, he was placed, in what Plaintiffs allege, was a general population cell at Sycamore Hall, and what Defendants allege was the highest level of security at CIM, except for administrative segregation. Blaylock remained there for nearly all of the seven months before he murdered Officer Gonzales, despite his classification as a Level IV inmate with 376 custody points. Within one month of arriving at CIM, Blaylock's Central File ("C-File") arrived. It contained unequivocal information that Blaylock had repeatedly been involved in incidents of violence toward or prison staff and other inmates, including possession and use of weapons, during his prior incarcerations.

Plaintiffs allege that knowing that Blaylock had violent propensities and was a serious and real danger to Officer Gonzales as well as other correctional staff, Defendants acted with deliberate indifference and placed Officer Gonzales at significant risk. Plaintiffs further allege that Defendants placed Blaylock in the general prison population (because of policies and practices that CIM and the Defendants engaged in), denied Officer Gonzales the use of a protective vest that had been ordered and individually fitted for him, and took other actions that created and increased the risk of danger to Officer Gonzales. Defendants deny these

allegations, and allege that they acted appropriately under the circumstances. Defendants further allege that the death of Officer Gonzales occurred because Officer Gonzales failed to follow written policy existing at CIM at the time of his murder.

On March 16, 2005, the Office of the Inspector General issued a report setting forth its findings of a special review that was conducted into the death of Officer Gonzales. The report's findings referenced, what the Inspector General considered to be, the improper housing of Blaylock in general population despite his known propensities for violence, the fact that standard security protocols, policies and procedures at CIM were routinely violated, and that despite CIM's receipt of an individually fitted protective vest for Officer Gonzales in September 2004, the vest had not been issued to him, even four months later, when he was stabbed. Defendants assert that the report of the Inspector General is irrelevant to the issues and/or subject matter of this case and has nothing to do with the discovery dispute at issue here.

Plaintiffs are not seeking discovery from the Office of the Inspector General, but merely note the report, because it provides the factual basis for Plaintiffs' knowledge that certain documents are in the possession of the Department of Corrections which contain relevant information necessary to the Plaintiffs' proof of their case.

## II.
## SUMMARY OF DISCOVERY DISPUTE AND CONFERENCES OF COUNSEL

On or about June 16 and June 23, 2006 Plaintiffs served subpoenas on the Department of Corrections seeking the production of documents and appearance of witnesses pursuant to Fed. Rule Civ. Proc. 45 and 30(b)(6). The documents and testimony pertain directly to the Defendants' classification and housing decisions for Blaylock while at CIM, operational and security policies and procedures, and the Defendants' refusal to provide Officer Gonzales with his protective vest.

On July 7, 2006, Deputy Attorney General David Adida (attorney for five of the Defendants) served written objections, on behalf of the California Department of Corrections ("CDCR"), to all of the requests for documents and deposition testimony. The objections asserted that the categories were over broad, ambiguous and did not describe with sufficient particularity the documents and information being sought. In response, Plaintiffs' counsel engaged in two separate telephone conferences with Mr. Adida, during which they discussed each request and category in each subpoena and what changes to make, if any, in order to narrow the scope of the requests or clarify them. Plaintiffs thereafter revised the subpoenas and re-served them on July 24, 2006.

On August 7, 2006, Mr. Adida, on behalf of the CDCR, again served written objections. Written objections were also served by Michael Bell, attorney for the remaining three Defendants, on July 27, 2006, and by the Public Defender's Office, on behalf of Blaylock.

On August 10, 2006, Plaintiffs' counsel, Mr. Adida, Mr. Bell and Mr. Steven Mapes of the Public Defender's Officer engaged in a further telephonic conference in an attempt to resolve and narrow the issues that are in dispute regarding the subpoenas to the CDCR. All of the attorneys' agreed that it would be appropriate to enter into a Confidentiality/Protective Order with regard to certain of the documents and information being sought (*e.g.,* the Defendants' personnel files, the medical and psychiatric records of Blaylock.) The parties' agreement with regard to specific documents are noted within the pertinent sections below.

Despite the parties' agreements on some issues, their efforts to resolve all disputes were unsuccessful. Hence, Plaintiffs file (concurrently herewith) a motion to compel the CDCR to produce documents and provide testimony as sought in the two subpoenas which are the subject of this Joint Statement of Discovery Dispute.

The case is set for trial on December 5, 2006 in the U.S. District Court for the Central District of California before the Honorable Judge Margaret Morrow. Because the CDCR is not a party to the case, the subpoenas at issue here were issued from the Eastern District of California; thus, this motion is likewise brought in the Eastern District of California.

## III.

## DISCOVERY IN DISPUTE AND THE CONTENTIONS AND LEGAL AUTHORITY OF THE PARTIES REGARDING EACH ISSUE

### A. SOVEREIGN IMMUNITY

**DISCOVERY AT ISSUE RE: SOVEREIGN IMMUNITY:**

Pursuant to Local Rule 37-251(c) (3), which provides that "when a protective order is sought that is unrelated to specific, individual items, repetition of the original document is not required." Here, the State objects on the basis of its sovereign immunity to the Plaintiffs' deposition subpoena and subpoena duces tecum (in their entirety), on the grounds that the State has not waived its sovereign immunity.

Even though the Local Rules do not require the individual items to be repeated, the parties attach copies of each subpoena, collectively as Exhibit "A," for the court's convenience and reference. Similarly, the State's "Written Objections to Subpoenas" are attached as Exhibit "B."

**CDCR'S OBJECTIONS RE: SOVEREIGN IMMUNITY:**

General Objections Applicable to All Requests

The State of California is not subject to this discovery subpoena under the FRCP because it has not waived its sovereign immunity.

## 1. PLAINTIFFS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: SOVEREIGN IMMUNITY

Plaintiffs served subpoenas, pursuant to F.R.C.P. 45, on the California Department of Corrections seeking the production of documents and testimony, pursuant to F.R.C.P. 30(b)(6), with regard to various categories. The State of California objected to the subpoenas contending that it "is not subject to the discovery subpoena[s], because it has not waived its sovereign immunity." More specifically, the State's attorney has asserted that the sovereign immunity of the Eleventh Amendment applies not only to lawsuits against the state, but also to bar discovery proceedings against the state.

The State's position is contrary to case law directly on point (*Laxalt v. C.K. McClatchy* (1986) 109 F.R.D. 632) that supports enforcement of the Plaintiffs' subpoenas, as well as Ninth Circuit authority holding that the doctrine of sovereign immunity does _not_ authorize the government to refuse to provide discovery in a civil action in federal court. [*Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d. 774 (9th Cir. 1994.]

In *Laxalt, supra,* a state agency moved to quash both a discovery subpoena and notice of deposition directed at it. The state agency claimed that it was immune, under the Eleventh Amendment, from the discovery demands because it was a nonparty state agency in a federal court action. The federal court, however, denied the motion and ruled that the Eleventh Amendment does not bar discovery. Specifically, the court stated:

> It is clear that the Eleventh Amendment establishes that a federal court has no jurisdiction over any lawsuit against a state. However, it has been construed to refer to assertions of liability on the state's part and claims for relief against it. [*Id.* at 634; citations omitted.]

Just as in *Laxalt*, the Plaintiffs here have served subpoenas for documents and deposition testimony on a nonparty state agency, the California Department of Corrections ("CDCR".) The CDCR asserts that it is immune from discovery, under the Eleventh Amendment, for the same reasons the state agency argued in *Laxalt.* Hence, for the same reasons the court enforced the subpoenas in *Laxalt*, this court should also compel the CDCR to comply with the Plaintiffs' subpoenas.

In the case at bar, the CDCR (during the meet and confer conferences between counsel) asserted that its refusal to comply with Plaintiffs' subpoenas was in reliance on two cases that involve federal subpoenas issued to nonparty *federal* (not state) agencies (*i.e., United States Environmental Protection Agency v. General Electric Co.* 197 F.3d 592 (2nd Cir. 1999) and *Comsat Corp v. Natl Science Foundation* 109 F.3d 269 (4th Cir. 1999). Each of those cases are not only inapposite, but lack authority in this circuit. The Ninth Circuit has specifically held that the doctrine of sovereign immunity does *not* authorize a nonparty federal agency to refuse to provide discovery in a civil action in federal court. [*Exxon Shipping, supra,* 778-779 (9th Cir. 1994), emphasis added.]

In *Exxon*, the plaintiff issued subpoenas to ten federal employees who worked for federal agencies. The federal government objected to the subpoenas arguing that because of its sovereign immunity, the federal officials could not be compelled to testify in an action not involving the United States. The government reasoned, just as the State argues in the case at bar, that the subpoenas, which seek relief against a federal official, constitute an "action" against the United States. The Ninth Circuit rejected that argument.

Since the Ninth Circuit's decision in *Exxon Shipping*, several other courts have followed suit. *See e.g., In re Fayed,* 91 F.Supp.2d 137, 138 (C.D. D.C. 2000) (the court held that sovereign immunity does not bar the enforcement of a federal subpoena to a nonparty federal agency); *Connaught Labs v. SmithKline Beecham*, 7 F.Supp.2d 477, 479 (D.Del. 1998) (court ruled that "in an action in federal court, sovereign immunity does not bar the federal court from enforcing a federal subpoena against the federal government"); and *Leyh v. Modicon, Inc.* 881 F.Supp. 420 (S.D. Ind. 1995) (holding that sovereign immunity did not bar enforcement of a subpoena issued to a non-party government agency.)

As set forth in the CDCR's "contentions and legal authority" below, the CDCR argues that requiring it to comply with the subpoenas would create an undue burden. The court in *Exxon* and several other cases, when presented with the same argument, pointed out that

> "[W]hile the courts have recognized the legitimacy of such concerns, they have also recognized the district court's ability to balance the government's concerns with the private litigant's interest in obtaining evidence by applying the limitations and protections contained in F.R.C.P. 26(c) and 45(c)(3) which give courts discretion to quash or modify subpoenas causing 'undue burden.'"

Here, the CDCR claims that "plaintiffs have requested the State to produce in excess of 20 individuals, and produce thousands of documents." The truth of the matter, however, is that Plaintiffs have limited their subpoenas to specific categories of documents within a particular period of time and scope after discussions and agreement with the CDCR's attorney, and the CDCR has agreed to produce documents to almost all categories requested. The deposition subpoenas have also been similarly limited in time and scope. [*See,* Para. 4 of the Declaration of Theresa J. Barta, filed concurrently herewith.]

Contrary to CDCR's claim that Plaintiffs' have subpoenaed "in excess of 20 individuals," the Plaintiffs have issued only two deposition subpoenas, and because of the overlap in the categories it is likely that only a few individuals will need to provide testimony. [*See,* para. 5 of Barta Decl.] Finally, the information being sought (*e.g.,* classification and housing of Blaylock, policies and procedures governing safety and security, and information relating to the vests ordered for Officer Gonzales) are all directly relevant and necessary for the Plaintiffs' case and proof that the Defendants acted with deliberate indifference to a known or obvious danger. To bar the Plaintiffs from obtaining such information from the CDCR in this case would, as the Ninth Circuit recited in *Exxon Shipping*, "violate the fundamental principle that the public has a right to every man's evidence. " [*Id.* at 779, internal citations omitted.]

For these reasons, the Plaintiffs respectfully submit that the CDCR's objection based on its claim of sovereign immunity be overruled.

## 2. DEPARTMENT OF CORRECTIONS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: SOVEREIGN IMMUNITY

### A. THE ELEVENTH AMENDMENT PREVENTS THE ENFORCEMENT OF FEDERAL SUBPOENAS DIRECTED AT THE STATE OF CALIFORNIA

The Eleventh Amendment to the Constitution provides:

> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." (U.S. Const., Amend. XI.)

"The Eleventh Amendment is an explicit limitation of the judicial power of the United States." (*Missouri v. Fiske*, 290 U.S. 18, 25 (1933).) "It deprives a federal court of power to decide certain claims against States that would otherwise be within the scope of Article III's jurisdiction." (*Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 119-20 (1984).) The bar of the Eleventh Amendment applies regardless of whether the claims arise under state, federal or common law. (*Pennhurst*, 465 U.S. at 100, 120-21; *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 251 (1985).)

A judicial proceeding is considered brought against the sovereign if the result could serve "to restrain the Government from acting, or to compel it to act." ( *Dugan v. Rank*, 372 U.S. 609, 620, 10 L. Ed. 2d 15, 83 S. Ct. 999 (1963) [citations and internal quotation marks omitted].) The enforcement of the subpoena duces tecum issued by the plaintiffs to the State of California would compel the State of California to act. Plaintiffs are not seeking deponents who will testify as to personal matters or will produce personal notes or documents. Plaintiffs' subpoenas will compel the State of California to produce for deposition a slew (not less than 20) of State employees, appearing in their official capacities, to testify about State of California matters, obtained by them while acting as State employees, and to produce thousands of State documents. On this basis, the subpoenas in question will, indeed, operate against one of the United States. Therefore, they are barred by sovereign immunity[1].

---

[1]In a similar context, regarding "'the power . . . to issue subpoenas to compel the attendance of witnesses and the production of documents, and to punish by fine and imprisonment,'" the court in *United States v. McLeod*, 385 F.2d at page 752, noted that "'When this power is asserted by a state sovereignty over the federal sovereignty, it is in contravention of our dual form of government and in derogation of the powers of the federal sovereignty.'"

The Ninth Circuit has held that a federal subpoena issued against a tribe could not be enforced because of sovereign tribal immunity. In *United States v. James*, 980 F.2d 1314 (9th Cir. 1992), the Indian defendant was prosecuted by the federal government for the crime of rape against another Indian pursuant to the grant of federal jurisdiction through the Indian Major Crimes Act, 18 U.S.C. § 1153. The defendant appealed his criminal conviction in part on the ground that the federal district court erred in quashing a subpoena that ordered the Quinault Tribe to release documents in its possession relating to the victim's alcohol and drug problem. (Id. at 1319.) In affirming the district court's order to quash the subpoena, the court noted that "Congress did not address implicitly, much less explicitly, the amenability of the tribes to the processes of the court in which the prosecution is commenced" when it granted federal criminal jurisdiction over individual Indians for certain crimes pursuant to 18 U.S.C. 1153. (Id. at 1319.) The court held that the Tribe was possessed of tribal immunity, and thus the federal court lacked the jurisdiction to enforce a subpoena against an unwilling sovereign even though the federal government had jurisdiction to enforce federal criminal laws against individual Indians. (Id. at 1319.)

The ruling in *James* is directly relevant to plaintiffs' motion. The *James* court correctly focused on the status of Indian tribes as sovereigns and denied the federal government the authority to compel disclosure of tribal documents. That the federal government may not pierce the sovereignty of Indian tribes, notwithstanding its constitutionally preemptive authority over Indian affairs, see U.S. CONST. art. I, { 8, should carry considerable weight in favor of the State of California's position[2].

---

[2]Following principles of comity and this Circuit's jurisprudence, comparison to cases denying enforcement of state court subpoenas against the United States government is also appropriate. (See *Quechan Tribe of Indians*, 595 F.2d at 1155 (noting that the "sovereign immunity of Indian tribes is similar to the sovereign immunity of the United States"). In *Elko County Grand Jury v. Siminoe*, 109 F.3d 554, 556 (9th Cir. 1997), the Ninth Circuit denied the enforcement of a subpoena against a Forest Service employee,

In *James*, the Quinault Tribe asserted sovereign immunity to "protect the Native American victim and to foster confidence in the tribe's Social and Health Services." The James Court held that the protection of tribal sovereignty justified the withholding of tribal documents even though they might be relevant to a federal criminal prosecution. (*James*, 980 F.2d at 1319-1320.) In the present case, the State of California asserts sovereign immunity to protect its right to self-government. The essential nature and effect of the plaintiffs' subpoenas will interfere with the conservation of government resources and the protection of orderly governmental operations. "If [agency] employees were routinely permitted to testify in private suits, significant loss of manpower hours would predictably result. . . . The doctrine of sovereign immunity confers such 'protection from direct judicial interference.'" (*Reynolds Metals Co. v. Crowther* , 572 F. Supp. 288, 290 (D.C. Mass. 1982), quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 704, 93 L. Ed. 1628, 69 S. Ct. 1457 (1949).) The State of California does not want its officials finding themselves spending all of their time doing nothing but complying with federal discovery orders, and thus have little opportunity to pursue important governmental responsibilities[3].

The State of California, like the federal government, has adopted certain polices and procedures regarding its jail system. These policies promote its interests, such as, among other things, accuracy of the records, the health and safety of inmates and its employees, and the confidentiality of its employees' personal information. These interests weigh more than

---

holding that principles of sovereign immunity bar a state court from enforcing a subpoena against the United States.

[3]In two subpoenas, the State of California has been requested to provide persons most knowledgeable to more than 50 categories of issues, and yet plaintiffs insist on paying only $90 for that burdensome endeavor. The State has also been requested to produce thousands of documents. There is no question that the absence of the State employees for even a short time from their duties will be disruptive.

plaintiffs' interest in investigating their underlying claims[4] in this case - something that could be accomplished through far less intrusive means than infringing on the State of California's sovereignty[5]. It is clear that the interests at stake for the State of California are equally as great as those at stake for the Quinault Tribe in James. Moreover, the plaintiffs' interest in this case--the investigation of its underlying claims--is not as great as the federal government's interest in the judicious criminal prosecution in James, and it is certainly not as great as protecting the State of California's sovereign immunity.

The bar of the Eleventh Amendment applies unless the State has waived its sovereign immunity. (*Florida Dep't of State v. Treasurer Salvors, Inc.*, 485 U.S. 670, 684 (1982).) The test for determining whether a state has waived its constitutional right to immunity from federal court suit is a stringent one. (*Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 239-41 (1985); *Micomonaco v. State of Washington*, 45 F.3d 316, 321 (9th Cir. 1995) ("Waiver will be found only where the State gives an unequivocal indication that it consents to suit in federal court.").) A state can consent to be sued in federal court through: 1) a constitutional or statutory provision expressly consenting to suit in federal court (*Atascadero*, 473 U.S. at 238 ftn.1); or 2) a knowing and unequivocal expression by a state official or representative who is authorized by state law to waive the state's Eleventh Amendment immunity. (*Ford*

---

[4]The trial court ruled that the only allegations in the complaint which could give rise to the defendants' liability are (1) the defendants' alleged improper assignment of Blaylock to a general population cell upon his arrival at CIM, and (2) the defendants' alleged return of Blaylock to the general prison population after he was detained in administrative segregation for purportedly assaulting another inmate.

[5]For example, plaintiffs seek the production of thousands of documents related to the protective vests that the State purchased for some of its correctional officers. Production would be unnecessarily burdensome because many of the documents originated from the manufacturer of the vests and may be discovered from that organization. Also, because the documents are available via FOIA or through the makers of the protective vests, compliance is unnecessary to prevent a miscarriage of justice.

*Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 465-67 (1945).) Here, there is no State constitutional or statutory provision consenting to suit in federal court. In addition, the State has taken no action whatsoever that would evidence its consent to jurisdiction in this proceeding.

## B. THE CASE PLAINTIFFS ARE RELYING UPON IS CLEARLY DISTINGUISHABLE

In *Laxalt v. C.K. McClatchy* (1986) 109 F.R.D. 632), the case cited by the plaintiffs, the District Court was faced with the issue of whether the Eleventh Amendment barred discovery requests against a nonparty state in civil litigation. The District Court found it did not, but the District Court found no cases on point to support its holding, and its analysis was limited to the following two sentences:

> "In *Florida Dept. of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 699, 73 L. Ed. 2d 1057, 102 S. Ct. 3304 (1982), the plurality approved the service of process on state officials to secure possession of artifacts held by them. The analogy to the instant proceedings, where inspection and copying of State records is all that is being sought, is apparent."

The plaintiff corporation in *Treasure Salvors*, *supra*, had located the wreck of a 17th-century Spanish galleon off the Florida coast, and the State of Florida immediately claimed ownership of the galleon and its artifacts pursuant to a Florida statute. Plaintiff filed a motion in the District Court for an order commanding the United States Marshal to arrest and take custody of the galleon artifacts and bring them within the court's jurisdiction. The District Court granted the motion and issued a warrant of arrest that was addressed to Florida state officials holding the property.

The State of Florida argued that the Eleventh Amendment barred exercise of the District Court's jurisdiction, but the district Court rejected this argument. The Supreme Court affirmed on the following grounds: (1) The Eleventh Amendment, while barring an action directly against the state itself or any agency thereof, does not bar an action against a state official that is based on the theory that the official acted beyond the scope of his statutory authority or, if within that authority, that such authority was unconstitutional; (2) Here, the process was not barred by the Eleventh Amendment as a direct action against the State, because it was directed only at state officials; (3) the relief sought by the plaintiff is not barred by the Eleventh Amendment because the warrant of arrest does not seek an attachment of state funds, and would impose no burden on the state treasury.

*Treasure Salvors* is clearly distinguishable, and of no relevance to the issue in this case, i.e., whether the Eleventh Amendment bars service of subpoenas on one of the United States to secure possession of its own documents and employees at a great cost to the State. As noted by the Supreme Court, *Treasure Salvors* is a case subject to the doctrine of *Ex parte Young*, 209 U.S. 123 (1908). The rule of *Ex parte Young* is premised on the axiom that state officials cannot evade responsibility when their conduct "comes into conflict with the superior authority of [the] Constitution." (Id. at 159.) The Supreme Court permitted the service of process on Florida state officials to secure possession of property they were illegally holding:

> "It is clear that the process at issue was directed only at state officials and not at the State itself or any agency of the State.... The process thus is not barred by the Eleventh Amendment as a direct action against the State."

In this case, the subpoenas are directed specifically at the State of California, and/or the California Department of Corrections and Rehabilitation, a State agency. Thus, the subpoenas are barred by the Eleventh Amendment as a direct action against the State of California.

In conclusion, enforcement of the subpoenas at issue must be denied because this court has no jurisdiction to compel the State of California to respond to plaintiff's subpoenas.

**B. <u>DOCUMENTS AND FRCP 30(b)(6) TESTIMONY RE: PROTECTIVE VESTS</u>**

**<u>DISCOVERY AT ISSUE RE: PROTECTIVE VESTS</u>:**

**Plaintiffs' Subpoena to the California Department of Corrections**
**<u>(Requests for Production of Documents:</u>**

1. Contract No. 1-03-84-09 and all supplements and amendments.
2. [Intentionally left blank.]
3. All Bids regarding Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.
4. All Notices of Intent relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.
5. All Order relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.
6. All Contract Delegation Orders relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.
7. All sizing sheets relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.
8. All instructions relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.
9. All requests for custom fitting relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.
10. All invoices relating to Contract No. 1-03-84-09 for the time period prior to and

including January 10, 2005.

11. Documents reflecting payments made for purchases relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.

12. All usage reports (quarterly or otherwise) relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.

13. Any reports (quarterly or otherwise) relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.

14. All Purchase Estimate Forms (STD.66) submitted for processing to the Department of General Services for the time period prior to and including January 10, 2005, and which relate to Soft Body Armor, Stab Resistant, Spike Level III (*i.e.,* protective vests which are the subject matter of Contract No. 1-03-84-09.

16. All Documents reflecting any communications (written or oral) between the California Department of Corrections and Rehabilitations (including, California Institution for Men) and All State Police Equipment (Vendor No. 625808).

17. All Documents, including, but not limited to advertising, marketing materials, correspondence, memorandums, relating to All State Police Equipment (Vendor No. 625808) for the time period prior to and including January 10, 2005.

18. All Documents, including, but not limited to, correspondence, memoranda, and documents reflecting any communication (written or oral) relating to Purchase Order No. 51312128 for the time period prior to and including January 10, 2005.

19. All Documents, including, for example, marketing or advertising materials, testing results, representations, communications, received from All State Police Equipment (Vendor 625808) relating to Soft Body Armor, Stab Resistant, Spike Level III (*i.e.,* protective vests which are the subject matter of Contract No. 1-03-84-09) for the time period prior to and including January 10, 2005.

20. All Documents reflecting any communications (written oral) between the California Department of Corrections and Rehabilitation and the California Correctional Peace Officers Association (CCPOA) regarding the individually fitted protective vests referred to in Section 7.05 of the Agreement between the State of California and CCPOA, including, for example, correspondence, memos and documents reflecting when and for whom the vests were ordered and fitted for the time period prior to and including January 10, 2005.

21. [Intentionally left blank.]

22. All grievances filed by any California correctional peace officer of the

California Correctional Peace Officers Association (CCPOA), or anyone on their behalf, regarding the Soft Body Armor, Stab Resistant, Spike Level III (*i.e.,* protective vests which are the subject matter of Contract No. 1-03-84-09) for the time period prior to and including July 10, 2005.

23. All Documents reflecting any communications (written or oral) regarding any grievance filed by a California correctional peace officer of the California Correctional Peace Officers Association (CCPOA), or anyone on their behalf, regarding the Soft Body Armor, Stab Resistant, Spike Level III (*i.e.,* protective vests which are the subject matter of Contract No. 1-03-84-09) for the time period prior to and including July 10, 2005.

24. Purchase Order No. 51312128 for peace officer of the California Correctional Peace Officers Association (CCPOA), or anyone on their behalf, regarding the Soft Body Armor, Stab Resistant, Spike Level III from All State Police Equipment.

25. All Stock Received Reports, including, but not limited to No. 12873, for the Soft Body Armor, Stab Resistant, Spike Level III (*i.e.,* protective vests which are the subject matter of Contract No. 1-03-84-09) for the time period prior to and including July 10, 2005.

26. All Documents reflecting any communications (written or oral) regarding the distribution, statewide and at all institutions, of individually fitted protective vests referred to in Section 7.05 of the Agreement between the State of California and CCPOA for the time period prior to and including July 10, 2005.

27. All Documents reflecting any communications (written or oral) regarding the availability for distribution, statewide and at all institutions, , of individually fitted protective vests referred to in Section 7.05 of the Agreement between the State of California and CCPOA for the time period prior to and including July 10, 2005.

28. All Documents relating to the distribution, at California Institution of Men, of individually fitted protective vests, referred to in Section 7.05 of the Agreement between the State of California and CCPOA for the time period prior to and including July 10, 2005.

29. All Documents relating to the California Department of Corrections and Rehabilitation's use, implementation, testing and distribution of individually fitted protective vests referred to in Section 7.05 of the Agreement between the State of California and CCPOA for the time period prior to and including July 10, 2005.

**CDCR'S OBJECTIONS RE: PROTECTIVE VESTS:**

General Objections Applicable to All Requests

1. The State of California is not subject to this discovery subpoena under the FRCP because it has not waived its sovereign immunity.
2. The subpoena is invalid because it was not accompanied by the appropriate witness fees, pursuant to Gov. Code § 68096.1, et. seq.; failure to simultaneously the appropriate tender witness invalidates the subpoena [sic].
3. The discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome or less expensive.
4. The burden or expense of the proposed discovery on the State of California, who has an interest in conserving scarce government resources, outweighs its likely benefit. Compliance with this subpoena, where plaintiffs are seeking a tremendous number of C.R.C.R. agency documents, and demand the presence of dozens of agency employees at depositions, will measurably strain agency resources and divert agency personnel from their official duties.
5. The internal C.D.C.R. documents sought by this subpoena are protected from disclosure by federal and state "official information," "self-critical analysis," "state secrets," and "deliberative process" privileges because they relate to state interests which are usually protected by these privileges, e.g., institutional security, privacy rights of citizens and inmates, encouragement of public cooperation, negotiations between state agencies and unions. Legitimate interests of the State will be adversely affected by the release of these documents.
6. This subpoena seeks information and documents, such as investigative reports not already produced by the parties in their disclosures in the hands of the District Attorney's Office, that pertain to pending criminal litigation to which the State of California is a party, and which cannot be released until the

pending litigation or claim has been finally adjudicated or otherwise settled.

**Request Nos. 1-7, 10-12, 21, 28**

In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. Further, the State objects on the ground that inmate Blaylock's personal or private information concerning his education, medical history, criminal or employment records, finger and voice prints, photographs of his presence, institutional summaries, social history reports, progress reports, educational, vocational and diagnostic reports, as well as his medical, psychiatric and psychological reports, criminal intelligence information and information of clinical reports, are confidential and their release would constitute an unwarranted invasion of his personal privacy.

**Request Nos. 8-9, 19**

Further objection is made on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further, these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive confidential information which would constitute an unwarranted invasion of the personal privacy of individuals that cooperated in the investigations in question.

**Request Nos. 13-18**

In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. Further, these requests impermissibly seek the production of sensitive, confidential information which would endanger the

safety of State employees. The documents are protected from disclosure by the "official information," "state secrets," and "deliberative process" privileges because they relate to state interests which are usually protected by these privileges, e.g., institutional security, privacy rights of citizens and inmates.

**Request Nos. 20-22, 26-27**

In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further, these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive confidential information which would endanger the safety of the state agency's personnel.

**Request Nos. 24-25**

In addition, the State of California objects to these requests on the ground they are abusively drawn: they subject the responding party to undue burden, annoyance, oppression and expense, and they fail to allow reasonable time for compliance. Further objection is made on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. These documents are protected from disclosure by federal and state "official information," "self-critical analysis," "state secrets," and "deliberative process" privileges because they relate to state interests which are usually protected by these privileges, e.g., institutional security, privacy rights of citizens and inmates. Finally, they seek the production of sensitive, confidential information which would endanger the safety of the state agency's personnel, as well as that of the inmates.

**Request Nos. 29**

In addition, the State of California objects to these requests on the

ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. Further, they seek the production of sensitive, confidential information which would constitute an unwarranted invasion of the defendants' personal privacy.

C.

SUBPOENA NAMING "CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATIONS" [Protective Vest PMK, Prod. Date of August 16, 2006, in Sacramento]

General Objections Applicable to All PMK categories

1. The State of California is not subject to this discovery subpoena under the FRCP because it has not waived its sovereign immunity;
2. The subpoena is invalid because it was not accompanied by the appropriate witness fees, pursuant to Gov. Code § 68096.1, et seq.; failure to simultaneously the appropriate tender witness invalidates the subpoena;
3. The discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;
4. The burden or expense of the proposed discovery on the State of California, who has an interest in conserving scarce government resources, outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Compliance with this subpoena, where plaintiffs are seeking a tremendous number of C.D.C.R. agency documents, and demand the presence of dozens of agency employees at depositions, will measurably strain agency resources and divert agency personnel from their official duties.
5. The internal C.D.C.R. information sought by this subpoena are protected from disclosure by the "official information," "self-critical analysis," "state secrets," and "deliberative process"

privileges because they relate to state interests which are usually protected by these privileges, e.g., institutional security, privacy rights of citizens and inmates, encouragement of public cooperation, negotiations between state agencies and unions. Legitimate interests of the State would be adversely affected by the release of this information.

**CATEGORY NO. 1**

In addition, the State objects on the ground that this category is overbroad, vague and ambiguous. The subpoena does not describe with reasonable particularity the matters on which examination is requested. Finally, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence.

**CATEGORY NOS. 2-6**

In addition, the State of California objects to these categories on the ground they are abusively drawn: they subject the responding party to undue burden, annoyance, oppression, and expense, and they fail to allow reasonable time for compliance. Further objection is made on the ground the information requested is irrelevant to the remaining matters at issue in this litigation, and its production will not lead to the discovery of relevant evidence. In addition, the State objects to these categories on the ground they seek information related to preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek information related to a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Further, they seek sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety. Finally, they do not describe with reasonable particularity the matters on which examination is requested.

**CATEGORY NO. 7**

In addition, the State of California objects to this category on the ground it is abusively drawn: it subjects the responding party to undue burden, annoyance, oppression, and expense, and it fails to allow reasonable time for compliance. Further objection is made on the ground the information requested is irrelevant to the remaining matters at issue in this litigation, and its production will not lead to the discovery of relevant evidence. In addition, the State objects to this category on the ground it seeks information contained in preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further this category impermissibly seeks the production of information that reveals a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Further, it seeks the release of sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety. Finally, it does not describe with reasonable particularity the matters on which examination is requested.

**CATEGORY NO. 8**

In addition, the State objects to this category on the ground it seeks information contained in preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further this category impermissibly seeks the production of information that reveals a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, it seeks the release of sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety.

**CATEGORY NOS. 9-10**

Further objection is made on the ground the information requested is irrelevant to the remaining matters at issue in this litigation, and its production will not lead to the discovery of relevant evidence. Further, it does not describe with reasonable particularity the matters on which examination is requested. In addition, the State objects to this category on the ground it seeks information

contained in preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Finally, this category impermissibly seeks the production of information that reveals a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy.

**CATEGORY NOS. 11-13**

In addition, the State of California objects to these categories on the ground they are abusively drawn: they subject the responding party to undue burden, annoyance, oppression, and expense, and they fail to allow reasonable time for compliance. Further objection is made on the ground the information requested is irrelevant to the remaining matters at issue in this litigation, and its production will not lead to the discovery of relevant evidence. Finally, they do not describe with reasonable particularity the matters on which examination is requested.

General Objections Applicable to All Requests to Produce documents

1. The State of California is not subject to this discovery subpoena under the FRCP because it has not waived its sovereign immunity;
2. The subpoena is invalid because it was not accompanied by the appropriate witness fees, pursuant to Gov. Code § 68096.1, et seq.; failure to simultaneously the appropriate tender witness invalidates the subpoena;
3. The discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;
4. The burden or expense of the proposed discovery on the State of California, who has an interest in conserving scarce government resources, outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Compliance with this subpoena, where plaintiffs are seeking a tremendous number of C.D.C.R. agency documents, and demand the presence of dozens of agency employees at

depositions, will measurably strain agency resources and divert agency personnel from their official duties.

5. The internal C.D.C.R. documents sought by this subpoena are protected from disclosure by the "official information," "self-critical analysis," "state secrets," and "deliberative process" privileges because they relate to state interests which are usually protected by these privileges, e.g., institutional security, privacy rights of citizens and inmates, encouragement of public cooperation, negotiations between state agencies and unions.

**REQUEST NOS. 1, 24**

In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence.

**REQUEST NOS. 3-14**

In addition, the State of California objects to these requests on the ground they are abusively drawn: they subject the responding party to undue burden, annoyance, oppression, and expense, and they fail to allow reasonable time for compliance. Further objection is made on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety.

**REQUEST NO. 15-18**

In addition, the State of California objects to these requests on the ground the

information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety.

**REQUEST NO. 19**

In addition, the State of California objects to this request on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence.

**REQUEST NO. 20**

In addition, the State of California objects to these requests on the ground they are abusively drawn: they subject the responding party to undue burden, annoyance, oppression, and expense, and they fail to allow reasonable time for compliance. Further objection is made on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety.

**REQUEST NO. 21-23, 25-29**

In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety.

**REQUEST NO. 30**

If the State is held not to be protected by sovereign immunity, the State will comply with this request, and will produce the vest to be viewed at a time that a mutually convenient for every one.

## 1. PLAINTIFFS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: PROTECTIVE VESTS

Plaintiffs seek documents and testimony relating to the individually fitted vests that were ordered and procured for Officer Gonzales and other correctional officers; a stab resistant vest that would have saved Officer Gonzales' life if he had been wearing it on January 20, 2005 – the day he was fatally stabbed by an inmate at California Institute of Men ("CIM") in Chino, California.

On September 9, 2004, three hundred and sixty-two (362) protective vests were delivered to CIM, including one specifically fitted and designated for Officer Gonzales. The protective vests were designed to prevent the exact type of injuries that were inflicted upon Officer Gonzales. Over four months later, the protective vests, including the one fitted and designated for Officer Gonzales, were still in the warehouse at CIM. Despite the obvious need for immediately issuing the vests, and because the vests could simply have been distributed to the designated officers upon their receipt, the fact the vests were still in the warehouse four months later means that someone made a decision to withhold, and refuse to distribute, the vests to Officer Gonzales and other correctional officers. Such refusal to distribute the protective vest to Officer Gonzales was a deliberate act that subjected Officer Gonzales to increased risk and obvious and known dangers.

The Department of Corrections ("CDCR") is refusing to produce documents and testimony regarding the procurement, distribution and other information about the vests, based on an objection that the information is irrelevant to the claims "remaining in the case." That objection, however, is based on the CDCR's false contention that the trial court has made findings of fact and conclusions of law in this case (*see* pages 36 & 40 of its argument below, where the CDCR states: "in response to the defendants' motion to dismiss the complaint, the

trial court *found*: . . ." and "the trial court has *already ruled* that [Gonzales'] failure to receive a protective vest cannot form the basis of liability." (Emphasis added.)

### A. **The Trial Court Has *NOT* Made Findings of Fact or Conclusions of Law**

On October 12, 2005, Defendants filed a motion to dismiss pursuant to F.R.C.P. 12(b)(6). Thereafter, the court issued an "Order Denying Defendants' Motions to Dismiss."[6] At no time, in either the Order, or otherwise, did the trial court ever make "findings of fact or conclusions of law." Rather, the court's Order simply set forth the facts and allegations of the complaint and engaged in a *analysis* of the legal sufficiency of the Plaintiffs' claims for purposes of deciding a Rule 12(b)(6) motion to dismiss. The trial court did *not* rule, or make findings, as to the Plaintiffs' claim regarding the protective vest, or any other issues.[7]

---

[6] Because both parties refer to the "Order Denying Defendants' Motions to Dismiss," a copy of the Order is attached hereto as Exhibit "C," for the convenience of the court.

[7] When a court makes "findings of fact and conclusions of law," it is specifically stated in its order or decision. [*See e.g., In re Duncan* 123 B.R. 383 (1991) (The judge wrote "[t]his memorandum opinion shall constitute my findings of fact and conclusions of law."); *Matter of Visioneering Const.* 661 F.2d 119 (1981) (Court found that the judge in his findings of fact and conclusions of law entered with his Order clearly stated that he was not making a finding regarding the truth of jurisdictional allegations.); *Nishiyama v. North Am. Rockwell Corp.* 49 F.R.D. 288 (1970) (On a motion to dismiss, the judge stated "[b]y reason of the foregoing Decision, Findings of Fact and Conclusions of Law, it is hereby ordered that defendant's Motion to Dismiss the Complaint be granted and that Plaintiff be given 30 days within which to file an Amended Complaint.")]

Moreover, F.RC.P. 52(a) provides that: "[f]indings of fact and conclusions of law are unnecessary in decisions of motions under Rule 12 . . . except as provided in subdivision (c) of this rule. Subdivision (c) provides:

> "If during a trial without a jury a party *has been fully heard on an issue* and the court finds against the party on the issue, the court may enter judgment as a matter of law against the party with respect to a claim . . Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule.

Here, the Plaintiffs' claim regarding the protective vests has not been fully heard, nor has the trial court made any findings of fact or rulings of law on the issue. In fact, a "court may not make fact findings of a controverted matter when ruling on a Rule 12(b)(6) motion." [*U.S. v. LSL Biotechnologies,* 379 F.3d 672, 700 (9th Cir. 2004).] In the case at bar, the issue regarding the vests is certainly controverted as evidenced by the CDCR's adamant refusal to produce any information on the subject matter.)

**B. <u>The Information Regarding the Vests is Relevant</u>**

In *Shoen v. Shoen,* 5 F.3d 1289 (9th Cir. 1993), the Ninth Circuit held that a non-party can be compelled to produce evidence regarding any matter "relevant to the subject matter involved in the pending action" or "reasonably calculated to lead to the discovery of admissible evidence." [*See also,* Fed.R.Civ.P. 26(b)(1).] The court explained that:

> "This broad right of discovery is based on the general principle that litigants have a right to 'every man's evidence' (citations omitted), and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth. [*Id.* at 1292.]

The protective vests, at issue here, are relevant, or at the very least reasonably calculated to lead to the discovery of admissible evidence, because they were designed to prevent the exact type of injury that was inflicted upon Officer Gonzales, a known and obvious danger. Further, because the vests should simply have been distributed to the designated officers upon their receipt, the reason why the vests were still in the warehouse four months later is relevant, or could lead to admissible evidence, showing that the Defendants acted with deliberate indifference to known or obvious dangers. Specifically, for example, the information sought will reveal why the vests were not immediately distributed to Officer Gonzales and others, (*i.e.,* whether the vests were intentionally withheld based on a policy or directive of CIM or the CDCR, or whether a decision was made by someone specifically to withhold the vests.)

The CDCR, in opposing this motion, argues that the trial court "ruled that the failure to receive a vest cannot form a basis of liability." That argument fails for several reasons. First, as detailed herein above, the trial court made no such ruling. Second, the issue is not a "failure to receive vest" or even a "failure to distribute,"[8] but the deliberate indifference of someone in refusing to distribute the vests to the correctional officers. Third, even if the refusal or failure to distribute the vests does not constitute an affirmative act on its own – which the Plaintiffs do not concede, but assert here only for the sake of argument – that fact is circumstantial evidence of a state of mind of deliberate indifference or conscious disregard, a necessary part of the Plaintiffs' case.

---

[8] Plaintiffs' counsel acknowledges that this language is part of the verbiage used in the complaint, and that the complaint in that regard may not be as artfully pled as it could have been. Nevertheless, the arguments asserted in this motion, and in this case, are based on *facts* asserted in the complaint, not the "phraseology" of the legal allegations.

First, the State argues that Plaintiffs' allegations regarding the vest are "omissions or a failure to act." That is incorrect. The Plaintiffs do not allege that the State failed to order or procure a vest for Officer Gonzales (one had actually been fitted and ordered for him), or failed to obtain the vest from the manufacturer, or simply did not get around to distributing the vests. Rather, the Plaintiffs allege that, because the vests were available and should have been distributed as a matter of course, some affirmative act (*i.e.,* a decision or some other interference) must have been taken to prevent the vests from being distributed.

Such facts and allegations are analogous to *Wood v. Ostrander,* 879 F.2d 583 (9th Cir. 1989) (where the court found a state trooper had acted with deliberate indifference for the plaintiff's safety by leaving her stranded alone at night in an area of high crime) and *Monfils v. Taylor,* 165 F.3d 511 (7th Cir. 1998) (where a 1983 claim was based on an officer's act of not preventing the release of a tape recording of an anonymous informant.) In each of those cases, the acts consisted of a "failure to do something," which the court found to be an act that increased an existing risk of danger. That is exactly what happened when some one, or more, prevented Officer Gonzales from receiving his vest; *i.e.,* they increased the existing risk of being stabbed by an inmate.

Plaintiffs believe that one, or more, of the Defendants issued a directive, or made a specific decision, to withhold the vests from the correctional officers at CIM. If that is true, one can only imagine the fury that will follow when that fact becomes known. For that reason, and others, Plaintiff believes that the CDCR is refusing to produce any documents or testimony regarding the protective vests.

Finally, even if the refusal or failure to distribute the vests does not constitute an affirmative act – which the Plaintiffs do not concede, but assert here only for the sake of argument – the facts would constitute circumstantial evidence of a deliberate indifference,

or conscious disregard, state of mind; something that is part of the proof in the Plaintiffs' case. [*See, L.W. v. Grubbs,* 92 F.3d 894, 900 (9th Cir. 1996) "plaintiff must show that [Defendants] .. acted with deliberate indifference to the known or obvious danger."] In discussing the element of "deliberate indifference," the Ninth Circuit, relying on other circuits, referred to "deliberate indifference" as a *state of mind.* [*Id.* at 898-899.]

It is well recognized that circumstantial evidence can be used to prove, or establish, a "state of mind," and specifically that of "deliberate indifference" in a 1983 action. [*See e.g., In re Ariba, Inc. Securities Litigation,* 2005 WL 608278 (2005); *Babb v. Calvo*, 2005 WL 1503930 (E.D. Cal. 2005); *Estate of Abdollahi v. County of Sacramento,* 405 F.Supp.2d 1194 (E.D.Cal. 2005); *Gibson v. County of Washoe, Nev.,* 290 F.3d 1175 (9th Cir. 2002) .]

In other words, Plaintiffs will establish that Defendants' acted with "deliberate indifference," by presenting facts and evidence that, when viewed in isolation may seem inconsequential or even irrelevant, but when taken together will constitute strong circumstantial evidence that the Defendants acted consciously, deliberately, and without regard for Officer Gonzales' safety. Such evidence, for example, will include the fact that Officer Gonzales was denied the protection of his personally fitted stab-resistant vest, when the vest was available, and should have been, distributed to him four months earlier.

Contrary to the claims of the CDCR in its opposing contentions below, each of these legal arguments and explanations of how the items relating to the protective vest are relevant, or would lead to admissible evidence, were discussed ad nauseam between Plaintiffs' counsel and the attorney for the State during meet and confer conferences. [See, para. 6 of Barta Decl.]

## 2. DEPARTMENT OF CORRECTIONS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: PROTECTIVE VESTS

### A. PROCEDURAL BACKGROUND

In this case, the Due Process Clause of the Fourteenth Amendment in its substantive guise is the sole potential basis for relief under section 1983. (*L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992) ("*Grubbs I*").)

In order to successfully state a due process violation, plaintiffs must show: (1) the defendants' act was directed toward a specific plaintiff (*see, e.g., Wood*, 879 F.2d at 590 (reasoning that the state's action "distinguished [the plaintiff] from the general public and triggered a duty of the police to afford her some measure of peace and safety"); (2) the government acted affirmatively, and not simply failed to act; (*see, e.g., Grubbs I*, 974 F.2d at 121 [requiring "affirmative conduct on the part of the state in placing the plaintiff in danger"]; *Munger*, 227 F.3d at 1086 [phrasing the inquiry as "whether [the state] did in fact affirmatively place [the plaintiff] in danger"]; (3) the government's act caused the harm, rather than merely increased the risk; (*see, e.g., Grubbs I*, 974 F.2d at 121 [finding state-created danger where the state's action "created an opportunity for [the inmate] to assault [the plaintiff] that would not otherwise have existed"]; *Penilla*, 115 F.3d at 708 [same]; *Munger*, 227 F.3d at 1087 [same]; and (4) the defendants' acted with deliberate indifference; (*see, e.g., Grubbs II*, 92 F.3d 894, 899-900 (1996) [requiring the plaintiff to show that the state official "acted with deliberate indifference to the known or obvious danger"].)

In response to the defendants' earlier motions to dismiss the complaint, the trial court found:

> "While it is sufficient for plaintiffs to allege defendants took affirmative acts that exacerbated an existing danger or created an opportunity for Blaylock to attack Gonzalez, they cannot base their state created danger claim on allegations of negligence, failures to act, or failures to interfere. [citations omitted.]
>
> Plaintiffs' allegations regarding defendants' conduct fall into five broad categories: (1) placement of Blaylock in the general prison population; (2) failure and refusal to provide Gonzalez with a protective vest[9]; (3) failure and refusal to provide supervision, administration, and support to the correctional staff to make sure that Blaylock was not given authority as a "shot caller"; (4) failure and refusal to provide supervision, administration, and support to the correctional staff to ensure that safety protocols and procedures - and in particular, the modified program and modified lockdown directives - were enforced; and (5) failure to equip the medical staff and train the medical staff adequately.

---

[9]In an earlier portion of the court's ruling, the court took note that

> "[p]laintiffs also allege that defendants acted with deliberate indifference to Gonzalez's safety by failing and refusing to provide him with a protective vest, knowing that he had been specially fitted for a vest and that CIM had received a delivery of 362 vests on September 09, 2004. Plaintiffs assert that defendants acted in reckless disregard of Gonzalez's well being by keeping the vests in a warehouse for more than four months and making no effort to distribute them. They also contend that defendants failed and refused to prepare quarterly protective vest inventory reports, which would have ensured the timely distribution of the vests. Plaintiffs assert that had the vests been made available, Gonzalez would have survived Blaylock's assault." (Court's Order, Exhibit "C ..., p. 8.)

With the exception of the first category, the "acts" plaintiffs allege are omissions, i.e., failures to act or intervene. Inserting the word "refusal" following the word "failure" does not transform an omission into an affirmative act.

Without any underlying factual allegations of an affirmative act, the conclusory statement that defendants "created" a dangerous condition is inadequate. See Pinder v. Johnson, 54 F.3d 1169, 1175-76 ("No amount of semantics can disguise the fact that the real "affirmative act" here was committed by Pittman, not by Officer Johnson. As was true in DeShaney, the state did not 'create' the danger, it simply failed to provide adequate protection from it. In both cases, '[t]he most that can be said of the state functionaries ... is that they stood by and did nothing when suspicious circumstances dictated a more active role for them.' Pinder's case is purely an omission claim ... While it is true that inaction can often be artfully recharacterized as 'action,' courts should resist the temptation to inject this alternate framework into omissions cases by stretching the concept of 'affirmative acts' beyond the context of immediate interactions between the officer and the plaintiff.").

The complaint does allege two affirmative acts that created or increased the risk of danger to Gonzalez, however. It pleads that defendants improperly assigned Blaylock to a general population cell upon his arrival at CIM, and that they returned Blaylock to the general prison population after he was detained in administrative segregation for purportedly assaulting another inmate. Plaintiffs contend that Blaylock's misclassification and improper placement created a dangerous condition. Plaintiffs' allegations regarding improper classification and placement sufficiently plead affirmative acts by defendants that may have created or exacerbated a dangerous condition." (Court's Order, Exhibit "C"..., pp. 26-27.)

Plaintiffs argue that since the foregoing does not constitute findings of fact or conclusions of law, this District Court is entitled to disregard the foregoing analysis made by the trial court[10], and *de novo* analyze whether their subpoena seeking information regarding protective vests is relevant to claims which the trial has already found cannot give rise to liability. For obvious reasons, plaintiffs' attempt to have this District Court reconsider the trial court's earlier analysis that the defendants' alleged acts regarding their failure to provide a protective vest to the plaintiffs' decedent are nothing more than "omissions, i.e., failures to act or intervene," and therefore not viable under the Due Process Clause of the Fourteenth Amendment, should be rejected.

**B. DOCUMENTS RELATED TO THE CONTRACT TO PROVIDE, BIDS REGARDING, PAYMENT FOR, COMMUNICATIONS REGARDING, AND THE ISSUANCE OF PROTECTIVE VESTS ARE NOT RELEVANT TO PLAINTIFFS' SUBSTANTIAL DUE PROCESS CLAIMS**

Plaintiffs cite the case of *Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) for the proposition that the Ninth Circuit has held that a non-party can be compelled to produce evidence "relevant to the subject matter involved in the pending action." That misstates the standard that must be applied in this case.

In 2001, Federal Rule of Civil Procedure 26(b)(1) was amended to reflect that parties to litigation "may obtain discovery regarding any matter, not privileged**, that is relevant to**

---

[10]As recognized by the plaintiffs in their brief, "the court's Order simply set forth the facts and allegations of the complaint and engaged in a *analysis* of the legal sufficiency of the Plaintiffs' claims for purposes of deciding a Rule 12(b)(6) motion to dismiss." [emphasis in original]

**the claim or defense of any party."** [emphasis added.] The stated purpose of the amendment was to narrow the scope of discovery. Previous to the amendment, a party could obtain discovery into any matter, not privileged, that is "relevant to the subject matter involved in the pending action."

Once a request for discovery strays outside of an area "relevant to a claim or defense...," new Rule 26(b)(1) requires a showing of "good cause" as follows:

> "For good cause shown, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

In this manner, Rule 26(b)(1) now focuses discovery on the actual claims and defenses at issue in the case. Discovery will only be broadened when demanded by the reasonable needs of the action, as the Advisory Committee intended:

> "The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. In general, it is hoped that reasonable lawyers can cooperate to manage discovery without the need for judicial intervention. When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested." (Fed. R. Civ. P. 26(b)(1)(advisory committee notes).)

The documents sought by plaintiffs concerning the protective vests are not relevant to the plaintiffs' claims in this action. In addition, there is no reasonable likelihood that allowing discovery of these documents will lead to the discovery of evidence relevant to the underlying action. As already discussed by the trial court, the relevant issues alleged in plaintiffs' complaint relate to the two affirmative acts that created or increased the risk of danger to the plaintiffs' decedent, which are (1) defendants' alleged improper assignment of Blaylock to a general population cell upon his arrival at CIM, and (2) the defendants' alleged return of Blaylock to the general prison population after he was detained in administrative segregation for purportedly assaulting another inmate. Both of these issues turn primarily on the housing of inmate Blaylock. All of the documents requested relate to the protective vests plaintiffs claim should have been provided plaintiffs' decedent on the day of the incident. Any information plaintiffs hope to glean from their document requests would have no bearing on the merits of the case, since all that plaintiffs are required to establish in order to recover damages is that the defendants were deliberately indifferent in allegedly improperly assigning housing to Blaylock at CIM.

In meet-and-confer communications, plaintiffs were requested to articulate a plausible chain of inferences showing how discovery of the items related to the protective vests would lead to other admissible evidence. Plaintiffs could not articulate what kind of information they reasonably expect to find in these documents, and how this will lead to other admissible evidence.

Moreover, the trial court has already ruled that plaintiffs' decedent's failure to receive a protective vest cannot form a basis of liability against these defendants. Thus, documents concerning the State's contract to buy the protective vests, the bids for the contract, the payment for the vests, and more generally, the failure to issue the vest to the plaintiffs' decedent are not "relevant to the claim or defense of any party" in this action. The relevance

standard of Rule 26 is not without bite. (See, e.g., Epstein v. MCA, Inc., 54 F.3d 1422, 1423 (9th Cir. 1995) [holding that district court abused its discretion in allowing discovery of documents that "would have no bearing on either the merits of the case or on the motion for class certification" and that therefore were irrelevant under Rule 26(b)(1).])

### C. PLAINTIFFS' ARGUMENTS THAT THE DOCUMENTS RELATED TO THE PROTECTIVE VESTS ARE RELEVANT TO PLAINTIFFS' SUBSTANTIAL DUE PROCESS CLAIMS ARE MISPLACED

As stated earlier, plaintiffs' attempt to have this District Court reconsider the trial court's earlier analysis that the defendants' alleged acts regarding their failure to provide a protective vest to the plaintiffs' decedent are nothing more than "omissions, i.e., failures to act or intervene," and therefore not viable under the Due Process Clause of the Fourteenth Amendment, should be rejected.

As recognized by the plaintiffs in their brief, "the court's Order simply set forth the facts and allegations of the complaint and engaged in a *analysis* of the legal sufficiency of the Plaintiffs' claims for purposes of deciding a Rule 12(b)(6) motion to dismiss." [emphasis in original]. The plaintiffs' complaint contains many more salient (arguably, more egregious) facts in support of the claim that the defendants' failure to provide protective vest to the plaintiffs' decedent violated his civil rights, than what plaintiffs assert in this brief. (See footnote 10 of this brief.) Even construing plaintiffs' complaint in the light most favorable to plaintiffs, which the trial court did in determining defendants' motions to dismiss, the trial court still found that the complaint's allegations regarding the defendants' failure to provide the plaintiffs' decedent with a protective vest did not, and could not, state a valid claim under the Due Process Clause of the Fourteenth Amendment.

Also, plaintiff argue that information concerning the defendants' alleged refusal or failure to distribute the vests is relevant because it "would constitute circumstantial evidence of a deliberate indifference, or conscious disregard, state of mind; something that is part of the proof in the Plaintiffs' case." Plaintiffs are correct in asserting that they need to prove defendants' deliberate indifference to the plaintiffs' decedent's civil rights. However, plaintiffs need to show that defendants' affirmative acts, and not simply their failure to act, placed the plaintiffs' decedent in danger. Plaintiffs' attempt to substantiate the claim that defendants' failure to provide a protective vest to their decedent was done in a deliberately indifferent manner is irrelevant, and would not lead to the discovery of relevant evidence, because the trial court has already found that this "omission" does not, and cannot, give rise to a claim under the Due Process Clause of the Fourteenth Amendment.

In final, the issues in this case turn primarily on the alleged improper housing of inmate Blaylock while at CIM, and the alleged deliberate indifference of the defendants to it. The thousands of documents requested, all of which relate to the protective vests plaintiffs claim should have been provided plaintiffs' decedent, are not germane to these issues. Consequently, there is no likelihood that useful evidence might be uncovered from these documents which is relevant to the plaintiffs' claims in this case. Plaintiffs' wide-ranging, intrusive, and ultimately irrelevant discovery must undeniably be found to cross the legitimate boundaries of Rule 26.

## C. DEFENDANTS' EMPLOYMENT RECORDS

**DISCOVERY AT ISSUE RE: EMPLOYMENT RECORDS:**

**Plaintiffs' Subpoena to the California Department of Corrections (Request for Production of Document No. 29:**

"Each of the Defendants' Individual employment and personnel files including but not limited to the following:

a. Personnel files which include summary of all hours worked, disciplinary reports, EMIS Reports (notices of adverse action)
b. Supervisory File
c. CDCR 1123 Employee Counseling Record
d. Rainbow Sheets
e. Attendance Record
f. Personnel Summary of Jobs
g. Training Records (IST: In Service Training) including, summary of all training hours, on the job training, personnel assignments, summary of all posts worked, job specifications.

**Plaintiffs' Subpoena to the California Department of Corrections for Testimony Pursuant to FRCP 30(b)(6) – Category No. 19:**

"Defendants' Individual Employment Files."

**CDCR'S OBJECTIONS RE: EMPLOYMENT RECORDS:**

General Objections Applicable to All Requests

1. The State of California is not subject to this discovery subpoena under the FRCP because it has not waived its sovereign immunity.
2. The subpoena is invalid because it was not accompanied by the appropriate witness fees, pursuant to Gov. Code § 68096.1, et. seq.; failure to simultaneously the appropriate tender witness invalidates the subpoena [sic].

3. The discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome or less expensive.

4. The burden or expense of the proposed discovery on the State of California, who has an interest in conserving scarce government resources, outweighs its likely benefit. Compliance with this subpoena, where plaintiffs are seeking a tremendous number of C.R.C.R. agency documents, and demand the presence of dozens of agency employees at depositions, will measurably strain agency resources and divert agency personnel from their official duties.

5. The internal C.D.C.R. documents sought by this subpoena are protected from disclosure by federal and state "official information," "self-critical analysis," "state secrets," and "deliberative process" privileges because they relate to state interests which are usually protected by these privileges, e.g., institutional security, privacy rights of citizens and inmates, encouragement of public cooperation, negotiations between state agencies and unions. Legitimate interests of the State will be adversely affected by the release of these documents.

6. This subpoena seeks information and documents, such as investigative reports not already produced by the parties in their disclosures in the hands of the District Attorney's Office, that pertain to pending criminal litigation to which the State of California is a party, and which cannot be released until the pending litigation or claim has been finally adjudicated or otherwise settled.

**<u>Document Request No. 29</u>:**

"In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. Further, they seek the production of sensitive,

> confidential information which would constitute an unwarranted invasion of the defendants' personal privacy.

**<u>Subpoena for Testimony No. 19</u>:**

> "In addition, the State of California objects to this category on the ground the information requested is irrelevant to the remaining matters in this litigation, and it will not lead to the discovery of relevant evidence. Further objection is made on the ground this category does not describe with reasonable particularity the matters on which examination is requested. Finally, this category seeks the production of sensitive, confidential information which would constitute an unwarranted invasion of the defendants' personal privacy."

## 1. PLAINTIFFS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: DEFENDANTS' EMPLOYMENT RECORDS

Plaintiffs seek the production of *portions* of each of the Defendants' personnel files (employment records), as well as a designee from the CDCR to testify regarding any questions that Plaintiffs have concerning such matters.

The State has objected to such requests on the grounds of privacy and confidentiality. Plaintiffs understand that Defendants Lori Di Carlo, Gregory Mellott and Carol Roddy take a similar position, but do not object to the production of those portions of their personnel files a) that deal with their training and experience, b) reference any complaints made against them in their capacity as officials of CDCR, and c) matters pertaining to the facts and circumstances giving rise to this case.

The parties have all agreed that the production of any documents or testimony regarding the Defendants' personnel files shall be subject to a Stipulated Protective Order, which has been signed and is being lodged with Judge Margaret M. Morrow, the presiding judge in this matter in the U.S. District Court for the Central District of California.

The law is clear that in federal question cases, privileges asserted in response to discovery requests are determined under federal law, not the law of the forum state; furthermore, the issue of relevancy in discovery matters is subject to a broad standard. [*Kerr v. U.S. Dist. Court for the Northern Dist. of California,* 511 F.2d 192,197 (9th Cir. 1975).]

In *Kerr,* a 1983 action, seven California prisoners sought the production of personnel files of members and executive personnel of the California Adult Authority (documents in the possession of the Department of Corrections.) The Ninth Circuit upheld the district court's order that the documents were relevant for purposes of discovery and must be produced. The court explained:

> "[T]he question of relevancy is to be more loosely construed at the discovery stage than at trial. Thus, under F.R.C.P. 26(b)(1), it is no ground for objection that information sought in pretrial discovery would not be admissible at trial, if the testimony sought appears reasonably calculated to lead to discovery of admissible evidence. In addition to discovering information pertaining to the parties' case in chief, it is entirely proper to obtain information for other purposes such as cross-examination of adverse witnesses." [*Id.* at 196-197, Internal citations omitted.]

Here, the Plaintiffs seek specific portions of the Defendants' personnel files; *i.e.,* their attendance records (including hours worked), disciplinary reports, training records (including summary of their personnel assignments, posts worked, job assignments), Supervisory File, Employee Counseling Records and Summary of Jobs.

First, several of the documents (*e.g.* those related to job duties, job assignments, posts worked, training and job summaries) are relevant to demonstrate that the Defendants were responsible for, or did, make official policy, conduct, lead, supervise, administer, monitor, command, oversee and control the operation and management of CIM (California Institution for Men), including the safety and security of employees working at CIM. The documents are directly relevant to the Plaintiffs' 1983 case, since Plaintiffs need to prove that Defendants either created a danger or acted to increase existing risk of danger.

Another element of the Plaintiffs' case requires a showing of deliberate indifference to known or obvious dangers. Documents in Defendants' personnel files, such as training records, their Supervisory File and Employee Counseling Records are relevant to show the Defendants' knowledge, training, and experience with regard to dangerous conditions at CIM and within the prison system generally. Employee Counseling Records and Supervisory Files are also relevant, because they will reveal whether the Defendants' ever disregarded their duties, needed to be counseled or reprimanded, or had complaints lodged against them. Information regarding the severity, or number of times, a Defendant disregarded policies, duties, etc. would constitute circumstantial evidence of deliberate indifference toward known dangers.

Finally, the documents sought will reveal relevant information regarding whether any actions were taken against the Defendants in connection with the death of Officer Gonzalez, or for other injuries or incidents at CIM. Such information is relevant in proving deliberate indifference and/or the creation or increasing of a known risk.

As demonstrated by the very relevant nature of the documents sought, the Plaintiffs have a very compelling need for disclosure of documents from the Defendants' personnel files. Moreover, the information cannot be obtained from any other source. On balance, the information sought from the Defendants' personnel files is limited in scope. (For example, Plaintiffs do not seek wage or salary information, medical or health information, or other personal, family or private information.) Moreover, Plaintiffs agree, and have executed, a Stipulated Protective Order to protect the documents as confidential within this litigation. Hence, in balancing the competing privacy rights of the Defendants with the Plaintiffs' overwhelming need for the relevant documents and information, the court should compel production of the documents.

**2. DEPARTMENT OF CORRECTIONS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: DEFENDANTS' EMPLOYMENT RECORDS**

Rule 501, Federal Rule of Evidence, provides that issues of privilege relating to claims for which federal law provides the rule of decision are governed by federal common law rather than state law. State privilege rules do not apply of their own force in federal { 1983 actions. (*Kerr v. United States District Court*, 511 F.2d 192, 197 (9th Cir. 1975), aff'd, 426 U.S. 394 (1976).) When applying the federal common law to an assertion of privilege derived from state law, however, federal courts should look to state law and policy to inform, though not determine, their decisions. (See *Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal.

1987) ["federal courts generally should give some weight to privacy rights that are protected by state constitutions or state statutes. Of course, ultimate responsibility for deciding how much weight to ascribe to such interests, and how that weight compares with the significance of competing interests, must reside with the federal courts."].)

The defendants' personnel files contain unlisted addresses and telephone numbers, marital status, wage information, medical information, credit history, as well as other work-related information unrelated to plaintiff's claims[11]. Because of the extremely private nature of personnel files, the court does not order production of such files except upon a compelling showing of relevance by the requesting party. (In the *Matter of Hawaii Corp.*, 88 F.R.D. 518, 525 (D. Hawaii 1980) [holding that party had established for "compelling need" for personnel files prepared contemporaneously.]); *Miller v. Federal Express Corp.*, 186 F.R.D. 376, 384 (W.O. Tenn. 1999) ["compelling evidence" standard met by a showing that the employees whose personnel files were sought participated in the alleged discriminatory decision to terminate the plaintiff.].) To be compelling, the requesting party must demonstrate that the value of the information outweighs the privacy interests of the affected parties. (*Onwuka v. Federal Express Corp.*, 178 F.R.D. 508 (D. Minn. 1997).)

For the defendants' personnel records to be clearly relevant, the moving parties must make specific allegations or some initial showing, based on deposition testimony or other evidence, that these defendants played a role in the two affirmative acts that created or increased the risk of danger to the plaintiffs' decedent, namely (1) the alleged improper assignment of Blaylock to a general population cell upon his arrival at CIM, and (2) the

[11]They include the pay of each individual, the pay or step increase, promotions and/or bonuses received by each of the defendants. Other than defendants' compensation, their personnel files contain employee benefits, bonuses, and awards received during their employment with the State of California.

alleged return of Blaylock to the general prison population after he was detained in administrative segregation for purportedly assaulting another inmate. In meet-and-confer communications, plaintiffs have failed to articulate any reason for permitting discovery of the defendants' personnel files, or for concluding that such broad discovery is reasonably necessary or warranted under the circumstances of this case[12]. Therefore, this court should not compel the disclosure of the defendants' personnel documents.

The fact that the defendants are, or were at the time of this incident, all high ranking officials of the California Department of Correction and Rehabilitation, based in Sacramento[13], does not by itself suggest that their personnel files will contain any information likely to lead to admissible evidence. Plaintiff cannot even assert facts sufficient to constitute even a minimal showing that the defendants played any role in the two affirmative acts that created or increased the risk of danger to the plaintiffs' decedent, namely (1) the alleged improper assignment of Blaylock to a general population cell upon his arrival at CIM, and (2) the alleged return of Blaylock to the general prison population after he was detained in administrative segregation for purportedly assaulting another inmate. Good cause does not exist to require production of these personnel files because plaintiffs cannot articulate a

---

[12]Plaintiffs have stated that the defendants' personnel files "may" contain information that is relevant to their claim. However, plaintiffs have presented no information, by affidavit or otherwise, to substantiate this "belief." This indicates that plaintiffs are engaging in nothing more than a fishing expedition into an area where privacy concerns are high and relevant material may or may not exist.

[13]Defendants Roderick Q. Hickman, is alleged to have been the "Secretary of the California Youth and Adult Correctional Agency;" Jeanne S. Woodford, the "Director of the California Department of Corrections;" Suzan Hubbard, the "Assistant Director of the California Department of Corrections;" John Dovey, the "Chief Deputy Director of Field Operations at the California Department of Corrections;" and Wendy Still, the "Regional Administrator (Southern Region) of the California Department of Corrections."

sufficient reason for concluding that their request for these files is reasonably calculated to lead to the discovery of admissible evidence.

As stated earlier, discovery of personnel records is permissible "if (1) the material sought is 'clearly relevant,' and (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable." (*Matter of Hawaii Corp.*, 88 F.R.D. at 524.) Plaintiffs claim that the defendants' "attendance records (including hours worked), disciplinary reports, training records (including summary of their personnel assignments, posts worked, job assignments), Supervisory File, Employee Counseling Records and Summary of Jobs" are relevant

> "to demonstrate that the Defendants were responsible for, or did, make official policy, conduct, lead, supervise, administer, monitor, command, oversee and control the operation and management of CIM (California Institution for Men), including the safety and security of employees working at CIM. The documents are directly relevant to the Plaintiffs' 1983 case, since Plaintiffs need to prove that Defendants either created a danger or acted to increase existing risk of danger."

The foregoing issue, however, has been rejected by the trial court as a basis of liability against the defendants, and therefore is irrelevant:

> "Plaintiffs' allegations regarding defendants' conduct fall into five broad categories: (1)... (3) failure and refusal to provide supervision, administration, and support to the correctional staff to make sure that Blaylock was not given authority as a "shot caller"; (4) failure and refusal to provide supervision, administration, and support to the correctional staff to ensure that safety protocols and procedures - and in particular, the modified program and modified lockdown directives - were enforced ...

> With the exception of the first category, the "acts" plaintiffs allege are omissions, i.e., failures to act or intervene. Inserting the word "refusal" following the word "failure" does not transform an omission into an affirmative act."

Any connection between the defendants' personnel records and the allegations that inmate Blaylock was improperly housed at CIM during his stay there, i.e., the only viable claims in this case, is entirely speculative. Allegations of improperly housing an inmate in a prison do not, standing alone, open the season for fishing expeditions into the defendants' personnel files. Permitting wide-ranging discovery of confidential personnel files based on these general allegations undermines the defendants' legitimate confidentiality concerns.

## 3. DEFENDANTS LORI DICARLO, GREGORY MELLOTT AND CAROL RODDY CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY

Defendants Lori Di Carlo, Carol Roddy and Gregory Mellott, and each of them, object to the production/disclosure of certain portions of their personnel files maintained by the California Department of Corrections & Rehabilitation ("CDC&R"), recognizing that said defendants do not have possession, custody or control thereof. These defendants do not object to production/disclosure of those portions of their personnel files maintained by CDC&R having to do with their training, knowledge and experience as employees/officials of CDC&R, and any complaints made against any of them in their capacities as employees/officials of CDC&R, and any action taken in connection therewith, including the facts and circumstances concerning and/or pertaining to the death of Correctional Officer Manuel Gonzalez, Jr.

Defendants Lori Di Carlo, Carol Roddy and Gregory Mellott, and each of them, do object to the production/disclosure of any other portion of their personnel files maintained by CDC&R, including, but limited to, their financial matters of any kind whatsoever, on

the ground that such matters are protected from production/disclosure by their right of privavcy; their medical/health care matters and issues involved therewith of any kind whatsoever, on the ground that such matters are protected from production/disclosure by their doctor-patient patient privilege and their right of privacy; marital/familial matters of any kind whatsoever, on the ground that such matters are protected from production/disclosure by the spousal communication privilege and their right of privacy; and/or any other personal and/or confidential matters contained therein; and further object to the production/disclosure of any or all of such matters on the further ground that any such documents and/or matters are irrelevant to the subject matter of the action herein and are not likely to lead to the discovery of admissible evidence."

**D. <u>WITNESS FEES</u>**

**<u>DISCOVERY AT ISSUE</u>:**

Pursuant to Local Rule 37-251(c) (3), which provides that "when a protective order is sought that is unrelated to specific, individual items, repetition of the original document is <u>not</u> required." Here, the State objects to the subpoenas on the following basis:

**<u>CDCR'S OBJECTIONS:</u>**

"The subpoena is invalid because it was not accompanied by the appropriate witness fees, pursuant to Government Code §68096.1, et.seq.; failure to simultaneously the appropriate tender witness [sic] invalidates the subpeona."

**1. <u>PLAINTIFFS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: WITNESS FEES</u>**

This action is pending before the U.S. District Court for the Central District and arises under 42 U.S.C. Section 1983 and the Fifth and Fourteenth Amendments of the United States Constitution. Hence, the action is pending in federal court on the basis of a federal question, and federal rules govern all discovery procedures and matters, including, issuance of subpoenas and payment of witness fees.

Nevertheless, Defendants are demanding that Plaintiffs pay each individual that appears as a designee, pursuant to F.R.C.P. 30(b)(6), witness fees according to California law, specifically, California Government Code Sections 68096.1 and 68097.2 Those laws, however, do <u>not</u> apply to the subpoenas issued to the Department of Corrections pursuant to F.RC.P. 45 and 30(b)(6).

First, federal rules govern discovery matters, including, issuance of subpoenas and payment of witness fees in federal question cases. [*Hanna v. Plummer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Sain v. City of Bend*, 309 F.3d 1134, 1137 (9th Cir.2002).] Second, neither of the sections you have cited apply to the witnesses who will appear as designees of the Department of Corrections.

California Govt. Code section 68096.1 applies only when an "employee of a local agency" is obliged by a subpoena, and "local agency" is defined by subsection (f) as "a city, county, city and county, special district, redevelopment agency, or any other political subdivision of the state." Govt. Code section 68097.2, only applies when a "peace officer [as defined by section 830 of the Penal Code], firefighter, state employee, trial court employee or county employee, is obliged by a subpoena issued pursuant to Section 68097.1." Those employed by the Department of Corrections are ***not*** employees of Department of Justice, the Department of the California Highway Patrol, or any of the other categories of subpoenaed peace officers in Section 68097.1. [*Fox v. State Personnel Board* (1996) 49 Cal.App.4th 1034, 57 Cal.Rptr.2d 279.] Hence, the provisions of Section 68097.2 are inapplicable, because the are conditioned on Section 68097.1.

Accordingly, Plaintiffs are only required to pay witness fees as required under federal law. Not only do Plaintiffs agree to do so, but the witness fees have already been tendered.

**2. <u>DEPARTMENT OF CORRECTIONS' CONTENTIONS/ARGUMENTS AND LEGAL AUTHORITY RE: WITNESS FEES</u>**

Rule 45 provides in part, that "on timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it ... (iv) subjects a person to undue burden."

In two subpoenas, the State of California has been requested to provide persons most knowledgeable to more than 50 categories of issues, and yet plaintiffs insist on paying only $90 for that privilege. Obviously, plaintiffs' position is untenable.

The State of California believes that this court should look to state law and policy to inform, though not determine, its decision on this issue. California Government Code section 68097.2 provides in pertinent part, "(a) . . . any state employee . . . who is obliged by a subpoena issued pursuant to Section 68097.1 to attend as a witness, shall receive the salary . . . to which he or she is normally entitled from the public entity by which he or she is employed . . . . [P] (b) The party at whose request the subpoena is issued shall reimburse the public entity for the full cost to the public entity incurred in paying the . . . employee . . . his or her salary . . . for each day that the . . . employee . . . is required to remain in attendance pursuant to the subpoena. The amount of . . . ($150), together with the subpoena, shall be tendered to the person accepting the subpoena for each day that the . . . employee . . . is required to remain in attendance pursuant to the subpoena." The cross-referenced section 68097.1 provides in pertinent part, "(b) Whenever any other state employee is required as a witness before any court or tribunal in a civil action or proceeding in connection with a matter, event, or transaction concerning which he or she has expertise gained in the course of his or her duties, a subpoena requiring his or her attendance may be served [as follows]"

The 20 or so Persons Most Knowledgeable witnesses requested by the plaintiffs are state employees, and the knowledge they will be queried about regards information gained in the course of his or her duties as state employees. That being the case, the plaintiffs should reimburse the State of California for the full cost to the public entity incurred in paying the employee his or her salary for each day that the employee is required to remain in attendance pursuant to the subpoena, or at a minimum, the amount of $150 per witness.

Respectfully Submitted,

DATED: ~~August~~ Sept 4, 2006

LAW OFFICES OF MARK J. PEACOCK

By: ______________________

MARK J. PEACOCK

DATED: August ____, 2006

BILL LOCKYER, Attorney General of the State of California
DAVID ADIDA, Depute Attorney General

By: ______________________
DAVID ADIDA
Attorney for Defendants, Roderick Hickman, Jeanne Woodford, Suzan Hubbard, John Dovey, and Wendy Still

DATED: August ____, 2006

LA FOLLETTE, JOHNSON, DE HAAS, FESLER & AMES

By: ______________________
MICHAEL A. BELL,
Attorney for Defendants, Lori DeCarlo, Carol Roddy and Greg Mellott

Respectfully Submitted,

DATED: August ____, 2006 LAW OFFICES OF MARK J. PEACOCK

By: ______________________________

MARK J. PEACOCK

DATED: August 28, 2006 BILL LOCKYER, Attorney General of the State of California
DAVID ADIDA, Depute Attorney General

By: ______________________________
DAVID ADIDA
Attorney for Defendants, Roderick Hickman, Jeanne Woodford, Suzan Hubbard, John Dovey, and Wendy Still

DATED: August ____, 2006 LA FOLLETTE, JOHNSON, DE HAAS, FESLER & AMES

By: ______________________________
MICHAEL A. BELL,
Attorney for Defendants, Lori DeCarlo, Carol Roddy and Greg Mellott

*BILL LOCKYER*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

# FAX TRANSMISSION COVER SHEET

IMPORTANT/CONFIDENTIAL: This communication is intended only for the use of the individual or entity to which it is addressed. This message contains information from the State of California, Attorney General's Office, which may be privileged, confidential, and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.

**DATE:** 8/28 **TIME:** ______ **NO. OF PAGES:** 2
(INCLUDING COVER SHEET)

**TO:**

NAME: Mark Peacock

OFFICE:

LOCATION:

FAX NO: 949 660 7764 PHONE NO:

**FROM:**

NAME: **David Adida, Deputy Attorney General**

OFFICE: **Attorney General's Office/Civil-Tort & Condemnation**

LOCATION: **300 South Spring Street, 7 South, Los Angeles, CA 90013**

FAX NO: **(213) 897-2810** PHONE NO: **(213) 897-9644**

**MESSAGE/INSTRUCTIONS**

Signature page
Motion to Compel.

**PLEASE DELIVER AS SOON AS POSSIBLE!**
FOR ASSISTANCE WITH THIS FAX, PLEASE CALL THE SENDER

in attendance pursuant to the subpoena, or at a minimum, the amount of $150 per witness.

Respectfully Submitted,

DATED: August ____, 2006

LAW OFFICES OF MARK J. PEACOCK

By: ______________________

MARK J. PEACOCK

DATED: August ____, 2006

BILL LOCKYER, Attorney General of the State of California
DAVID ADIDA, Depute Attorney General

By: ______________________
DAVID ADIDA
Attorney for Defendants, Roderick Hickman, Jeanne Woodford, Suzan Hubbard, John Dovey, and Wendy Still

DATED: August 31, 2006

LA FOLLETTE, JOHNSON, DE HAAS, FESLER & AMES

By: [signature]
MICHAEL A. BELL,
Attorney for Defendants, Lori DeCarlo, Carol Roddy and Greg Mellott

LAW OFFICES
LA FOLLETTE, JOHNSON, DE HAAS, FESLER & AMES
A PROFESSIONAL CORPORATION
3403 TENTH STREET
SUITE 820
RIVERSIDE, CALIFORNIA 92501
TELEPHONE (951) 275-9192
FAX (951) 275-9249
www.ljdfsa.com

LOS ANGELES
TELEPHONE (213) 426-3600
FAX (213) 426-3650

ORANGE COUNTY
TELEPHONE (714) 558-7008
FAX (714) 972-0379

SACRAMENTO
TELEPHONE (916) 563-3100
FAX (916) 565-3704

JOHN T. LA FOLLETTE
(1922-1990)

DAREN T. JOHNSON
OF COUNSEL

July 28, 2006

| | |
|---|---|
| TO: | **Mark Peacock, Esq.** |
| FAX NO.: | **(949) 660-7764** |
| FROM: | Michael A. Bell, Esq. |
| RE: | Estate of Manuel Gonzalez v. Hickman<br>3074.31005 |
| PAGES: | 2 (INCLUDING COVER SHEET) |
| REMARKS: | |

*********************************************************************************************

IF YOU DO NOT RECEIVE ALL PAGES,
PLEASE CONTACT **KATHY** (951) 275-9192

*********************************************************************************************

**This message is intended for the use of the individual or entity to which it is addressed, and may contain information that is privileged and confidential. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U.S. Postal Service. Thank you.**

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 5160 Campus Drive Newport Beach, California 92660.

On, September 6, 2006, I served the foregoing documents described as: **JOINT STATEMENT OF DISCOVERY DISPUTE RE: PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

BILL LOCKYER
DAVID ADIDA
STATE OF CALIFORNIA DEPARTMENT OF JUSTICE
Ronald Reagan Building
300 South Spring St.
Suite 1702
Los Angeles, CA 90013
Fax: 213-897-2810
Attorney for Defendants, Roderick Q. Hickman, Jeanne S. Woodford, Suzan Hubbard, John Dovey and Wendy Still

MICHAEL BELL, ESQ.
La Follette, Johnson, et al
3403 Tenth Street
Suite #820
Riverside, CA 92501
Fax: 951-275-9249
Attorney for Defendants, Lori DiCarlo, Greg Mellott and Carol Roddy

Antonio Ibarra, Esq.
7211 Painter Avenue
Whittier, CA 90602
Attorney for Plaintiffs

__ (BY MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Newport Beach, California.

X (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee.

__ (VIA TELECOPY - PER AGREEMENT) I caused the above-mentioned document(s) to be telecopied to the parties named on the attached list.

Executed on September 5, 2006, at Newport Beach, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

MARK J. PEACOCK

Signature

# EXHIBIT A

Mark J. Peacock, Esq., CA State Bar No. 156625
LAW OFFICES OF MARK PEACOCK
5160 Campus Drive
Newport Beach, California 92660
Telephone: (949) 660-7762
Fax: (949) 660-7764
Email: mark@markpeacocklaw.com
Website: www.markpeacocklaw.com
Attorney for Plaintiffs **ESTATE OF MANUEL A. GONZALEZ JR. by and through the executor, MANUEL A. GONZALEZ, GUSTAVO GONZALEZ, a minor by and through his Guardian ad Litem, TONIA CUADRA, MANUEL GONZALEZ III, a minor by and through his Guardian ad Litem, TONIA CUADRA, MARK GONZALEZ, STEVEN GONZALEZ**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ESTATE OF MANUEL A. GONZALEZ JR., by and through the executor, MANUEL A. GONZALEZ, GUSTAVO GONZALEZ, a minor by and through his Guardian ad Litem, TONIA CUADRA, MANUEL GONZALEZ III, a minor by and through his Guardian ad Litem, TONIA CUADRA, MARK GONZALEZ, STEVEN GONZALEZ** | **Case No.: CV-05-00660 MMM(RCx)** |
| **Plaintiffs,** | **NOTICE OF SUBPOENA** |
| **vs.** | |
| **RODERICK Q. HICKMAN; JEANNE S. WOODFORD; SUZAN HUBBARD; JOHN DOVEY; WENDY STILL; LORI DICARLO; CAROL RODDY; GREG MELLOTT, and DOES 1 THROUGH 200, INCLUSIVE,** | **Hon. Margaret Morrow**<br>**Comp. Filed: July 25, 2005** |
| **Defendants.** | |

///

///

///

PLEASE TAKE NOTICE THAT pursuant to Rule 45 of the Federal Rules of Civil Procedure the subpoena attached hereto was issued on July 24, 2006 by counsel for plaintiffs **ESTATE OF MANUEL A. GONZALEZ JR. by and through the executor, MANUEL A. GONZALEZ, GUSTAVO GONZALEZ, a minor by and through his Guardian ad Litem, TONIA CUADRA, MANUEL GONZALEZ III, a minor by and through his Guardian ad Litem, TONIA CUADRA, MARK GONZALEZ, STEVEN GONZALEZ.**

**Dated: July 24, 2006**

**LAW OFFICES OF MARK PEACOCK**

**Mark J. Peacock, Esq.**
**Attorneys for Plaintiffs**

AO88 (Rev. 1/94) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

Eastern District of California

ESTATE OF MANUEL A. GONZALEZ JR., et al.

**SUBPOENA IN A CIVIL CASE**

V.

RODERICK Q. HICKMAN, et al.

Case Number:[1] EB CV 05-00660 MMM
CENTRAL DISTRICT OF CALIFORNIA

TO: CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATIONS
(SEE ATTACHMENT: EXHIBIT "1")
1515 S STREET #502S SACRAMENTO, CA 95814

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| 400 CAPITAL MALL SUITE 900 SACRAMENTO, CA 95814 | AUGUST 17, 2006 9:00 A.M. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): SEE ATTACHMENT: EXHIBIT "2"

| PLACE | DATE AND TIME |
|---|---|
| 400 CAPITAL MALL SUITE 900 SACRAMENTO, CA 95814 | August 16, 2006 9:00 A.M. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| ATTORNEY FOR PLAINTIFFS | JULY 24, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

MARK J. PEACOCK LAW OFFICES OF MARK PEACOCK 5160 CAMPUS DRIVE NEWPORT BEACH, A 92660 TEL: 949-660-7762

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

**ATTACHMENT: EXHIBIT "1"**

**Definitions**

1. The term "CIM" refers to the California Institution for Men located at 14901 Central Avenue, Chino, California 91710.

2. The term "CCPOA" refers to the California Correctional Peace Officers Association.

3. The term "CDC" refers to the California Department of Corrections and Rehabilitations.

4. The term "Person" includes a natural person, firm, association, organization, partnership, business, trust, corporation or public entity.

In accordance with the foregoing definitions, and pursuant to Rule 30 of the Federal Rules of Civil Procedure (FRCP 30(b)(6)), please designate one or more officers, directors, or managing agents, or other persons who consent to testify on behalf of CDC and/or CIM, on the matters in each of the following categories. The persons designated shall testify as to matters known or reasonably available to the organization.

1. Classification of inmate Jon Blaylock, including, Detention Processing, Preliminary Screening, ION Officer's Report, Legal Status Summary (LSS), Initial Classification Committee (ICC), Unit Classification Committee (UCC), Readmission summary, Housing of inmate Jon Blaylock, Initial intake of inmate Jon Blaylock.

2. Jon Blaylock's C-File (Central File) for all time periods up through the present.

3. CDC's policies, procedures and practices regarding psychiatric and psychological evaluations and referrals generally, and as they relate specifically to Jon Blaylock for the time period between June 23, 2004 and January 10, 2005.

4. Jon Blaylock's mental and mental health status for the time period between June 23, 2004 and January 10, 2005, including diagnostic evaluations of Jon Blaylock, mental health diagnostic evaluations, screening, and placement progresses relating to Jon Blaylock.

5. Institutional staff recommendations for Jon Blaylock for the time period between June 23, 2004 and January 10, 2005.

6. Placement of Jon Blaylock in the Sycamore Hall general population for any time period between June 23, 2004 and January 10, 2005.

7. Reception policies and procedures in place at CIM for the time period between June 23, 2004 and January 10, 2005.

8. The safety and security policies, procedures and conditions at Sycamore Hall for the time period between January 1, 2000 and January 10, 2005.

9. The incident and crime scene management policies, procedures and practices generally for the time period January 1, 2000 and July 1, 2006, and as such policies, procedures and practices relate specifically to the death of Manual Gonzalez.

10. CIM's Operational Policies and Procedures for the time period between June 23, 2004 and January 10, 2005.

11. CDC's policies, procedures and practices with respect to housing and classification of inmates for the time period between June 23, 2004 and January 10, 2005.

12. CIM Administrative Budget for the time period 2000 to 2005.

13. CDC's Compliance Review Instrument relating to CIM for the time period January 1, 2000 and July 1, 2006, including Conditions of administrative segregation; Inmate appeals; Inmate case records; Inmate discipline; Community resources; Inmate education; Mail room; Security; Training; Work incentive.

14. December 19, 2004 riot which occurred in the Sycamore Hall dining room between black and Hispanic inmates.

15. Searches conducted in Sycamore Hall during the period December 19, 2004 through February 10, 2005.

16. Security Audits of CIM between January 1, 2003 through January 10, 2005.

17. Training Audits of all Correctional Staff at CIM between January 1, 2003 through January 10, 2005.

18. Director's Review Board regarding Jon Blaylock for the time period between June 23, 2004 and January 10, 2005.

19. Defendants' Individual Employment Files.

20. Warden Lori DiCarlo's involvement in the housing and classification of Jon Blaylock, including, but not limited, what actions she took, communications by Persons at CDC and/or CIM regarding her actions, appropriateness and compliance of her actions with CDC and CIM policies, procedures and practices.

## ATTACHMENT: EXHIBIT "2"

### Definitions

1. The term "Documents" means a writing as defined in the Federal Rules of Evidence Rule 1001, and includes all drafts, facsimiles, copies and originals of any tangible form of communication or means by which data are recorded, including but not limited to handwriting, typewriting, printing, photostating, photographing, electronic recording upon audiotape, videotape or other medium, or any recording of information upon a computer, whether upon disk, tape or hard drive. Without limiting the scope of the foregoing, "Document" includes papers, books, letters, memoranda, diaries, notes, accounting and financial records, telephone records, photographs, computer files and any other means of recording or obtaining information.

2. The term "CIM" refers to the California Institution for Men located at 14901 Central Avenue, Chino, California 91710.

3. The term "CCPOA" refers to the California Correctional Peace Officers Association.

4. The term "CDC" refers to the California Department of Corrections and Rehabilitations.

5. The term "Person" includes a natural person, firm, association, organization, partnership, business, trust, corporation or public entity.

### Documents Requested

In accordance with the foregoing definitions, and pursuant to Rules 30(b)(6) and 45(a)(1)(C) of the Federal Rules of Civil Procedure, the deponent is hereby requested to produce for inspection and copying the following documents, records or materials.

1. All Documents Relating to the Classification of Inmate Jon Christopher Blaylock including, but not limited to, the following documents (all relating to inmate Jon Blaylock):
    1. Jon Blaylock's C-file (Central File);
    2. Detention Processing Unit Documents;

3. Preliminary Screening Documents;
4. Status Reports;
5. Form Part B, Status Report;
6. CDC Form 816;
7. Action Sheet(s);
8. CDC Forms 812;
9. CDC Form 812-a;
10. CDC Form 812 - B;
11. CDC Form 812-c;
12. Social Factor Sheet;
13. Notice of Critical Case Information;
14. CDC Form 816a;
15. All CDC Form 128 Series
16. CDC Form 128-a;
17. CDC Form 128-b;
18. CDC Form 128-c;
19. CDC Form 128-c-1;
20. CDC Form 128-g;
21. CDC Form 128-o;
22. CDC Form 837;
23. Probation Officer's Report (POR);
24. CDC Form 850;
25. CDC Form 135;
26. CDC Form 120
27. CDC Form 112;
28. CDC Form 188;
29. CDC Form 1521 (Entire);
30. OBIS Records;
31. CDC Form 839 - Classification Score Sheet;
32. CDC Form 840 - Reclassification Score Sheet;
33. CDC Form 841;
34. CDC Form 123;
35. CDC Form 261;
36. Legal Status Summary;
37. Transfer Orders;
38. Department Review Board Reports;
39. CDC Form 161 Inmate Notices;
40. Initial Classification Committee (Icc) Documents;
41. Unit Classification Committee (Ucc) Documents;
42. Interview Documents;
43. CDC Form 188;
44. CI & I Report;

45. Ppsychiatric/psychological evaluations/referrals;
46. Diagnostic evaluations;
47. Institutional Staff Recommendations Summary (ISRS);
48. Supplemental ISRS Report;
49. Reception Center Readmission Summary/CDC Form 816 (Readmission Summary);

2. All Documents relating to the housing of inmate Jon Blaylock including (but not limited to) the following documents (all relating to inmate Jon Blaylock):
   1. CDC Form 837
   2. CDC Form 154
   3. Post Orders
   4. All Log Books
   5. Bed Cards
   6. Cell Search Logs
   7. CDC 114
   8. CDC 114a
   9. CDC 114d

3. All CDC Form 837 Incidents Reports relating to Jon Blaylock.

4. All Documents relating to Inmate Blaylock's Placement in Sycamore Hall General Population any time between June 23, 2004 and January 10, 2005.

5. AOD Incident Reports (Administrative Officer of the Day Incident Reports) relating to Jon Christopher Blaylock.

6. All photographs depicting inmate Jon Christopher Blaylock.

7. All videotape depicting Jon Christopher Blaylock.

8. All photographs in the possession of CDC and/or CIM regarding the investigation into the death of Correctional Officer Manuel Gonzalez.

9. All evidence collected by CDC and/or CIM as a result of the investigation into the death of Correctional Officer Manuel Gonzalez.

10. All DDPS Data regarding Jon Blaylock

11. Jon Blaylock's Medical Records for the time period between June 23, 2004 and January 10, 2005.

12. Jon Blaylock's Mental Health File for the time period between June 23, 2004 and January 10, 2005.

13. All policies and procedures relating to the mental health diagnostic, screening, and placement processes in place at CIM for the time period between June 23, 2004 and January 10, 2005.

14. All Documents relating to the reception center policies and procedures in place at CIM for the time period between June 23, 2004 and January 10, 2005.

15. All Documents relating to the safety and security policies, procedures, and conditions at Sycamore Hall for the time period between June 23, 2004 and January 10, 2005.

16. All Documents relating to the incident and crime scene management policies, procedures, and practices in place for the time period January 1, 2000 and July 1, 2006.

17. CIM's Operational Policies and Procedures for the time period between June 23, 2004 and January 10, 2005.

18. CDC's policies, procedures, and practices with respect to housing and classification of inmates for the time period between June 23, 2004 and January 10, 2005.

19. All Post Incident Reports prepared by staff relating to the death of Officer Manuel Gonzalez.

20. CIM Administrative Budget Materials for each of the fiscal years 2000 through 21006.

21. All Documents relating to Critical Plant Needs for CIM for the time period between June 23, 2004 and January 10, 2005.

22. CDC's Compliance Review Instrument relating to CIM for the time period January 1, 2000 and July 1, 2006, including Conditions of administrative segregation; Inmate appeals; Inmate case records; Inmate discipline; Community resources; Inmate education; Mail room; Security; Training; Work incentive.

23. All Documents relating to the initial intake of inmate Blaylock at CIM.

24. All Documents relating to a December 19, 2004 riot which occurred in the Sycamore Hall dining room between black and Hispanic inmates.

25. All Documents relating to searches conducted in Sycamore Hall during the period December 19, 2004 through February 10, 2005.

26. All Documents relating to Security Audits of CIM between January 1, 2003 through January 10, 2005.

27. All Documents Training Audits of all Correctional Staff at CIM between January 1, 2003 through January 10, 2005.

28. Director's Review Board documents regarding Jon Blaylock for the time period between June 23, 2004 and January 10, 2005.

29. Each of the Defendants' Individual employment and personnel files including but not limited to the following:
    a. Personnel Files which include summary of all hours worked, disciplinary reports, EMIS Reports, notices of adverse action.
    b. Supervisory File
    c. CDC 1123 Employee Counseling Record
    d. Rainbow Sheets
    e. Attendance Record
    f. Personnel Summary of Jobs
    g. Training Records (IST: In Service Training) including, summary of all training hours, on the job training, personnel assignments, summary of all posts worked, job specifications.

30. All Documents reflecting any communications (written or oral) from Warden Lori DiCarlo to any Person relating to Jon Blaylock at any time.

31. All Program Modification Orders relating to housing units which housed Blaylock for the time period January 1, 2004 through July 1, 2006.

***GONZALEZ v. HICKMAN, et al.,***

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 5160 Campus Drive Newport Beach, California 92660.

On, **July 24, 2006**, I served the foregoing documents described as: **NOTICE OF SUBPOENA (WITH ATTACHED SUBPOENA)** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

**BILL LOCKYER**
**DAVID ADIDA**
**STATE OF CALIFORNIA DEPARTMENT OF JUSTICE**
Ronald Reagan Building
300 South Spring St.
Suite 1702
Los Angeles, CA 90013
Tel: 213-897-9644
Fax: 213-897-2810
**Attorney for Defendants, *Roderick Q. Hickman, Jeanne S. Woodford, Suzan Hubbard, John Dovey and Wendy Still***

**MICHAEL BELL, ESQ.**
**La Follette, Johnson, et al**
3403 Tenth Street
Suite #820
Riverside, CA 92501
Tel: 951-275-9192
Fax: 951-275-9249
**Attorney for Defendants, *Lori DiCarlo, Greg Mellott and Carol Roddy***

Antonio Ibarra, Esq.
7211 Painter Avenue
Whittier, CA 90602
***Attorney for Plaintiffs***

x (BY MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Newport Beach, California.

_ (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee.

X (VIA TELECOPY - PER AGREEMENT) I caused the above-mentioned document(s) to be telecopied to the parties named on the attached list.

_ (BY FEDERAL EXPRESS) I caused such envelope to be delivered via Federal Express.

Executed on **July 24, 2006**, at Newport Beach, California.

x (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

__ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

**MARK J. PEACOCK**

**Signature**

Mark J. Peacock, Esq., CA State Bar No. 156625
LAW OFFICES OF MARK PEACOCK
5160 Campus Drive
Newport Beach, California 92660
Telephone: (949) 660-7762
Fax: (949) 660-7764
Email: mark@markpeacocklaw.com
Website: www.markpeacocklaw.com
Attorney for Plaintiffs **ESTATE OF MANUEL A. GONZALEZ JR. by and through the executor, MANUEL A. GONZALEZ, GUSTAVO GONZALEZ, a minor by and through his Guardian ad Litem, TONIA CUADRA, MANUEL GONZALEZ III, a minor by and through his Guardian ad Litem, TONIA CUADRA, MARK GONZALEZ, STEVEN GONZALEZ**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**ESTATE OF MANUEL A. GONZALEZ JR., by and through the executor, MANUEL A. GONZALEZ, GUSTAVO GONZALEZ, a minor by and through his Guardian ad Litem, TONIA CUADRA, MANUEL GONZALEZ III, a minor by and through his Guardian ad Litem, TONIA CUADRA, MARK GONZALEZ, STEVEN GONZALEZ**

**Plaintiffs,**

**vs.**

**RODERICK Q. HICKMAN; JEANNE S. WOODFORD; SUZAN HUBBARD; JOHN DOVEY; WENDY STILL; LORI DICARLO; CAROL RODDY; GREG MELLOTT, and DOES 1 THROUGH 200, INCLUSIVE,**

**Defendants.**

**Case No.: CV-05-00660 MMM(RCx)**

**NOTICE OF SUBPOENA**

**Hon. Margaret Morrow**
**Comp. Filed: July 25, 2005**

///

///

///

PLEASE TAKE NOTICE THAT pursuant to Rule 45 of the Federal Rules of Civil Procedure the subpoena attached hereto was issued on July 24, 2006 by counsel for plaintiffs **ESTATE OF MANUEL A. GONZALEZ JR. by and through the executor, MANUEL A. GONZALEZ, GUSTAVO GONZALEZ, a minor by and through his Guardian ad Litem, TONIA CUADRA, MANUEL GONZALEZ III, a minor by and through his Guardian ad Litem, TONIA CUADRA, MARK GONZALEZ, STEVEN GONZALEZ.**

**Dated: July 24, 2006** **LAW OFFICES OF MARK PEACOCK**

**Mark J. Peacock, Esq.**
**Attorneys for Plaintiffs**

AO88 (Rev. 1/94) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

Eastern District of California

ESTATE OF MANUEL A. GONZALEZ JR., et al.

**SUBPOENA IN A CIVIL CASE**

V.

RODERICK Q. HICKMAN, et al.

Case Number:[1] EB CV 05-00660 MMM
CENTRAL DISTRICT OF CALIFORNIA

TO: CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATIONS
(SEE ATTACHMENT: EXHIBIT "1")
1515 S STREET #502S SACRAMENTO, CA 95814

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| 400 CAPITAL MALL SUITE 900 SACRAMENTO, CA 95814 | AUGUST 16, 2006 9:00 A.M. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): SEE ATTACHMENT: EXHIBIT "2"

| PLACE | DATE AND TIME |
|---|---|
| 400 CAPITAL MALL SUITE 900 SACRAMENTO, CA 95814 | August 16, 2006 9:00 A.M. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| ATTORNEY FOR PLAINTIFFS | JULY 24, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

MARK J. PEACOCK LAW OFFICES OF MARK PEACOCK 5160 CAMPUS DRIVE NEWPORT BEACH, A 92660 TEL: 949-660-7762

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

**ATTACHMENT: EXHIBIT "1"**

**Definitions**

1. The term "CIM" refers to the California Institution for Men located at 14901 Central Avenue, Chino, California 91710.

2. The term "CCPOA" refers to the California Correctional Peace Officers Association.

3. The term "CDC" refers to the California Department of Corrections and Rehabilitations.

4. The term "Person" includes a natural person, firm, association, organization, partnership, business, trust, corporation or public entity.

In accordance with the foregoing definitions, and pursuant to Rule 30 of the Federal Rules of Civil Procedure (FRCP 30(b)(6)), please designate one or more officers, directors, or managing agents, or other persons who consent to testify on behalf of CDC and/or CIM, on the matters in each of the following categories. The persons designated shall testify as to matters known or reasonably available to the organization.

1. The Protective Vest ("Protective Vest" means the Soft Body Armor, Stab Resistant, Spike Level III), including, but not limited to that which was ordered, and received, for Manual A. Gonzalez.

2. Contract No. 1-03-84-09 and all supplements or amendments, including, Bids, Notices of Intent, Orders, Contract Delegation Orders, Sizing sheets, Instructions, Requess for custom fitting relating to Contract No. 1-03-84-09, Invoices, Payments, Usage Reports, and other reports (quarterly or otherwise) relating to Contract No. 1-03-84-09, all for the time period prior to and including January 10, 2005.

3. Purchase Estimate Forms (STD.66) submitted for processing to the Department of General Services for the time period prior to and including January 10, 2005, and which relate to Soft Body Armor, Stab Resistant, Spike Level III (*i.e.*, protective vests which are the subject matter of Contract No. 1-03-84-09.)

4. Testing, analyses, evaluations, reviews of the Soft Body Armor, Stab Resistant, Spike Level III (*i.e.*, protective vests which are the subject matter of Contract No. 1-03-84-09), conducted by any Person and provided to CDC and/or CIM at any time prior to and including January 10, 2005.

5. All State Police Equipment (Vendor No. 625808), including, but not limited to any advertising, marketing materials, correspondence, memorandums from All State Police Equipment to CDC and/or CIM, and any communications (written or oral) between CDC and/or CIM and All State Police Equipment (Vendor No. 625808) relating to the Soft Body Armor, Stab Resistant, Spike Level III (*i.e.*, protective vests which are the subject matter of Contract No. 1-03-84-09) for the time period prior to and including January 10, 2005.

6. Purchase Order No. 51312128.

7. Communications (written or oral) between CDC or CIM, and the CCPOA regarding the individually fitted protective vests referred in Section 7.05 of the Agreement between the State of California and CCPOA, including, but not limited to CCPOA's involvement with the ordering of the vests.

8. Any grievances filed by any California correctional peace officer or the California Peace Officers Association (CCPOA), or anyone on their behalf, and any communications (written or oral) regarding such grievances, regarding the Soft Body Armor, Stab Resistant, Spike Level III (*i.e.*, protective vests which are the subject matter of Contract No. 1-03-84-09) for the time period prior to and including July 10, 2005.

9. Receipt of any Soft Body Armor, Stab Resistant, Spike Level III protective vests (*i.e.*, protective vests which are the subject matter of Contract No. 1-03-84-09) for the time period prior to and including July 10, 2005, including, Stock Received Reports (including, but not limited No. 12873.)

10. Distribution, at CIM, of individually fitted protective vests referred in Section 7.05 of the Agreement between the State of California and CCPOA for the time period prior to and including July 10, 2005, including, but not limited to the availability of vests for distribution, actual distribution of vests, decisions or directives regarding distribution of vests, communications(written or oral) regarding the availability for distribution and actual distribution of vests, decisions or directives not to distribute vests, and availability and directives relating to the distribution of the individually fitted protective vest to Manual A. Gonzalez.

11. Distribution, statewide and at all institutions, of individually fitted protective vests referred in Section 7.05 of the Agreement between the State of California and CCPOA for the time period prior to and including July 10, 2005, including, but not availability of vests for distribution, actual distribution of vests, decisions or directives regarding distribution of vests, communications(written or oral) regarding the availability for distribution and actual distribution of vests, decisions or directives not to distribute vests.

12. History of CDC's and CIM's use, implementation of utilization, testing, ordering and distribution of individually fitted protective vests referred in Section 7.05 of the Agreement between the State of California and CCPOA for the time period from January 1, 2002 through July 10, 2005.

13. Due diligence conducted by, or at the request of, CDC with regard to the individually fitted protective vests referred in Section 7.05 of the Agreement between the State of California and CCPOA, including, but not limited to the Soft Body Armor, Stab Resistant, Spike Level III protective vests (*i.e.*, protective vests which are the subject matter of Contract No. 1-03-84-09.)

# ATTACHMENT: EXHIBIT "2"

## Definitions

1. The term "Documents" means a writing as defined in the Federal Rules of Evidence Rule 1001, and includes all drafts, facsimiles, copies and originals of any tangible form of communication or means by which data are recorded, including but not limited to handwriting, typewriting, printing, photostating, photographing, electronic recording upon audiotape, videotape or other medium, or any recording of information upon a computer, whether upon disk, tape or hard drive. Without limiting the scope of the foregoing, "Document" includes papers, books, letters, memoranda, diaries, notes, accounting and financial records, telephone records, photographs, computer files and any other means of recording or obtaining information.

2. The term "CIM" refers to the California Institution for Men located at 14901 Central Avenue, Chino, California 91710.

3. The term "CCPOA" refers to the California Correctional Peace Officers Association.

4. The term "CDC" refers to the California Department of Corrections and Rehabilitations.

5. The term "Person" includes a natural person, firm, association, organization, partnership, business, trust, corporation or public entity.

## Documents Requested

In accordance with the foregoing definitions, and pursuant to Rules 30(b)(6) and 45(a)(1)(C) of the Federal Rules of Civil Procedure, the deponent is hereby requested to produce for inspection and copying the following documents, records or materials.

1. Contract No. 1-03-84-09 and all supplements or amendments.

2. [Intentionally left blank]

3. All Bids regarding Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.

4. All Notices of Intent relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.

5. All Orders relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.

6. All Contract Delegation Orders relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.

7. All sizing sheets relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.

8. All instructions relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.

9. All requests for custom fitting relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.

10. All invoices relating to Contract No. 1-03-84-09 for purchases during the time period prior to and including January 10, 2005.

11. Documents reflecting payments made for purchases relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.

12. All usage reports relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.

13. Any reports (quarterly or otherwise) relating to Contract No. 1-03-84-09 for the time period prior to and including January 10, 2005.

14. All Purchase Estimate Forms (STD.66) submitted for processing to the Department of General Services for the time period prior to and including January 10, 2005, and which relate to Soft Body Armor, Stab Resistant, Spike Level III (*i.e.*, protective vests which are the subject matter of Contract No. 1-03-84-09.)

15. Any Documents reflecting or referring to any testing of the Soft Body Armor, Stab Resistant, Spike Level III (*i.e.*, protective vests which are the subject matter of Contract No. 1-03-84-09) for the time period prior to and including January 10, 2005.

16. All Documents reflecting any communications (written or oral) between the California Department of Corrections and Rehabilitation (including, California Institution for Men) and All State Police Equipment (Vendor No. 625808).

17. All Documents, including, but not limited to, advertising, marketing materials, correspondence, memorandums, relating to All State Police Equipment (Vendor No. 625808) for the time period prior to and including January 10, 2005.

18. All Documents, including, but not limited to correspondence, memoranda, and Documents reflecting any communications (written or oral) relating to Purchase Order No. 51312128 for the time period prior to and including January 10, 2005.

19. All Documents, including, for example, marketing or advertising materials, testing results, representations, communications, received from All State Police Equipment (Vendor 625808) relating to the Soft Body Armor, Stab Resistant, Spike Level III (*i.e.,* protective vests which are the subject matter of Contract No. 1-03-84-09) for the time period prior to and including January 10, 2005.

20. All Documents reflecting any communications (written or oral) between the California Department of Corrections and Rehabilitation and the California Correctional Peace Officers Association (CCPOA) regarding the individually fitted protective vests referred in Section 7.05 of the Agreement between the State of California and CCPOA, including, for example, correspondence, memos and Documents reflecting when and for whom the vests were ordered and fitted for the time period prior to and including January 10, 2005.

21. [Intentionally left blank]

22. All grievances filed by any California correctional peace officer or the California Peace Officers Association (CCPOA), or anyone on their behalf, regarding the Soft Body Armor, Stab Resistant, Spike Level III (*i.e.,* protective vests which are the subject matter of Contract No. 1-03-84-09) for the time period prior to and including July 10, 2005.

23. All Documents reflecting any communication (written or oral) regarding any grievance filed by a California correctional peace officer or the California Peace Officers Association (CCPOA), or anyone on their behalf, regarding the Soft Body Armor, Stab Resistant, Spike Level III (*i.e.,* protective vests which are the subject matter of Contract No. 1-03-84-09) for the time period prior to and including July 10, 2005.

24. Purchase Order No. 51312128 for Soft Body Armor, Stab Resistant, Spike Level III from All State Police Equipment.

25. All Stock Received Reports, including, but not limited No. 12873, for the Soft Body Armor, Stab Resistant, Spike Level III (*i.e.*, protective vests which are the subject matter of Contract No. 1-03-84-09) for the time period prior to and including July 10, 2005.

26. All Documents reflecting any communications (written or oral) regarding the distribution, statewide and at all institutions, of individually fitted protective vests referred in Section 7.05 of the Agreement between the State of California and CCPOA for the time period prior to and including July 10, 2005.

27. All Documents reflecting any communications (written or oral) regarding the availability for distribution, statewide and at all institutions, of individually fitted protective vests referred in Section 7.05 of the Agreement between the State of California and CCPOA for the time period prior to and including July 10, 2005.

28. All Documents relating to the distribution, at California Institution of Men, of individually fitted protective vests, referred in Section 7.05 of the Agreement between the State of California and CCPOA for the time period prior to and including July 10, 2005.

29. All Documents relating to the California Department of Corrections and Rehabilitation's use, implementation, testing and distribution of individually fitted protective vests referred in Section 7.05 of the Agreement between the State of California and CCPOA for the time period from January 1, 2002 through July 10, 2005.

30. The Protective Vest ("Protective Vest" means the Soft Body Armor, Stab Resistant, Spike Level III) which was ordered, and received, for Manual A. Gonzalez.

***GONZALEZ v. HICKMAN, et al.,***

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 5160 Campus Drive Newport Beach, California 92660.

On, **July 24, 2006**, I served the foregoing documents described as: **NOTICE OF SUBPOENA (WITH ATTACHED SUBPOENA)** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

**BILL LOCKYER**
**DAVID ADIDA**
**STATE OF CALIFORNIA DEPARTMENT OF JUSTICE**
Ronald Reagan Building
300 South Spring St.
Suite 1702
Los Angeles, CA 90013
Tel: 213-897-9644
Fax: 213-897-2810
**Attorney for Defendants, *Roderick Q. Hickman, Jeanne S. Woodford, Suzan Hubbard, John Dovey and Wendy Still***

**MICHAEL BELL, ESQ.**
**La Follette, Johnson, et al**
3403 Tenth Street
Suite #820
Riverside, CA 92501
Tel: 951-275-9192
Fax: 951-275-9249
**Attorney for Defendants, *Lori DiCarlo, Greg Mellott and Carol Roddy***

Antonio Ibarra, Esq.
7211 Painter Avenue
Whittier, CA 90602
***Attorney for Plaintiffs***

x (BY MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Newport Beach, California.

_ (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee.

**X** (VIA TELECOPY - PER AGREEMENT) I caused the above-mentioned document(s) to be telecopied to the parties named on the attached list.

_ (BY FEDERAL EXPRESS) I caused such envelope to be delivered via Federal Express.

Executed on **July 24, 2006**, at Newport Beach, California.

x (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

__ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

**MARK J. PEACOCK**

Signature

# EXHIBIT B

BILL LOCKYER, Attorney General
of the State of California
MARSHA S. MILLER,
Supervising Deputy Attorney General
**DAVID ADIDA**, (State Bar No. 143647)
Deputy Attorney General
300 S. Spring Street
Los Angeles, CA 90013-1230
Telephone: (213) 897-9644
Facsimile: (213) 897-2810

Attorneys for Defendants Roderick Q. Hickman, Jeanne S. Woodford, Suzan Hubbard, John Dovey, and Wendy Still.

**UNITED DISTRICT COURT FOR THE**

**CENTRAL DISTRICT OF THE STATE OF CALIFORNIA**

| | |
|---|---|
| ESTATE OF MANUEL A. GONZALEZ JR., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>RODERICK Q. HICKMAN, JEANNE S. WOODFORD, SUZAN HUBBARD, HOHN DOVEY, WENDY STILL, LORI DICARLO, CAROL RODDY; GREG MELLOTT, and DOES 1 THROUGH 200, INCLUSIVE,<br><br>Defendants. | CASE NO. **CV-05-00660 MMM (RCx)**<br><br>**WRITTEN OBJECTIONS TO SUBPOENAS SERVED JULY 24, 2006**<br><br>[Fed. R. Civ. P. Rule 45]<br><br>Hon. Rosalyn M. Chapman<br>Complaint filed: July 25, 2005 |

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that the State of California objects to subpoenas served by plaintiffs on the State of California in this action, on July 24, 2006, as follows:

A.

<u>SUBPOENA NAMING "CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATIONS"</u> [Protective Vest Subpoena, Prod. Date of August 08, 2006, in Sacramento]

<u>General Objections Applicable to All Requests</u>

1. The State of California is not subject to this discovery subpoena under the FRCP because

it has not waived its sovereign immunity;

2. The subpoena is invalid because it was not accompanied by the appropriate witness fees, pursuant to Gov. Code § 68096.1, et seq.; failure to simultaneously the appropriate tender witness invalidates the subpoena;

3. The discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;

4. The burden or expense of the proposed discovery on the State of California, who has an interest in conserving scarce government resources, outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Compliance with this subpoena, where plaintiffs are seeking a tremendous number of C.D.C.R. agency documents, and demand the presence of dozens of agency employees at depositions, will measurably strain agency resources and divert agency personnel from their official duties.

5. The internal C.D.C.R. documents sought by this subpoena are protected from disclosure by the "official information," "self-critical analysis," "state secrets," and "deliberative process" privileges because they relate to state interests which are usually protected by these privileges, e.g., institutional security, privacy rights of citizens and inmates, encouragement of public cooperation, negotiations between state agencies and unions.

**REQUEST NOS. 1, 24**

In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence.

**REQUEST NOS. 3-14**

In addition, the State of California objects to these requests on the ground they are abusively drawn: they subject the responding party to undue burden, annoyance, oppression, and expense, and they fail to allow reasonable time for compliance. Further objection is made on the ground the information and documents requested are irrelevant to the remaining matters at issue in this

litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety.

**REQUEST NOS. 15-18**

In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety.

**REQUEST NO. 19**

In addition, the State of California objects to this request on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence.

**REQUEST NO. 20**

In addition, the State of California objects to these requests on the ground they are abusively drawn: they subject the responding party to undue burden, annoyance, oppression, and expense, and they fail to allow reasonable time for compliance. Further objection is made on the ground the

information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety.

**REQUEST NOS. 21-23, 25-29**

In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety.

**REQUEST NO. 30**

If the State is held not to be protected by sovereign immunity, the State will comply with this request, and will produce the vest to be viewed at a time that a mutually convenient for every one.

\\\

\\\

B.

<u>SUBPOENA NAMING "CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATIONS"</u> [Blaylock Subpoena, Prod. Date of August 08, 2006, in Sacramento]

<u>General Objections Applicable to All Requests</u>

1. The State of California is not subject to this discovery subpoena under the FRCP because it has not waived its sovereign immunity;

2. The subpoena is invalid because it was not accompanied by the appropriate witness fees, pursuant to Gov. Code § 68096.1, et seq.; failure to simultaneously the appropriate tender witness invalidates the subpoena;

3. The discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;

4. The burden or expense of the proposed discovery on the State of California, who has an interest in conserving scarce government resources, outweighs its likely benefit. Compliance with this subpoena, where plaintiffs are seeking a tremendous number of C.D.C.R. agency documents, and demand the presence of dozens of agency employees at depositions, will measurably strain agency resources and divert agency personnel from their official duties.

5. The internal C.D.C.R. documents sought by this subpoena are protected from disclosure by federal and state "official information," "self-critical analysis," "state secrets," and "deliberative process" privileges because they relate to state interests which are usually protected by these privileges, e.g., institutional security, privacy rights of citizens and inmates, encouragement of public cooperation, negotiations between state agencies and unions. Legitimate interests of the State will be adversely affected by the release of these documents.

6. This subpoena seeks information and documents, such as investigation reports not already produced by the parties in their disclosures in the hands of the District Attorney's Office, that pertain to pending criminal litigation to which the State of California is a party, and which cannot be released until the pending litigation or claim has been finally adjudicated or otherwise settled.

**REQUEST NOS. 1-7, 10-12, 21, 28**

In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. Further, the State objects on the ground that inmate Blaylock's personal or private information concerning his education, medical history, criminal or employment records, finger and voice prints, photographs of his presence, institutional summaries, social history reports, progress reports, educational, vocational and diagnostic reports, as well as his medical, psychiatric and psychological reports, criminal intelligence information and information of clinical reports, are confidential, and their release would constitute an unwarranted invasion of his personal privacy.

**REQUEST NOS. 8-9, 19**

Further objection is made on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive, confidential information which would constitute an unwarranted invasion of the personal privacy of individuals that cooperated in the investigations in question.

**REQUEST NOS. 13-18, 31**

In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. Further, these requests impermissibly seek the production of sensitive, confidential information which would endanger the safety of State employees. These documents are protected from disclosure by the "official information," "state

secrets," and "deliberative process" privileges because they relate to state interests which are usually protected by these privileges, e.g., institutional security, and privacy rights of citizens and inmates.

**REQUEST NOS. 20-22, 26-27**

In addition, the State of California objects to this request on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive, confidential information which would endanger the safety of the state agency's personnel.

**REQUEST NOS. 24-25**

In addition, the State of California objects to these requests on the ground they are abusively drawn: they subject the responding party to undue burden, annoyance, oppression, and expense, and they fail to allow reasonable time for compliance. Further objection is made on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. These documents are protected from disclosure by the "official information," "state secrets," and "deliberative process" privileges because they relate to state interests which are usually protected by these privileges, e.g., institutional security, and privacy rights of citizens and inmates. Finally, they seek the production of sensitive, confidential information which would endanger the safety of the state agency's personnel, as well as that of the inmates.

**REQUEST NO. 29**

In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. Further, they seek the production of

sensitive, confidential information which would constitute an unwarranted invasion of the defendants' personal privacy.

**REQUEST NO. 30**

If the State is held not to be protected by sovereign immunity, the State will comply with this request, and will produce the documents requested, if any are in its possession.

C.

SUBPOENA NAMING "CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATIONS" [Protective Vest PMK, Prod. Date of August 16, 2006, in Sacramento]

General Objections Applicable to All PMK categories

1. The State of California is not subject to this discovery subpoena under the FRCP because it has not waived its sovereign immunity;

2. The subpoena is invalid because it was not accompanied by the appropriate witness fees, pursuant to Gov. Code § 68096.1, et seq.; failure to simultaneously the appropriate tender witness invalidates the subpoena;

3. The discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;

4. The burden or expense of the proposed discovery on the State of California, who has an interest in conserving scarce government resources, outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Compliance with this subpoena, where plaintiffs are seeking a tremendous number of C.D.C.R. agency documents, and demand the presence of dozens of agency employees at depositions, will measurably strain agency resources and divert agency personnel from their official duties.

5. The internal C.D.C.R. information sought by this subpoena are protected from disclosure by the "official information," "self-critical analysis," "state secrets," and "deliberative process" privileges because they relate to state interests which are usually protected by these privileges, e.g., institutional security, privacy rights of citizens and inmates, encouragement of public cooperation,

negotiations between state agencies and unions. Legitimate interests of the State would be adversely affected by the release of this information.

**CATEGORY NO. 1**

In addition, the State objects on the ground that this category is overbroad, vague and ambiguous. The subpoena does not describe with reasonable particularity the matters on which examination is requested. Finally, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence.

**CATEGORY NOS. 2-6**

In addition, the State of California objects to these categories on the ground they are abusively drawn: they subject the responding party to undue burden, annoyance, oppression, and expense, and they fail to allow reasonable time for compliance. Further objection is made on the ground the information requested is irrelevant to the remaining matters at issue in this litigation, and its production will not lead to the discovery of relevant evidence. In addition, the State objects to these categories on the ground they seek information related to preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek information related to a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Further, they seek sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety. Finally, they do not describe with reasonable particularity the matters on which examination is requested.

**CATEGORY NO. 7**

In addition, the State of California objects to this category on the ground it is abusively drawn: it subjects the responding party to undue burden, annoyance, oppression, and expense, and it fails to allow reasonable time for compliance. Further objection is made on the ground the information requested is irrelevant to the remaining matters at issue in this litigation, and its

production will not lead to the discovery of relevant evidence. In addition, the State objects to this category on the ground it seeks information contained in preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further this category impermissibly seeks the production of information that reveals a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Further, it seeks the release of sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety. Finally, it does not describe with reasonable particularity the matters on which examination is requested.

**CATEGORY NO. 8**

In addition, the State objects to this category on the ground it seeks information contained in preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further this category impermissibly seeks the production of information that reveals a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, it seeks the release of sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety.

**CATEGORY NOS. 9-10**

Further objection is made on the ground the information requested is irrelevant to the remaining matters at issue in this litigation, and its production will not lead to the discovery of relevant evidence. Further, it does not describe with reasonable particularity the matters on which examination is requested. In addition, the State objects to this category on the ground it seeks information contained in preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Finally, this category impermissibly seeks the production of information that reveals a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes,

research, work product, theories, or strategy.

**CATEGORY NOS. 11-13**

In addition, the State of California objects to these categories on the ground they are abusively drawn: they subject the responding party to undue burden, annoyance, oppression, and expense, and they fail to allow reasonable time for compliance. Further objection is made on the ground the information requested is irrelevant to the remaining matters at issue in this litigation, and its production will not lead to the discovery of relevant evidence. Finally, they do not describe with reasonable particularity the matters on which examination is requested.

General Objections Applicable to All Requests to Produce documents

1. The State of California is not subject to this discovery subpoena under the FRCP because it has not waived its sovereign immunity;

2. The subpoena is invalid because it was not accompanied by the appropriate witness fees, pursuant to Gov. Code § 68096.1, et seq.; failure to simultaneously the appropriate tender witness invalidates the subpoena;

3. The discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;

4. The burden or expense of the proposed discovery on the State of California, who has an interest in conserving scarce government resources, outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Compliance with this subpoena, where plaintiffs are seeking a tremendous number of C.D.C.R. agency documents, and demand the presence of dozens of agency employees at depositions, will measurably strain agency resources and divert agency personnel from their official duties.

5. The internal C.D.C.R. documents sought by this subpoena are protected from disclosure by the "official information," "self-critical analysis," "state secrets," and "deliberative process" privileges because they relate to state interests which are usually protected by these privileges, e.g., institutional security, privacy rights of citizens and inmates, encouragement of public cooperation,

negotiations between state agencies and unions.

**REQUEST NOS. 1, 24**

In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence.

**REQUEST NOS. 3-14**

In addition, the State of California objects to these requests on the ground they are abusively drawn: they subject the responding party to undue burden, annoyance, oppression, and expense, and they fail to allow reasonable time for compliance. Further objection is made on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety.

**REQUEST NO. 15-18**

In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive,

confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety.

**REQUEST NO. 19**

In addition, the State of California objects to this request on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence.

**REQUEST NO. 20**

In addition, the State of California objects to these requests on the ground they are abusively drawn: they subject the responding party to undue burden, annoyance, oppression, and expense, and they fail to allow reasonable time for compliance. Further objection is made on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety.

**REQUEST NO. 21-23, 25-29**

In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting

minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive, confidential information which would constitute an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety.

**REQUEST NO. 30**

If the State is held not to be protected by sovereign immunity, the State will comply with this request, and will produce the vest to be viewed at a time that a mutually convenient for every one.

D.

SUBPOENA NAMING "CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATIONS" [Blaylock PMK, Prod. Date of August 16, 2006, in Sacramento]

General Objections Applicable to All PMK categories

1. The State of California is not subject to this discovery subpoena under the FRCP because it has not waived its sovereign immunity;

2. The subpoena is invalid because it was not accompanied by the appropriate witness fees, pursuant to Gov. Code § 68096.1, et seq.; failure to simultaneously the appropriate tender witness invalidates the subpoena;

3. The discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;

4. The burden or expense of the proposed discovery on the State of California, who has an interest in conserving scarce government resources, outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Compliance with this subpoena, where plaintiffs are seeking a tremendous number of C.D.C.R. agency documents, and demand the presence of dozens of agency employees at depositions, will measurably strain agency resources and divert agency personnel from their official duties.

5. The internal C.D.C.R. information sought by this subpoena are protected from disclosure by the "official information," "self-critical analysis," "state secrets," and "deliberative process" privileges because they relate to state interests which are usually protected by these privileges, e.g.,

institutional security, privacy rights of citizens and inmates, encouragement of public cooperation, negotiations between state agencies and unions. Legitimate interests of the State would be adversely affected by the release of this information.

**CATEGORY NOS. 1, 6, 18**

If the State is held not to be protected by sovereign immunity, the State will comply with these requests.

**CATEGORY NOS. 2, 4**

In addition, the State of California objects to these categories on the ground that inmate Blaylock's personal or private information concerning his education, medical history, criminal or employment records, finger and voice prints, photographs of his presence, institutional summaries, social history reports, progress reports, educational, vocational and diagnostic reports, as well as his medical, psychiatric and psychological reports, criminal intelligence information and information of clinical reports, are confidential, and their release would constitute an unwarranted invasion of his personal privacy. Finally, they do not describe with reasonable particularity the matters on which examination is requested.

**CATEGORY NOS. 3, 5, 7-13, 16-17**

In addition, the State of California objects to these categories on the ground they are abusively drawn: they subject the responding party to undue burden, annoyance, oppression, and expense, and they fail to allow reasonable time for compliance. Further objection is made on the ground the information requested is irrelevant to the remaining matters at issue in this litigation, and its production will not lead to the discovery of relevant evidence. In addition, the State objects to these categories on the ground they seek information contained in preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these categories impermissibly seek the production of information that reveals a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Further, they seek the release of sensitive, confidential information which would constitute

an unwarranted invasion of the state agencies' personnel's personal privacy, and which would endanger their safety. Finally, they do not describe with reasonable particularity the matters on which examination is requested.

**CATEGORY NOS. 14-15**

In addition, the State of California objects to these categories on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. These documents are protected from disclosure by the "official information," "state secrets," and "deliberative process" privileges because they relate to state interests which are usually protected by these privileges, e.g., institutional security, and privacy rights of citizens and inmates. Finally, they seek the production of sensitive, confidential information which would endanger the safety of the state agency's personnel, as well as that of the inmates.

**CATEGORY NO. 19**

In addition, the State of California objects to this category on the ground the information requested is irrelevant to the remaining matters at issue in this litigation, and it will not lead to the discovery of relevant evidence. Further objection is made on the ground this category does not describe with reasonable particularity the matters on which examination is requested. Finally, this category seeks the production of sensitive, confidential information which would constitute an unwarranted invasion of the defendants' personal privacy.

<u>General Objections Applicable to All Requests to Produce Documents</u>

1. The State of California is not subject to this discovery subpoena under the FRCP because it has not waived its sovereign immunity;

2. The subpoena is invalid because it was not accompanied by the appropriate witness fees, pursuant to Gov. Code § 68096.1, et seq.; failure to simultaneously the appropriate tender witness invalidates the subpoena;

3. The discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;

4. The burden or expense of the proposed discovery on the State of California, who has an interest in conserving scarce government resources, outweighs its likely benefit. Compliance with this subpoena, where plaintiffs are seeking a tremendous number of C.D.C.R. agency documents, and demand the presence of dozens of agency employees at depositions, will measurably strain agency resources and divert agency personnel from their official duties.

5. The internal C.D.C.R. documents sought by this subpoena are protected from disclosure by federal and state "official information," "self-critical analysis," "state secrets," and "deliberative process" privileges because they relate to state interests which are usually protected by these privileges, e.g., institutional security, privacy rights of citizens and inmates, encouragement of public cooperation, negotiations between state agencies and unions. Legitimate interests of the State will be adversely affected by the release of these documents.

6. This subpoena seeks information and documents, such as investigation reports not already produced by the parties in their disclosures in the hands of the District Attorney's Office, that pertain to pending criminal litigation to which the State of California is a party, and which cannot be released until the pending litigation or claim has been finally adjudicated or otherwise settled.

**REQUEST NOS. 1-7, 10-12, 21, 28**

In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. Further, the State objects on the ground that inmate Blaylock's personal or private information concerning his education, medical history, criminal or employment records, finger and voice prints, photographs of his presence, institutional summaries, social history reports, progress reports, educational, vocational and diagnostic reports, as well as his medical, psychiatric and psychological reports, criminal intelligence information and information of clinical reports, are confidential, and their release would constitute an unwarranted invasion of his personal privacy.

**REQUEST NOS. 8-9, 19**

Further objection is made on the ground the information and documents requested are

irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive, confidential information which would constitute an unwarranted invasion of the personal privacy of individuals that cooperated in the investigations in question.

**REQUEST NOS. 13-18, 31**

In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. Further, these requests impermissibly seek the production of sensitive, confidential information which would endanger the safety of State employees. These documents are protected from disclosure by the "official information," "state secrets," and "deliberative process" privileges because they relate to state interests which are usually protected by these privileges, e.g., institutional security, and privacy rights of citizens and inmates.

**REQUEST NOS. 20-22, 26-27**

In addition, the State of California objects to this request on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. In addition, the State objects to these requests on the ground they seek preliminary drafts, notes, or interagency or intra-agency memoranda, and the public interest in withholding those records clearly outweighs the public interest in disclosure. Further these requests impermissibly seek the production of documents that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy. Finally, they seek the production of sensitive, confidential information which would endanger the safety of the state agency's personnel.

**REQUEST NOS. 24-25**

In addition, the State of California objects to these requests on the ground they are abusively drawn: they subject the responding party to undue burden, annoyance, oppression, and expense, and they fail to allow reasonable time for compliance. Further objection is made on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. These documents are protected from disclosure by the "official information," "state secrets," and "deliberative process" privileges because they relate to state interests which are usually protected by these privileges, e.g., institutional security, and privacy rights of citizens and inmates. Finally, they seek the production of sensitive, confidential information which would endanger the safety of the state agency's personnel, as well as that of the inmates.

**REQUEST NO. 29**

In addition, the State of California objects to these requests on the ground the information and documents requested are irrelevant to the remaining matters at issue in this litigation, and their production will not lead to the discovery of relevant evidence. Further, they seek the production of sensitive, confidential information which would constitute an unwarranted invasion of the defendants' personal privacy.

**REQUEST NO. 30**

If the State is held not to be protected by sovereign immunity, the State will comply with this request, and will produce the documents requested, if any are in its possession.

DATED: August 4, 2006

Respectfully submitted,

BILL LOCKYER, Attorney General
of the State of California
DAVID ADIDA
Deputy Attorney General

By:_______________________

DAVID ADIDA
Attorneys for STATE OF CALIFORNIA

## PROOF OF SERVICE

Re: Estate of Manuel A. Gonzalez, Jr., et al. v. Roderick Q. Hickman, et al.
USDC (Central District) Case No. CV 05-00660 MMM (RCx)

I declare:

I am employed in the City of Los Angeles, County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is 300 S. Spring Street, Los Angeles, California 90013.

On **August 7, 2006,** I served the foregoing:

**WRITTEN OBJECTIONS TO SUBPOENAS SERVED JULY 24, 2006**

by placing a true copy thereof enclosed in a sealed envelope, addressed as follows:

MARK PEACOCK ESQ
LAW OFFICES OF MARK PEACOCK
5160 CAMPUS DR
NEWPORT BEACH CA 92660-2101

MICHAEL A BELL ESQ
LA FOLLETTE JOHNSON DE HAAS FESLER & AMES
3403 TENTH ST - STE 820
RIVERSIDE CA 92501-3670

ANTONIO J IBARRA ESQ
7211 PAINTER AVE
WHITTIER CA 90602

_X_ **BY MAIL:** I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at Los Angeles, California. I am readily familiar with the practice of the Office of the Attorney General for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection.

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

____ **BY OVERNIGHT MAIL:** I am readily familiar with the practice of the Office of the Attorney General for collection and processing of correspondence for overnight delivery and know that the document(s) described herein will be deposited in a box or other facility regularly maintained by United Parcel Service for overnight delivery.

____ **BY FACSIMILE:** I caused to be transmitted the document(s) described herein via the fax number(s) listed above.

____ **BY PERSONAL SERVICE:** I caused each such envelope to be hand delivered by Ace Messenger Service to the office of the addressee.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on **August 7, 2006,** at Los Angeles, California.

____________________
**C. Jones**

# EXHIBIT C

Date Transmitted: 2/1/2006 12:14:22 PM

5:05-CV-00660

John A Ferrone
Mark Peacock Law Offices
5160 Campus Drive
Newport Beach, CA 92660

Number of Pages: 33

***It is hereby certified that this document was served by first class mail postage prepaid or by fax or e-mail delivery to counsel (or parties) at their respective address or fax number or e-mail address of record.***

X Priority
X Send
Clsd
X Enter
JS-5/JS-6
JS-2/JS-3

FILED - WESTERN DIVISION
CLERK, U.S. DISTRICT COURT
JAN 30 2006
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT
FEB - 1 2006
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ESTATE OF MANUEL A. GONZALES, JR., by and through the executor, MANUEL A. GONZALES; GUSTAVO GONZALES, a minor by and through his Guardian ad Litem, TONIA CAUDRIA; MANUEL GONZALES III, a minor by and through his Guardian ad Litem, TONIA CUADRA; MARK GONZALES; STEVEN GONZALES,

Plaintiffs,

vs.

RODERICK Q. HICKMAN; JEANNE S. WOODFORD; SUZAN HUBBARD; JOHN DOVEY; WENDY STILL; LORI DI CARLO; CAROL RODDY; GREG MELLOTT; and DOES 1 through 200, inclusive,

Defendants.

CASE NO. ED CV 05-00660 MMM (RCx)

ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS; DISMISSING CLAIM AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES

On July 25, 2005, the Estate of Manuel A. Gonzales, Jr., by and through executor Manuel A. Gonzales, and decedent's sons, Gustavo Gonzales, Manuel Gonzales III, Mark Gonzales, and Steven Gonzales, filed this action against Roderick Q. Hickman, Jeanne S. Woodford, Suzan Hubbard, John Dovey, Wendy Still, Lori Di Carlo, Carol Roddy, Greg Mellott, and certain

21

unnamed defendants. Plaintiffs allege that defendants deprived Manuel A. Gonzales, Jr. of liberty without due process of law, in violation of his rights under the Fifth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. Plaintiffs seek compensatory damages of $50,000,000, plus costs of suit, attorneys' fees, and other appropriate relief.

On October 12, 2005, Hickman, Woodford, Hubbard, Dovey, and Still moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The remaining defendants – Di Carlo, Roddy, and Mellott – filed a Rule 12(b)(6) motion on November 22, 2005. Because the two motions are essentially identical, the court addresses them together in this order.

# I. FACTUAL BACKGROUND

## A. The Decedent And Parties To This Action

Until his death in January 2005,[1] Manuel A. Gonzales, Jr. was employed as a correctional officer at the California Institution for Men, Chino ("CIM").[2] Manuel A. Gonzales, decedent's father, is the executor of his estate.[3] Plaintiffs Gustavo Gonzalez and Manuel Gonzales III are decedent's minor sons, who sue through their guardian ad litem, Tonia Caudra.[4] Plaintiffs Mark Gonzales and Steven Gonzales are the adult sons of Manuel A. Gonzales, Jr.[5]

The complaint alleges that defendant Roderick Q. Hickman is, and was at all relevant times, Secretary of the California Youth and Adult Correctional Agency.[6] Defendants Jeanne S. Woodford, Suzan Hubbard, John Dovey, and Wendy Still are, and were at the relevant times,

---

[1]Complaint for Violation of Civil Rights 42 U.S.C. § 1983 ("Complaint"), ¶ 22.

[2]*Id.*, ¶ 4.

[3]*Id.*, ¶ 5.

[4]*Id.*, ¶¶ 6, 7.

[5]*Id.*, ¶¶ 8, 9.

[6]*Id.*, ¶ 10.

officers of the California Department of Corrections (the "CDC"). Woodford is Director of the CDC,[7] and Hubbard is the agency's Assistant Deputy Director.[8] Dovey is the CDC's Chief Deputy Director of Field Operations,[9] while Wendy Still is Regional Administrator of the Southern Region.[10] Defendants Lori Di Carlo, Carol Roddy, and Greg Mellott were, at all relevant times, wardens at CIM; Di Carlo held the position of Warden,[11] while Roddy and Mellott served as Chief Deputy Wardens.[12] The complaint alleges that defendants were "responsible for making official policy and for conducting, leading, supervising, administering, monitoring, commanding, overseeing and controlling the operation and management" of CIM.[13] It also alleges that they were "responsible for the safety and security of employees" at CIM.[14] Defendants are sued in both their individual and official capacities.[15]

**B. General Allegations**

On January 10, 2005, Manuel A. Gonzales, a Hispanic correctional officer, was fatally stabbed on Tier 1 of Sycamore Hall at CIM. Gonzalez's assailant was Jon Christopher Blaylock, an African-American inmate who had been housed in the institution's reception center for more than six months, awaiting permanent placement.[16] Defendants allegedly "participated in the

---

[7] *Id.*, ¶ 11.

[8] *Id.*, ¶ 12.

[9] *Id.*, ¶ 13.

[10] *Id.*, ¶ 14.

[11] *Id.*, ¶ 15.

[12] *Id.*, ¶¶ 16, 17.

[13] *Id.*, ¶¶ 10-17. The Doe defendants are also alleged to have been "responsible in some manner for the events and happenings" that caused damages to plaintiff. *Id.*, ¶¶ 18, 19.

[14] *Id.*, ¶ 20.

[15] *Id.*, ¶ 21.

[16] *Id.*, ¶ 22; see *id.*, ¶ 45.

classification, placement, incarceration, and . . . handling of [Blaylock,]" and "in the creation, development, promotion, encouragement, and advancement of . . . dangerous conditions" within the prison. Plaintiffs assert that defendants subjected Gonzalez to these dangerous conditions with deliberate indifference to his safety, "resulting in [his] tragic and unnecessary death on January 10, 2005."[17]

**C. Allegations Regarding Defendants' Knowledge Of Danger Posed By Blaylock**

Plaintiffs contend that defendants knew that Blaylock had violent propensities, had threatened Gonzalez's life, and was likely to assault and kill him, the correctional staff, or other inmates.[18] Specifically, they assert that defendants knew:

(a) That between 1990 and 1992, Blaylock served a 3-year term for robbery;

(b) That between 1993 and 2002, Blaylock served a 10-year term for robbery with a firearm, and that during his incarceration at California Men's Colony, he was found in to be possession of a weapon and transferred to California State Prison, Corcoran to serve an 1-month determinate sentence in the security housing unit;

(c) That Blaylock was considered a security threat, given an indeterminate sentence in the security housing unit, placed in a single cell on the walk-alone yard, and classified as a Level IV inmate with a custody point score of 376, requiring confinement in "a Level IV, 180-design prison – with external and internal armed coverage[,] the most secure configuration of the State's Level prisons";

(d) That in April 2002, Blaylock was transferred to the administrative segregation unit at California State Prison, Los Angeles and released on parole;

(e) That in August 2002, Blaylock was arrested for shooting a police officer after being stopped for a minor traffic infraction, convicted of attempted murder, and sentenced to a 75-year prison term;

(f) That on June 22, 2004, Blaylock arrived at the CIM reception center and was

---

[17] *Id.*, ¶¶ 23, 24.

[18] *Id.*, ¶¶ 25-29, 31.

placed in a general population cell at Sycamore Hall, where he stayed for nearly all of the seven months he spent at CIM;

(g) That on June 24, 2004, Blaylock was again classified as a Level IV inmate with 376 custody points, and designated as an inmate who required maximum custody;

(h) That on July 9, 2004, CIM received Blaylock's file, which clearly showed that he had been in and out of administrative segregation since 1990, due to his involvement in more than twenty incidents of misconduct, including incidents of violence directed at staff and inmates;

(i) That on July 27, 2004, CIM's medical department evaluated Blaylock for classification, and learned that he suffered from serious and persistent mental health conditions, which made him unfit to be housed in the general prison population;

(j) That on July 31, 2004, Blaylock was charged with assault following a violent altercation with another inmate, and placed in administrative segregation pending disciplinary action, and that on August 2, 2004, Blaylock was deemed to pose a threat to the security of the institution, correctional staff, and Gonzalez;

(k) That on August 4, 2004, CIM's Institutional Classification Committee elected to retain Blaylock in administrative segregation for the remainder of the disciplinary process and also raised his custody level to "MAX-S," or maximum security, single-cell custody;

(l) That on September 9, 2004, 362 protective vests were received and stored at CIM, one of which was specifically designated for Gonzalez, who had previously been fitted for the vest;

(m) That on September 22, 2004, the Institutional Classification Committee decided to release Blaylock to the general population, based on a reduced charge of mutual combat, and that at least one of the Committee members present had full access to Blaylock's medical information;

(n) That on September 25, 2004, the medical clearance necessary for Blaylock's transfer we completed;

(o) That on October 12, 2004, the Institutional Classification Committee Correctional Counselor I incorrectly filled out the reception center readmission summary, stating that Blaylock had been paroled with "close B custody," instead of the higher "MAX-S" custody, and omitting the July 31, 2004 incident from Blaylock's disciplinary history;

(p) That on November 17, 2004, the Institutional Classification Committee referred Blaylock's case to defendant Di Carlo, recommending that the case be referred to the Departmental Review Board for placement guidance;

(q) That on December 1, 2004, Blaylock appeared before the Unit Classification Committee for a special review, which referred the case to the Departmental Review Board with a recommendation that he be endorsed for California Medical Facility-III or California Men's Colony-E, both of which are Level III facilities that house only inmates having 51 custody points or less;

(r) That on December 2, 2004, a staff psychologist requested a referral to the Department of Mental Health for Blaylock;

(s) That on December 6, 2004, the Departmental Review Board's report was sent to the CDC headquarters, and that, at approximately the same time, Sycamore Hall was placed on a modified program with heightened security measures, after a piece of metal was discovered missing from a light fixture;

(t) That on December 19, 2004, a riot between black and Hispanic inmates broke out in Sycamore Hall, and that on December 20, 2004, a modified lockdown went into effect, which required that the black inmates be kept separate from white and Hispanic inmates;

(u) That on December 28, 2004, a correctional officer violated protocol by permitting a black inmate and white inmate to be in the same area, which resulted in the stabbing of the black inmate, that black inmates blamed the officer for the stabbing, and that they made an unreported threat to "get him"; and

(v) That on January 9, 2005, Blaylock became involved in a dispute with a correctional

officer and shouted, "Then you wonder motherfuckers get stabbed," a threat that was never reported.[19]

### D. Allegations Regarding Defendants' Deliberate Indifference And Creation Of Dangerous Conditions

#### 1. Alleged Placement Of Blaylock In General Population

Plaintiffs allege that defendants acted with deliberate indifference to the known and obvious danger posed by Blaylock when they placed him in the general prison population instead of a secure and isolated unit.[20] Plaintiffs contend that defendants had the information necessary to classify Blaylock properly as early as June 23, 2004, the day he arrived at CIM.[21] They assert that defendants ignored this information in violation of Title 15 of the California Code of Regulations, and placed Blaylock in general population, where he was permitted to have close contact with correctional officers and other inmates.[22] Plaintiffs allege "[t]hat defendants, and each of them, failed and refused to provide supervision, leadership, administration, management, direction, oversight, support, and input[ ] to the correctional staff and others at CIM with regard to [Blaylock] despite knowing of his history and violent propensities and [the] obvious need to . . . classify him [properly] and place . . . him in the appropriate housing." They assert defendants knew that this alleged failure and refusal "could (and did) result in the tragic and unnecessary death of decedent. . . ."[23]

Plaintiffs contend that defendants continued to act with deliberate indifference to Gonzalez's rights by keeping Blaylock in general population housing after they purportedly received information about his disciplinary history, prior classifications, past security housing

---

[19] *Id.*, ¶ 32.

[20] *Id.*, ¶¶ 41-58.

[21] *Id.*, ¶ 47.

[22] *Id.*

[23] *Id.*

placement, and crime of attempted murder of a police officer.[24] Given Blaylock's documented history and potential for violence, plaintiffs assert that defendants had an obligation to confine him in administrative segregation.[25] They contend that defendants refused to fulfill their duty in this regard, as the Institutional Classification Committee did not direct that Blaylock be placed in administrative segregation, despite having reviewed his file at least four times between August 4 and November 17, 2004, and the Unit Classification Committee committed the same error on December 1, 2004, although it had been tasked to find suitable placement for Blaylock.[26] As a result, plaintiffs assert, defendants knowingly subjected Gonzalez to dangerous conditions and acted with deliberate indifference to his constitutional rights.

**2. Alleged Refusal And Failure To Provide Protective Vest**

Plaintiffs also allege that defendants acted with deliberate indifference to Gonzalez's safety by failing and refusing to provide him with a protective vest, knowing that he had been specially fitted for a vest and that CIM had received a delivery of 362 vests on September 9, 2004.[27] Plaintiffs assert that defendants acted in reckless disregard of Gonzalez's well-being by keeping the vests in a warehouse for more than four months and making no effort to distribute the.[28] They also contend that defendants failed and refused to prepare required quarterly protective vest inventory reports, which would have ensured the timely distribution of the vests.[29] Plaintiffs assert that had the vests been made available, Gonzalez would have survived Blaylock's assault.[30]

---

[24] *Id.*, ¶ 48.

[25] *Id.*, ¶¶ 48-52.

[26] *Id.*, ¶¶ 54-58.

[27] *Id.*, ¶¶ 33-37, 40.

[28] *Id.*

[29] *Id.*, ¶ 39.

[30] *Id.*, ¶ 38.

**3. Alleged Designation Of Blaylock As A "Shot Caller"**

Plaintiffs next allege that CIM correctional officers improperly gave Blaylock authority and influence by designating him a "shot caller," i.e., a prisoner chosen to assist in controlling and leading other black inmates at CIM.[31] Plaintiffs contend that defendants knew of Blaylock's status as a "shot caller" and his influence among the inmates.[32] Despite this knowledge, defendants purportedly "failed and refused to provide leadership, supervision and support to line and supervisory staff as to the importance of carefully following prescribed classification regulations and procedures, including supervisory review of subordinates' work, using periodic audits by executive staff and progressive discipline to enforce compliance."[33] Plaintiffs assert that "such failure and refusal constituted participation in the creation of a dangerous condition," and that defendants "acted with deliberate indifference to the known and obvious dangers in subjecting [Gonzalez] . . . to" it.[34]

**4. Alleged Violations Of Rules, Policies, Procedures, And Protocols**

Plaintiffs also allege that defendants failed to provide leadership, supervision, and support to CIM correctional staff to ensure that rules, policies, procedures, and protocols were enforced.[35] They contend that post orders for Sycamore Hall, which were in effect after the riot of December 19, 2004, required:

(a) that the release of inmates from their cells be strictly limited;

(b) that a minimum of three cell/bed area searches for weapons and contraband be conducted;

(c) that correctional officers inform the next watch of any important occurrences;

---

[31] *Id.*, ¶ 30.

[32] *Id.*, ¶ 60.

[33] *Id.*, ¶¶ 59-60.

[34] *Id.*, ¶ 61.

[35] *Id.*, ¶ 62.

(d) that at least two officers participate in any entry of a tier;

(e) that the correctional sergeant and lieutenant for Sycamore Hall inspect all designated housing units on a frequent basis;

(f) that CIM supervisors review all incident reports and conduct all necessary investigations; and

(g) that the correctional sergeant sign the housing unit daily audit sheets after verification of the information.[36]

Plaintiffs assert that defendants knew these orders were being openly and habitually ignored and violated.[37] They allege that threats of violence against the correctional staff were not reported, that incidents of violence were not properly investigated, and that the requirements of the modified program and lockdown were not observed.[38] Purportedly due to lax controls and failure to conduct required cell searches, Blaylock was allegedly permitted to move about Sycamore Hall unsupervised, and was able to secure and hide a weapon.[39]

Plaintiffs contend that defendants Di Carlo, Roddy, Mellott, and Does 1 through 35 "failed and refused to monitor compliance with the directives specified in the modified program,"[40] and that defendants Hickman, Woodford, Still, Hubbard, Dovey, and Does 101 through 150 "failed and refused to provide supervision, leadership, administration, management, direction, oversight, support, and input to co-defendants."[41] They assert that in this manner, defendants created a dangerous condition and acted with deliberate indifference to Gonzalez's life and safety.[42]

---

[36] *Id.*

[37] *Id.*, ¶ 63.

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*, ¶ 65.

[42] *Id.*, ¶¶ 65, 66.

### 5. Allegations Regarding Decedent's Medical Care

The final set of allegations concerns the medical clinic at the CIM reception center, to which Gonzalez was transported after Blaylock stabbed him.[43] Plaintiffs allege that defendants knew that the medical clinic was not properly equipped, and that medical staff was not adequately trained to treat Gonzalez's wounds.[44] Specifically, they contend that defendants knowingly failed to ensure that emergency supplies were kept in the clinic's crash cart, that clinic personnel maintained certification in cardiovascular life support, and that protocols governing emergency medical procedures were established and followed.[45]

Plaintiffs assert that the lack of training and preparedness at the medical clinic was a dangerous condition created by defendants, and that defendants acted with deliberate indifference by subjecting Gonzalez to this condition.[46] They contend that defendants failed to provide the necessary policies, supplies, and supervision to ensure that Gonzalez received adequate medical care to save his life.[47]

## II. DISCUSSION

### A. Legal Standard Governing Motion To Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. FED.R.CIV.PROC. 12(b)(6). A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); see also *Moore v. City of Costa Mesa*, 886 F.2d 260, 262 (9th Cir. 1989). For this reason, a court should not

---

[43] *Id.*, ¶ 68.

[44] *Id.*, ¶¶ 68-70.

[45] *Id.*, ¶ 72.

[46] *Id.*, ¶ 69.

[47] *Id.*, ¶ 71.

dismiss a complaint if it states a claim under any legal theory, even if a plaintiff erroneously relies on a different theory. *Haddock v. Bd. of Dental Examiners*, 777 F.2d 462, 464 (9th Cir. 1985). Thus, a Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

In deciding a motion to dismiss for failure to state a claim, the court's review is generally limited to the contents of the complaint. See *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996); *Allarcom Pay Television, Ltd. v. General Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995). The court may also consider material that is properly submitted as part of the complaint. *Gumataotao v. Director of Dept. of Revenue and Taxation,* 236 F.3d 1077, 1083 (9th Cir. 2001); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555, n. 19 (9th Cir. 1990). The court must accept plaintiff's factual allegations as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995). It need not, however, accept as true legal conclusions cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

**B. Whether A Heightened Standard Of Pleading Applies**

Defendants argue that the complaint must be dismissed because it fails to satisfy the heightened pleading requirements set by the Ninth Circuit in *Branch v. Tunnell*, 937 F.2d 1382 (9th Cir. 1991), cert. denied, 512 U.S. 1218 (1994).[48] Specifically, defendants assert that plaintiff's § 1983 claim[49] lacks specific factual allegations regarding each defendant's personal

---

[48] *Id.*

[49] 42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a

involvement in the alleged deprivation of Gonzalez's constitutional rights.[50]

In *Branch v. Tunnell*, a person whose home and office had been searched as part of a government investigation brought a *Bivens* action against the special agent who had executed the warrant affidavit. *Id.* at 1382-84. The agent moved to dismiss the complaint on the ground of qualified immunity[51] under *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), arguing that the complaint lacked sufficient facts to establish a violation of plaintiff's statutory or constitutional rights. *Branch*, 937 F.3d at 1384. The district court denied the agent's motion for dismissal, reasoning that "[t]he defense of qualified immunity usually turns on the circumstances and motivations of the defendant and, therefore, ordinarily cannot support the grant of a Fed.R.Civ.P. 12(b)(6) motion . . . ." *Id.* The Ninth Circuit reversed, holding that under *Harlow*, "bare allegations of improper purpose are insufficient to subject government officials to discovery and the related burdens of defending a lawsuit." *Id.* at 1386. The court adopted a heightened pleading standard, which required that "plaintiffs . . . state in their complaint nonconclusory allegations setting forth evidence of unlawful intent" on the part of government officials in constitutional tort cases. *Id.* (citing *Whitacre v. Davey*, 890 F.2d 1168, 1171 (D.C. Cir. 1989), cert. denied, 497 U.S. 1038 (1990) ("The allegations of facts must be specific and concrete enough to enable the defendants to prepare a response, and where appropriate, a motion for summary judgment based on qualified immunity")).

Had this suit been filed ten years ago, the heightened pleading requirements of *Branch*

---

declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

[50]Defendants Hickman, Woodford, Hubbard, Dovey, and Still's Motion to Dismiss Plaintiffs' Claims, Pursuant to Fed. R. Civ. P. 12(b)(6), Memorandum of Points and Authorities ("Hickman Mot.") at 6; Defendants Lori Di Carlo, Carol Roddy and Gregory Mellott's Motion to Dismiss Plaintiffs' Claims, Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, Memorandum of Points and Authorities ("Di Carlo Mot.") at 7.

[51]While defendants refer to *Branch*, a case that deals with qualified immunity, they do not explicitly assert qualified immunity as a defense in their motions to dismiss.

would have been applicable. In 2002, however, the Ninth Circuit expressly overruled *Branch*, noting that intervening United States Supreme Court decisions had undermined the basis for its holding. See *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1123-25 (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164-169 (1993) (holding that courts cannot impose heightened pleading requirements for bringing § 1983 claims against municipalities, and that Rule 8(a)(2) of the Federal Rules of Civil Procedure controls); *Crawford-El v. Britton*, 523 U.S. 574, 595 (1998) (reiterating the Court's earlier refusal "to change the Federal Rules . . . [by] requiring pleading of heightened specificity"); and *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (rejecting a heightened pleading standard in Title VII cases, and stating "The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim")).

The Ninth Circuit observed that in response to *Crawford-El*, "nearly all of the circuits [had] . . . disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)." *Id.* at 1125 (citing, *inter alia*, *Currier v. Doran*, 242 F.3d 905, 916 (10th Cir.) ("We conclude that this court's heightened pleading requirement cannot survive *Crawford-El*"), cert. denied, 534 U.S. 1019 (2001); *Harbury v. Deutch*, 233 F.3d 596, 611 (D.C. Cir. 2000) ("The Supreme Court . . . held that plaintiffs making constitutional claims based on improper motive need not meet any special heightened pleading standard," citing *Crawford-El*), rev'd. on other grounds sub nom. *Christopher v. Harbury*, 536 U.S. 403 (2002); and *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998) ("Civil rights complaints are not held to a higher standard than complaints in other civil litigation," citing *Crawford-El*)). Concluding that *Branch* was fundamentally in conflict with the Supreme Court's subsequent decisions, other circuits' positions, and the "federal system of notice pleading" in general, the court declared that *Branch* was "no longer good law to the extent that [it] required heightened pleading of improper motive in constitutional tort cases." *Id.* at 1125.

As *Crawford-El* and *Galbraith* make clear, constitutional tort actions directed at state officials are governed by the notice pleading standard of Rule 8, not by the heightened requirements of Rule 9. So long as plaintiffs' complaint contains a "short and plain statement"

of a viable § 1983 claim of supervisory liability, defendants' motions to dismiss must be denied. FED.R.CIV.PROC. 8(a)(2).[52]

**B. Whether Plaintiffs Have Stated A § 1983 Claim Against Defendants In Their Official Capacities**

Paragraph 21 of the complaint alleges that defendants are sued "in both their individual and official capacities."[53] As the Supreme Court held in *Edelman v. Jordan*, 415 U.S. 651, 675 (1974), the Eleventh Amendment bars citizen suits against state officials in their official capacities, where, as here, the remedy sought is money damages, not prospective injunctive or declaratory relief.[54] See generally *Ex parte Young*, 209 U.S. 123 (1908); see also *Kentucky v.*

---

[52]Defendants Di Carlo, Roddy, and Mellott make two other preliminary arguments regarding the sufficiency of plaintiffs' § 1983 claim. They contend first that the complaint "necessarily fails to the extent that it seeks vindication of a perceived violation of § 1983, since there are no substantive rights created by § 1983." (Di Carlo Mot. at 6.) They also assert that the complaint must be dismissed to the extent that plaintiffs seek damages for violations of California law. (*Id.* at 7.) These arguments are without merit. The complaint states, in the first paragraph, that the "Cause of Action arises under 42 United States Code Section 1983 and the Fifth and Fourteenth Amendments of the United States Constitution." (Complaint, ¶ 1.) As the remaining allegations make apparent, Gonzalez's rights under the Due Process Clause supply the substantive content of plaintiffs' § 1983 claim. As for the references to California law, while the complaint alleges that defendants violated certain state regulations by, *inter alia*, misclassifying Blaylock, it does not appear that plaintiffs seek damages for violations of state regulations. Rather, they reference the violations as evidence of defendants' creation of a dangerous condition and deliberate indifference to Gonzalez's safety.

[53]Complaint, ¶ 21.

[54]Defendants have not asserted the defense of sovereign immunity. The court may raise the issue *sua sponte*, however, as it concerns the court's jurisdiction to hear plaintiffs' § 1983 claim. See *In re Jackson*, 184 F.3d 1046, 1048 (9th Cir. 1999) ("Neither party has discussed or raised the Eleventh Amendment sovereign immunity issue this case presents, but we must resolve that issue before we reach the merits of this case. Eleventh Amendment sovereign immunity limits the jurisdiction of the federal courts and can be raised by a party at any time during judicial proceedings or by the court *sua sponte*" (citations omitted)). Because the State of California has not unequivocally expressed its consent to federal jurisdiction in this case, the court finds that the sovereign immunity defense has not been waived. See *id.* at 1048-49 ("Unlike other jurisdictional limitations, Congress can abrogate Eleventh Amendment sovereign immunity through the Fourteenth Amendment and states can waive their Eleventh Amendment sovereign immunity and

*Graham*, 473 U.S. 159, 165-66 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'. . . It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself (citations and footnote omitted)); *Cardenas v. Anzai*, 311 F.3d 929, 934 (9th Cir. 2002) ("A state's sovereign immunity from suit in federal court normally extends to suits against its officers in their official capacities," citing *Natural Res. Def. Council v. Cal. Dep't. of Transp.*, 96 F.3d 420, 421-22 (9th Cir. 1996); and *Blaylock v. Schwinden*, 862 F.2d 1352, 1353-54 (9th Cir. 1988) ("Thus, a suit against state officials that seeks the payment of retroactive money damages, to be paid from the state treasury, is barred by the eleventh amendment as a suit against the state. On the other hand, an action against a state official sued in his individual, rather than his official or representational, capacity is not barred by the eleventh amendment" (citations omitted)).

The court therefore dismisses plaintiffs' § 1983 claim against defendants in their official capacities with prejudice. The remainder of the order will consider only whether plaintiffs have adequately alleged a substantive due process claim under § 1983 against defendants in their individual capacities.

### C. Whether Plaintiffs Have Stated A § 1983 Claim Against Defendants In Their Individual Capacities

"To establish that a state official is personally liable in an action under 42 U.S.C. § 1983, a plaintiff must show that the official, acting under color of state law, caused the deprivation of

---

consent to federal jurisdiction. . . . Despite its narrow language, the Eleventh Amendment bars suits in federal court against a state and its agencies brought by its own citizens and citizens of other states. The State of California has not made a general waiver of its Eleventh Amendment sovereign immunity, and will only be deemed to have done so in this case if it has unequivocally expressed its consent to federal jurisdiction" (citations omitted)). Accordingly, the Eleventh Amendment bars plaintiffs' claim against defendants in their official capacities.

a federal right." *Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005) (internal quotations omitted); see *Graham*, 473 U.S. at 166 ("On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right," citing *Monroe v. Pape*, 365 U.S. 167 (1961)); *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989), cert. denied, 498 U.S. 938 (1990). An official deprives a plaintiff "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978); see also *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

**1. State-Created Danger Theory**

In *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), the Supreme Court held:

> "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *Id.* at 195.

Under *DeShaney*, state officers have no constitutional duty to protect members of the general public from violent crimes perpetrated by private parties, and cannot be held liable for a failure to do so. See *id.* at 202 ("Because, as explained above, the State had no constitutional duty to protect Joshua against his father's violence, its failure to do so – though calamitous in hindsight – simply does not constitute a violation of the Due Process Clause"); *Kennedy v. City of Ridgefield*, 411 F.3d 1134, 1142 (9th Cir. 2005) ("Since the Due Process Clause does not require the state to provide its citizens with a minimum level of security, it follows that the state cannot be held liable for failing to do so"); *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir.

2001) ("The *DeShaney* decision absolves public officials of individual section 1983 liability for failure to protect citizens"); *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992) ("*Grubbs I*") ("As a general rule, members of the public have no constitutional right to sue state employees who fail to protect them against harm inflicted by third parties" (citations omitted)).

The Ninth Circuit has recognized two key exceptions to the *DeShaney* rule, however. First, "[u]nder the 'special relationship' doctrine, the state can be held liable for a third party's harm where the state has custody over the plaintiff." *Kennedy*, 411 F.3d at 1142. "Under this exception, 'when the State takes a person into its custody and holds him there against his will, the Constitution imposes some responsibility for [that person's] safety and general well-being.'" *Id.* (quoting *Wang v. Reno*, 81 F.3d 808, 818 (9th Cir. 1996)); see also *DeShaney*, 489 U.S. at 199-200. This "special relationship" exception is inapplicable here, since Gonzalez, although killed in prison, was not himself in the state's custody. See *Waller v. Trippett*, 49 Fed.Appx. 45, 49 (6th Cir. Oct. 10, 2002) (holding that the "special relationship" exception did not apply where a food service steward was stabbed and killed by an inmate, because the decedent "was simply an employee of the state working at [the correctional facility], and an employment relationship is consensual").

The second *DeShaney* exception is the "state-created danger" doctrine. "Under this theory, plaintiffs can recover 'when a state officer's conduct places a person in peril in deliberate indifference to their safety.'" *Kennedy*, 411 F.3d at 1142 (quoting *Penilla v. City of Huntington Park*, 115 F.3d 707, 709 (9th Cir. 1997)); see, e.g., *Munger v. City of Glasgow*, 227 F.3d 1082, 1087 (9th Cir. 2000) (holding that police officers could be held liable under the state-created danger doctrine for the death by hypothermia of a visibly drunk patron, wearing only a T-shirt and jeans, whom they ejected from a bar on a bitterly cold night); *Grubbs I*, 974 F.2d at 120 (holding that state employees could be liable for the rape of a registered nurse assigned to work alone in the medical clinic of a medium-security custodial institution that housed a violent sex offender); *Wood*, 879 F.2d at 588 (holding that there was a genuine issue of fact as to whether a state trooper "acted with deliberate indifference to Wood's interest in personal security under the Fourteenth Amendment" when he left her stranded late at night in a high-crime area, and she

was raped after accepting a ride from a passing car).

To establish that an officer is liable for harm done by a third person under the state-created danger theory, plaintiff must show: (1) "that the officer[s'] actions created or increased the danger facing him or her"; and (2) "that the state official acted with deliberate indifference to a known or obvious danger." *Kennedy*, 411 F.3d at 1142; *L.W. v. Grubbs*, 92 F.3d 894, 896 (9th Cir. 1996) ("*Grubbs II*") ("We have not deviated from the principle that deliberate indifference on the part of the responsible official, to the safety of employees in the presence of known danger, created by official conduct, is sufficient to establish a due process violation under Section 1983 for injury caused in part by a state created danger"). Unlike the special relationship exception, the state-created danger doctrine does not require that plaintiff show the victim was in state custody at the time of the alleged constitutional violation. See *Grubbs I*, 974 F.2d at 122 (holding that "custody is not a prerequisite to the 'danger creation' basis for a section 1983 third party harm" (citations omitted)).

**2. Whether Plaintiffs Have Sufficiently Alleged That Defendants' Conduct Was Directed At Gonzalez**

Defendants contend that the complaint must be dismissed because, even assuming the truth of plaintiffs' allegations, they do not show that defendants directed their conduct specifically at Gonzalez. Defendants assert that plaintiffs complain of policies and decisions that affected all of the correctional officers employed at CIM equally.[55] They argue that if such "general workplace policy decisions" are actionable under the Fourteenth Amendment, the state-created danger exception to *DeShaney* will swallow the general rule announced in *Collins v. Harker Heights*, 503 U.S. 115 (1992). That case held that "the Due Process Clause is not a guarantee against incorrect or ill-advised personnel decisions . . . nor does it guarantee municipal employees a workplace that is free of unreasonable risks of harm." *Id.* at 129.[56]

Plaintiffs counter that it is sufficient, under the state-created danger theory, for the victim

---

[55]Hickman Mot. at 9; Di Carlo Mot. at 10.

[56]Hickman Mot. at 11; Di Carlo Mot. at 10-11.

to be a member of a defined group that is subjected to a serious risk of harm as a result of defendants' conduct; they contend the theory does not require that defendants' conduct be targeted exclusively or specifically at the victim.[57] Plaintiffs assert that Gonzalez was a member of a specific and limited group – CIM correctional officers whose fitted protective vests were withheld. Citing *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995), they contend that allegations that "defendant[s] acted with reckless indifference to this definable group and consciously increased the dangers to that group should be sufficient for liability to attach."[58]

In *Collins*, 503 U.S. 115, the Supreme Court considered whether § 1983 "provides a remedy for a municipal employee who is fatally injured in the course of his employment because the city customarily failed to train or warn its employees about known hazards in the workplace." *Id.* at 117. The case concerned an employee who entered a manhole to unstop a sewer line, and died of asphyxia while underground. *Id.* The decedent's wife sued the city, alleging that it had violated her husband's "constitutional right to be free from unreasonable risks of harm . . . and . . . from the city of Harker Heights' custom and policy of deliberate indifference toward the safety of its employees" by failing, *inter alia*, to provide safety equipment and warnings. *Id.* Plaintiff asserted that the city was on notice of the dangers posed by the manholes because her husband's supervisor had become unconscious in a manhole several months earlier. *Id.* at 118 n. 1.

The Court held that plaintiff had no remedy under § 1983 because the city's alleged failures did not violate the decedent's substantive due process rights. *Id.* at 117. It noted that municipalities cannot be held liable under § 1983 "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 121 (quoting *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 (1978)). They can be held liable, however, "for constitutional violations resulting from [a] failure to train municipal employees" so long as

---

[57]Opposition to Motion to Dismiss [Hickman, et al.] (Pls.' Hickman Opp.") at 12; Opposition to Motion to Dismiss [Di Carlo, et al.] ("Pls.' Di Carlo Opp.") at 12.

[58]*Id.*

the failure to train amounts to "deliberate indifference" to the rights of persons with whom the employees come into contact. *Id.* at 122-24 (citing *Canton v. Harris*, 489 U.S. 378, 388 (1989)). With these principles in mind, the Court considered plaintiff's factual allegations, which advanced two theories: (1) "that the Federal Constitution imposes a duty on the city to provide its employees with minimal levels of safety and security in the workplace;" and (2) "that the city's 'deliberate indifference' to Collins' safety was arbitrary government action that must 'shock the conscience' of federal judges." *Id.* at 126.

The Court held that the first theory did not state a substantive due process claim, since it did "not charge the city with a *willful* violation of Collin's rights," but alleged more generally that "the city deprived him of life and liberty by failing to provide a *reasonably* safe work environment." *Id.* at 125-26 (emphasis added) (noting that plaintiff did "not even allege that [the decedent's] supervisor instructed him to go into the sewer than the supervisor knew or should have known that there was a significant risk that he would be injured"). Citing *DeShaney*, the Court held that the Due Process Clause could not be read so expansively as to impose an affirmative duty on the city to ensure the security of its employees against all unreasonable risks of harm. *Id.* at 126. It rejected plaintiff's second liability theory for similar reasons, noting that the city's alleged failure to train or warn its employees was a claim of negligence and did not rise to the level of "deliberate indifference." *Id.* at 128. The Court cautioned that "the Due Process Clause should [not] be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law," especially in the case of municipal governments, since "[d]ecisions concerning the allocation of resources to individual programs, . . . such as the training and compensation of employees, involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country." *Id.* at 128-29 (citations omitted).

*Collins* holds that "a substantive due process violation must be more than an ordinary tort to be actionable under § 1983." *Uhlrig*, 64 F.3d at 573. It does not, however, stand for the proposition that public employees are barred from asserting state-created danger claims against their employers by virtue of their voluntary association with the government. To the contrary,

*Collins* states that a person's status as a public employee "is not of controlling significance." *Collins*, 503 U.S. at 119; see *id.* at 120 (". . . [T]he Equal Protection and Due Process Clauses of the Fourteenth Amendment, and other provisions of the Federal Constitution afford protection to employees who serve the government as well as those who are served by them, and § 1983 provides a cause of action for all citizens injured by an abridgment of those protections. Neither the fact that petitioner's decedent was a government employee nor the characterization of the city's deliberate indifference to his safety as something other than an 'abuse of government power' is a sufficient reason for refusing to entertain petitioner's federal claim § 1983").

As the Ninth Circuit explained in *Grubbs I*, a government employee – like any citizen – can plead a § 1983 claim under the state-created danger theory so long as the complaint alleges that defendants "took affirmative steps to place [the employee] at significant risk, and that they knew of the risks." *Grubbs I*, 974 F.2d at 122 (distinguishing *Collins* because the plaintiff in that case failed to allege that her husband's supervisor knew of the significant risks involved, and rejecting the defendants' argument that the plaintiff's claim was barred under *Collins* because of her status as a state employee). While "[s]omething more than an ordinary tort is required," factual allegations showing "official deliberate indifference in creating the danger" will suffice to survive a motion to dismiss. *Id.* at 122-23.

The *Grubbs II* court did not explicitly require that defendants' affirmative act of deliberate indifference be directed specifically at the victim to the exclusion of other employees. Rather, discussing the showing of culpability required under the state-created danger theory, the court cited the Tenth Circuit's opinion in *Uhlrig*, 64 F.3d at 574. This opinion holds that five elements must be shown for the state-created danger theory to apply: "'(1) [Plaintiff] was a member of a limited and specifically definable group; (2) Defendants' conduct put [Plaintiff] and the other members of that group at substantial risk of serious, immediate and proximate harm; (3) the risk was obvious or known; (4) Defendants acted recklessly in conscious disregard of that risk; and (5) such conduct, when viewed in total, is conscience shocking.'" *Grubbs II*, 92 F.3d at 898 (quoting *Ulhrig*, 64 F.3d at 574). While the *Grubbs II* court found the "conscience shocking" requirement "troubling," it generally approved of the *Uhlrig* test, noting that it "helps round out

a theory of liability that trial judges and juries can apply to narrowly defined, government created, known, and disregarded, hazards of the workplace." *Id.*; see also *Jensen v. City of Oxnard*, 145 F.3d 1078, 1083 (9th Cir. 1998) (holding that the wife of a police officer, a member of the SWAT team who was killed by his sergeant's friendly fire during a raid, had adequately stated a state-created danger claim against police officials by alleging that they exposed members of the SWAT team to a significant risk by assigning the sergeant to the team, "knowing that he . . . us[ed] mind-altering drugs"). As these cases indicate, the danger-creation exception is available to a victim who, though not singled out, is a member of a defined group that is subjected to significant danger by defendants' affirmative act of deliberate indifference.[59]

Plaintiffs' complaint adequately alleges that Gonzalez was a member of a limited and definable group – i.e., CIM correctional officers who were exposed to Blaylock in the general population area. It can also be read as asserting that Gonzalez belonged to a smaller group of Hispanic correctional officers, who were allegedly subjected to even greater danger following the December 19, 2004 prison riot. Consequently, defendants' argument that the complaint must be dismissed because it does not allege facts showing that their conduct was directed specifically at Gonzalez fails.

### 3. Whether Plaintiffs Have Sufficiently Alleged An Affirmative Act By Defendants That Created The Dangerous Condition

Defendants next assert that the complaint fails to state a claim under the state-created

---

[59]"In determining whether the plaintiff has successfully stated a due process violation" under the state-created danger theory, the Ninth Circuit considers, as one factor in the analysis, "whether the act was directed toward a specific plaintiff or the public at large." *Kennedy*, 411 F.3d at 1146, 1151 (Bybee, J., concurring in part and dissenting in part) (citing *Wood*, 879 F.2d at 590); but see *Huffman*, 147 F.3d at 1061 & n. 4 (declining to decide whether "the danger created by a state official [must be] directed toward a particular plaintiff, as opposed to being directed toward the general public"). This factor is not controlling here, since decedent was neither an anonymous member of the general public, nor the only person allegedly subjected to the dangerous conditions described in the complaint. *Wood* (and Judge Bybee's opinion in *Kennedy)* are not inconsistent with *Grubbs II*, as both require that plaintiff or plaintiff's decedent have some relationship with the defendant state actors that sets him or her apart from members of the general public.

danger theory because it does not allege that they acted affirmatively to create a dangerous condition.[60]

To prevail on a state-created danger claim, plaintiff must show that defendants acted affirmatively to place the victim in danger. See *Grubbs I*, 974 F.2d at 121 ("The 'danger creation' basis for a claim . . . necessarily involves *affirmative* conduct on the part of the state in placing the plaintiff in danger" (emphasis added)). The name of the doctrine moreover, is something of a misnomer. Liability is not restricted to situations where state actors *create* a danger; rather state actors who act affirmatively to *increase* an existing risk of danger, and thus place a victim in greater peril than he would have been had they not acted at all, can also be held liable. See, e.g., *Kennedy*, 411 F.3d at 1143 ("Shields's affirmative actions placed the Kennedy family in *a situation of danger greater than they would have faced had he not acted at all.* Shields does not dispute that the revelation to Michael Burns's mother of the allegations of sexual abuse against Michael Burns triggered his actions against Plaintiff and her husband. In revealing the existence of allegations against Michael to Angela Burns after having promised Kennedy that he would notify her first, Shields created a situation of heightened danger. It was inevitable that Michael Burns would eventually learn of the allegations made against him, and he would likely infer who had made them" (emphasis added)); *Monfils v. Taylor*, 165 F.3d 511, 520 (7th Cir. 1998) (holding that the evidence was sufficient for the jury to conclude that a deputy police chief placed an anonymous informant in a position of danger greater than he would otherwise have faced, in violation of the informant's substantive due process rights, by not preventing the release of a tape recording of the informant's tip; the deputy chief knew of the increased danger and assured the assistant district attorney that he would make sure the tape was not released, but did not follow through); *Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997) ("The officers in this case allegedly took affirmative actions that significantly increased the risk facing Penilla: they cancelled the 911 call to the paramedics; they dragged Penilla from his porch, where he was in public view, into an empty house; they then locked the door and left him there alone.

---

[60]Hickman Mot. at 11-13; Di Carlo Mot. at 12-14.

And they allegedly did so after they had examined him and found him to be in serious medical need. The cause of Penilla's death is a factual issue, undeveloped on this record. The officers' alleged conduct, however, clearly placed Penilla in *a more dangerous position than the one in which they found him*" (emphasis added)); see also *Grubbs I*, 974 F.2d at 121 (holding that there was a state-created danger where state actors "create[d] an opportunity for [the inmate] to assault [the plaintiff] that would not otherwise have existed").

While it is sufficient for plaintiffs to allege that defendants took affirmative acts that exacerbated an existing danger or created an opportunity for Blaylock to attack Gonzalez, they cannot base their state-created danger claim on allegations of negligence, failures to act, or failures to interfere. See *Pena v. DePrisco*, 432 F.3d 98, 110 (2d Cir. 2005) ("It is clear from the cases, we think, that to the extent that the plaintiffs allege merely that the individual defendants failed to intercede on the day of the accident, their complaints do not involve sufficient affirmative acts to violate substantive due process rights. Similarly, to the extent that the plaintiffs allege that Grey's supervisors 'stood by and did nothing' to punish Grey's previous misconduct, we think those allegations are also inadequate to state a substantive due process claim. A failure to interfere when misconduct takes place, and no more, is not sufficient to amount to a state created danger. Under *DeShaney*, 'allegations that the defendant officers merely stood by and did nothing' are insufficient to state a constitutional violation" (citations omitted)); *Currier v. Doran*, 242 F.3d 905, 919 (10th Cir. 2001) ("The danger creation theory, however, focuses on the affirmative actions of the state in placing the plaintiff in harm's way. Plaintiffs cannot rely on Defendants' failure to intervene once custody was given to Vargas to state a danger creation claim if the Defendants' affirmative conduct in placing the child with Vargas does not satisfy the . . . danger creation requirements"); *Grubbs II*, 92 F.3d at 898 ("gross negligence is not sufficient to establish a due process violation based on a state created danger to employees"); *Majors v. City of Oakland*, No. C 05-00061 CRB, 2005 WL 2216955, * 4 (N.D. Cal. July 25, 2005) ("The Oakland Police Department might have understood that taking no action to break up the disruption in the church could have left plaintiffs in danger; however, their refusal to act is not an affirmative creation of an already-existing danger. Plaintiffs have not alleged any actions or

statements the police took to create or increase the threats or danger to them; instead, the police simply refused to act").

Plaintiffs' allegations regarding defendants' conduct fall into five broad categories: (1) placement of Blaylock in the general prison population; (2) failure and refusal to provide Gonzalez with a protective vest; (3) failure and refusal to provide supervision, administration, and support to the correctional staff to make sure that Blaylock was not given authority as a "shot caller"; (4) failure and refusal to provide supervision, administration, and support to the correctional staff to ensure that security protocols and procedures – and in particular, the modified program and modified lockdown directives – were enforced; and (5) failure to equip the medical clinic and train the medical staff adequately. With the exception of the first category, the "acts" plaintiffs allege are omissions, i.e., failures to act or intervene. Inserting the word "refusal" following the word "failure" does not transform an omission into an affirmative act.[61]

Without any underlying factual allegations of an affirmative act, the conclusory statement that defendants "created" a dangerous condition is inadequate. See *Pinder v. Johnson,* 54 F.3d 1169, 1175-76 & n. * (4th Cir. 1995) ("No amount of semantics can disguise the fact that the real 'affirmative act' here was committed by Pittman, not by Officer Johnson. As was true in *DeShaney*, the state did not 'create' the danger, *it simply failed to provide adequate protection from it*. In both cases, '[t]he most that can be said of the state functionaries . . . is that they stood by and did nothing when suspicious circumstances dictated a more active role for them.' Pinder's case is purely an omission claim. . . . While it is true that inaction can often be artfully

---

[61]Citing *Hooker v. Dep't. of Transp.*, 27 Cal.4th 198, 212 n. 4 (2002), plaintiffs argue that a refusal to act can be affirmative. (Pl.'s Opp. at 11-12). The *Hooker* Court stated: "Such affirmative contribution need not always be in the form of actively directing a contractor or contractor's employee. There will be times when a hirer will be liable for its omissions. For example, if the hirer promises to undertake a particular safety measure, then the hirer's negligent failure to do so should result in liability if such negligence leads to an employee injury." *Hooker* is inapposite, as it was not a § 1983 action. Rather, the Court there addressed state tort law, which is not directly applicable to § 1983 claims. See *Collins*, 503 U.S. at 128 ("[T]he Due Process Clause should [not] be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law").

recharacterized as 'action,' courts should resist the temptation to inject this alternate framework into omission cases by stretching the concept of 'affirmative acts' beyond the context of immediate interactions between the officer and the plaintiff").

The complaint does allege two affirmative acts that created or increased the risk of danger to Gonzalez, however. It pleads that defendants improperly assigned Blaylock to a general population cell upon his arrival at CIM,[62] and that they returned Blaylock to the general prison population after he was detained in administrative segregation for purportedly assaulting another inmate.[63] Plaintiffs contend that Blaylock's misclassification and improper placement created a dangerous condition.[64] See *Grubbs I*, 974 F.2d at 122 (stating that the element of an "affirmative act" was satisfied where a female prison employee alleged that defendants selected an inmate who wa a known sexual offender to work alone with her in the medical clinic, since the allegation, if established, would show that defendants "used their authority as state correctional officers to create an opportunity for [the inmate] to assault [her] that would not otherwise have existed"). Plaintiffs' allegations regarding improper classification and placement sufficiently plead affirmative acts by defendants that may have created or exacerbated a dangerous condition. To the extent defendants' motions to dismiss are based on plaintiffs' failure to allege an affirmative

---

[62]Complaint, ¶ 24 ("[D]efendants, and each of them, participated in the classification, placement, incarceration, and over all handling of [Blaylock] as described throughout this complaint"), ¶ 47 (". . . [Blaylock] was inappropriately placed in general population, allowing him to leave his cell for meals and to come into closer contact with other inmates and correctional officers and staff, and in particular, [Officer Gonzalez]. . . . [D]efendants, and each of them, were well aware that California Code of Regulations, Title 15 and all known and applicable rules, policies, procedures and protocols relating to classification and housing (placement) were mandatory and that violating said rules, policies, procedures and protocols would result in inappropriately placing [Blaylock] in general population (instead of administrative segregation) and that as a result they were creating dangerous conditions and were acting with deliberate indifference to decedent. . .").

[63]*Id.*, ¶ 51 ("[O]n September 22, 2004 CIM's Institutional Classification Committee met to consider whether [Blaylock] should continue in administrative segregation. . . . [T]he CIM Classification Committee . . . released him back into the general population").

[64]*Id.*, ¶ 47.

act creating or increasing danger, therefore, they are denied.

**4. Whether Plaintiffs Have Sufficiently Alleged That Defendants' Conduct Harmed Gonzalez**

Defendants also challenge the complaint on the ground that plaintiffs have not alleged facts that might show their alleged conduct proximately caused Gonzalez's death.[65] To prevail "[i]n a section 1983 action, the plaintiff must demonstrate that the defendant's conduct was the actionable cause of the claimed injury. To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." See *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 216 F.3d 764, 783 (9th Cir. 2000) (citations omitted); see *Arnold v. Int'l Business Machines, Inc.*, 637 F.2d 1350, 1355 (9th Cir. 1981) ("The causation requirement of sections 1983 and 1985 is not satisfied by a showing of mere causation in fact. Rather, the plaintiff must establish proximate or legal causation" (citation omitted)). "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson*, 588 F.2d at 743-44; *Arnold*, 637 F.2d at 1355 (quoting *Johnson*); *Gini v. Las Vegas Metro Police Dep't.*, 40 F.3d 1041, 1044 (9th Cir. 1994) (quoting *Johnson* and *Merritt v. Mackey*, 827 F.2d 1368, 1371 (9th Cir. 1987)).

Questions of causation often involve factual disputes, which cannot be resolved by the court on a motion to dismiss or even on a motion for summary judgment. See *Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 34 F.3d 753, 756 (9th Cir. 1994) ("[A] question of causation is preeminently a question of fact, to be decided after trial"); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 770 (9th Cir. 1981) ("Causation is generally a question of fact for the jury, unless the proof is insufficient to raise a reasonable inference that the act complained

---

[65] Hickman Mot. at 13-15; Di Carlo Mot. at 14-16.

of was the proximate cause of the injury" (internal citation and quotation omitted)).[66]

Plaintiffs allege that housing Blaylock in the general population area permitted "him to leave his cell for meals and to come into closer contact with other inmates and correctional officers and staff and in particular, [Officer Gonzalez]." They also allege that the placement "result[ed] in [Gonzalez's] tragic and unnecessary death."[67] These statements adequately allege a causal link between defendants' purported conduct and the claimed deprivation of Gonzalez's substantive due process rights.

Additionally, the complaint adequately alleges each defendant's involvement in the purported constitutional deprivation. Plaintiffs allege that each defendant "was responsible for making official policy and for conducting, leading, supervising, administering, monitoring, commanding, overseeing and controlling the operation and management of" CIM.[68] They also allege that each defendant "participated in the classification, placement, incarceration, and [overall] handling of Blaylock," and that each was "well aware [that Blaylock] was likely to assault and kill" Gonzalez.[69] This suffices to plead that each defendant was personally involved in the violation or that there is a sufficient causal connection between his or her wrongful conduct and the violation. See *Neiberger v. Hawkins*, 6 Fed. Appx. 683, 688 (10th Cir. Mar. 8, 2001) (Unpub. Disp.) ("Defendants also urge dismissal by reading the plaintiffs' complaint as based on respondeat superior liability rather than actual participation in the violation. We are not persuaded. The complaint contains sufficient facts for establishment of defendants' personal

---

[66]The cases defendants cite regarding the causation prong of the state-created danger doctrine involve appeals from orders granting summary judgment, final judgments or verdicts. See, e.g., *Lawrence v. United States*, 340 F.3d 952, 957 (9th Cir. 2003) (appeal from summary judgment); *Huffman*, 147 F.3d 1054 (appeal from judgment on a jury verdict); *Van Ort v. Estate of Stanewich*, 92 F.3d 831 (9th Cir. 1996) (appeal from granting of motion for judgment as matter of law).

[67]Complaint, ¶ 47.

[68]*Id.*, ¶¶ 10-17.

[69]*Id.*, ¶¶ 24-25.

liability. There are several allegations relating to defendants' knowledge of the improper treatment at CMHI-P, their acquiescence in such treatment, and their supervisory roles over the implementation and administration of care at CMHI-P. These allegations do not focus on respondeat superior liability but, rather, would place responsibility for the alleged constitutional violations on the defendants[ ] directly in light of their participation in the establishment of plaintiffs' and other patients' treatment programs and overall living conditions at CMHI-P"); see generally *Menotti v. City of Seattle*, 409 F.3d 1113 (9th Cir. 2005) ("'Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others,'" quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991)); *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001) ("Generally, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability under 42 U.S.C. § 1983. . . . A supervisor may be liable under § 1983 only if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation," quoting *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citations and internal quotation marks omitted)).

### 5. Whether Plaintiffs Have Sufficiently Alleged That Defendants' Actions Were Deliberately Indifferent To A Known And Obvious Danger

Finally, defendants argue that the complaint is deficient because it is devoid of any factual allegations that might establish they acted with deliberate indifference.[70] To be held liable on plaintiffs' § 1983 claim, each defendant must have acted with deliberate indifference, i.e., with conscious disregard for the consequences of his or her actions. See *Kennedy*, 411 F.3d at 1143 ("'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions.'" (quoting *Bryan County v. Brown*,

[70]Hickman Mot. at 15-18; Di Carlo Mot. at 16-19.

520 U.S. 397, 410 (1997)); *Grubbs II*, 92 F.3d at 900 ("Only if the state official was deliberately indifferent does the analysis then proceed further to decide whether the conduct amounts to a constitutional violation. We have not added a requirement that conscience of the federal judiciary be shocked by deliberate indifference, because the use of such subjective epithets as 'gross,' 'reckless,' or 'shocking' sheds more heat than light on the thought processes courts must undertake in cases of this kind"). Like causation, deliberate indifference is predominantly a factual issue. See *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1194-95 (9th Cir. 2002) ("Whether a local government has displayed a policy of deliberate indifference to the constitutional rights of its citizens is generally a jury question"); *Wood*, 879 F.2d at 588 n. 4 ("A jury presented with these facts might find Ostrander's conduct to have been 'deliberately indifferent,' 'reckless,' 'grossly negligent,' or merely 'negligent'"); *Fargo v. City of San Juan Bautista*, 857 F.2d 638, 641 (9th Cir. 1988) ("When reasonable persons may disagree as to whether particular conduct constitutes negligence, gross negligence or recklessness, the question is one of fact to be decided by a jury" (footnote omitted)).

In their complaint, plaintiffs allege that each defendant had actual knowledge of Blaylock's violent propensities and history of administrative segregation. Plaintiffs also allege that defendants deliberately and recklessly disregarded the obvious risk of danger he posed when they assigned Blaylock to general population housing and continued him there.[71] Based on these factual allegations, plaintiffs assert that defendants acted with deliberate indifference to Gonzalez's life and safety.[72] This adequately pleads the element of deliberate indifference. See *Hearns v. Terhune*, 413 F.3d 1036, 1041-42 (9th Cir. 2005) (holding that allegations, *inter alia*, that prison

---

[71]Complaint, ¶ 48 ("[D]efendants, and each of them, were well aware of additional, pertinent information regarding [Blaylock's] violent propensities and general background which became available after he was initially incarcerated on June 23, 2004. . . . [D]espite this, defendants, and each of them, continued to assign [Blaylock] to the general population and . . . such conduct continued the creation of said dangerous conditions and defendants, and each of them, acted with deliberate indifference in repeatedly subjecting decedent, [Correctional Officer Manuel A. Gonzalez Jr.] to it").

[72]*Id.*

officials knew that Muslim inmates had previously attacked plaintiff and yet left in the chapel with those inmates unsupervised "were sufficient to raise an inference that the prison officials acted with deliberate indifference, or knew that Hearns faced a substantial risk of serious harm and 'disregard[ed] that risk by failing to take reasonable measures to abate it'"); *Harter v. Budge*, 119 Fed. Appx. 96, 97 (9th Cir. Dec. 6, 2004) (Unpub. Disp.) (allegations that unidentified prison guards allegedly left a prisoner alone in an unlocked room where he was attacked by other inmates sufficiently pleaded a deliberate indifference claim); *Freeman v. Lane*, No. 86 C 2584, 1986 WL 12830, * 3 (N.D. Ill. Nov. 10, 1986) ("The court finds that with respect to O'Leary the complaint pleads the element of deliberate indifference. The complaint alleges that O'Leary told the gang leaders of Stateville that the plaintiff was an informant with respect to the escape. That allegation along with the allegation that O'Leary acted with 'deliberate indifference to and reckless disregard of plaintiff's safety' is sufficient"); see also *Kennedy*, 411 F.3d at 1143-44 (holding that there was sufficient evidence of deliberate indifference where "the obvious consequence of informing Angela Burns prior to the Kennedy family and of falsely assuring the Kennedy family of police protection was to increase the risk the Kennedy family faced from Michael Burns"); *Wood*, 879 F.2d at 588 ("In the present case, the facts put in issue by Wood – that Ostrander arrested the driver, impounded the car, and left Wood by the side of the road at night in a high-crime area show an assertion of government power which, according to Wood's version of the case, tends to show a disregard for Wood's safety amounting to deliberate indifference"); *Rutledge v. Springborn*, 836 F.Supp. 531, 538 (N.D. Ill. 1993) (inmate's evidence that prison officials placed him in protective custody to reveal his identity as an informant and subject him to increased danger was sufficient to create a triable issue of fact respecting deliberate indifference); compare *Coyne v. Cronin*, 386 F.3d 280, 288-89 (1st Cir. 2004) ("Although the complaint alleges plenty of facts, it does not even hint at a suggestion that Cronin acted with deliberate indifference towards [inmate informer] Coyne's well being. Insofar as Coyne's due process claim is based on [the theory that FBI agent Cronin violated his rights prior to learning that his letter to the FBI had been forwarded to another inmate] . . . Coyne has not alleged facts from which one might infer either that (1) Cronin deliberately caused Coyne's role as a government informant to be revealed

to the prison community (e.g., by intentionally forwarding the letter), or (2) Cronin knew that there was a substantial risk that Coyne would be so exposed as a result of the ruse and disregarded that risk (e.g., by telling Coyne to mail his letter to an assistant with a known track record of botching confidential communications and then by failing to supervise that assistant)"). Accordingly, the court denies defendants' motions to dismiss on this ground.

## III. CONCLUSION

For the reasons stated, plaintiffs' § 1983 claim against defendants in their official capacities is dismissed with prejudice. The court denies the motions to dismiss the § 1983 claim against defendants in their individual capacities. Defendants are directed to answer the complaint within ten days.

DATED: January 23, 2006

Margaret M. Morrow
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE