IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ESTATE OF MANUEL A.
GONZALEZ JR., et al.,

        Plaintiffs,                           MISC. NO. S-06-0095 MCE GGH

    vs.

RODERICK Q. HICKMAN, et al.,

        Defendants.                       ORDER

_____/

        Previously pending on this court's law and motion calendar for October 19, 2006, was plaintiffs' motion to compel compliance with subpoenas, filed September 7, 2006. Mark Peacock and Theresa Barta appeared for plaintiffs. Paul Epstein represented defendants Hickman, Woodford, Hubbard, Dovey, Still and the California Department of Corrections and Rehabilitation ("CDCR").[1] Michael Bell appeared telephonically on behalf of defendants DiCarlo, Roddy and Mellott. Having reviewed the joint stipulation and heard oral argument, the court now issues the following order.

BACKGROUND

        The case underlying the instant motion is proceeding in the Central District. The estate of Manuel Gonzalez seeks damages for his death while serving as a correctional officer at

---

[1] The CDCR is not a party to the underlying action.

1

the California Institution for Men ("CIM"). Plaintiffs claim that defendants acted with deliberate indifference in classifying and housing a dangerous inmate, Jon Blaylock, who stabbed and killed Gonzalez, that defendants refused to supply Gonzalez with a protective vest which had been individually fitted and issued for him four months earlier, and that defendants instituted operational and security policies and procedures at CIM which created a dangerous risk leading to this incident. Defendants claim that they acted appropriately and that Gonzalez's death occurred because he failed to follow written policy at CIM at the time of his murder.

The instant miscellaneous action was initiated so that plaintiffs could serve subpoenas on the CDCR which is based in Sacramento. The subpoenas seek responsive documents pertaining to classification and housing of Blaylock at CIM, security policies and procedures, and information relating to the vests ordered for Officer Gonzales but not provided to him. Judge Morrow recently extended the discovery cutoff in case number CV05-0660 MMM (Rcx) to December 29, 2006.

DISCUSSION

I. Sovereign Immunity

Plaintiffs seek to compel state officials to produce documents. Defendants claim sovereign immunity as a means by which to avoid this discovery subpoena. According to plaintiffs, the subpoenas in this case were served on the CDCR rather than the agency official in charge, at the invitation of defendants. At least initially, the court will review the matter as a motion to enforce subpoenas against a state agency.

Defendants have cited United States v. James, 980 F.2d 1314 (9th Cir. 1992), a case in which the Ninth Circuit found that the district court had properly quashed a subpoena issued to a tribe to produce documents on the basis of tribal (sovereign) immunity. The subpoena in James had been served on a tribal official in his capacity as an official of the tribe. The James case would seem closely analogous to the situation presented here– a state agency which has Eleventh Amendment immunity based on its status as a sovereign state within our

1  system of federalism.  The case is troubling, as it did not appear to distinguish in the slightest a
2  subpoena matter from an actual suit; however, it remains the law of the Ninth Circuit at least for
3  sovereign Indian tribes.  See also Bishop Paiute Tribe v. County of Inyo, 291 F.3d 549 (9th Cir.
4  2002), *vacated and remanded on other grounds*, 538 U.S. 701, 123 S.Ct. 1887 (2003)
5  (reaffirming James); Quair v. Bega, 388 F.Supp.2d 1145, 1147 (E.D. Cal. 2005) (noting
6  decisions in the Ninth Circuit supported lack of waiver of tribal immunity, citing James and
7  granting tribe's motion to quash subpoenas).
8      Plaintiffs' cited case, Laxalt v. C.K. McClatchy, 109 F.R.D. 632 (1986), held that
9  sovereign immunity does not authorize the state government to refuse to provide discovery on the
10 basis of immunity.² In a case where the Nevada's State Gaming Control Board was subpoenaed
11 to provide documents in a civil lawsuit, the district court, without reference to James,
12 distinguished discovery from claims:

> It is clear that the Eleventh Amendment establishes that a federal
> court has no jurisdiction over any lawsuit against a state.  However,
> it has been construed to refer to assertions of liability on the state's
> part and claims for relief against it. [citations omitted] In *Florida
> Dept. Of  State v. Treasure Salvors Inc.*, 458 U.S. 670, 699, 102
> S.Ct. 3304, 3322...the plurality approved the service of process on
> state officials to secure possession of artifacts held by them.  The
> analogy to the instant proceedings, where inspection and copying
> of State records is all that is being sought, is apparent.

18 Id. at 634-635.
19      The undersigned has performed a good bit of research in addition, and cannot find
20 further on point authority involving requested discovery on a non-party state or state agency in
21 addition to that set forth above.  Nevertheless, the court is bound by James in this regard, and
22 finds that to the extent that the subpoenas at issue were directed to a state or state agency,
23 sovereign immunity initially precludes their enforcement.

---

² Plaintiffs also cite Exxon Shipping Co.v. U.S. Dep't of Interior, 34 F.3d 774 (9th Cir. 1994); however, that case is essentially focused on separation of powers. Id. at 778.

1 However, the undersigned also finds that the State has waived its sovereign immunity with respect to subpoenas propounded "by *any* court or other tribunal."  Cal. Govt. Code § 68097.1(b) (stating (emphasis added), "[w]henever *any* other state employee or any employee of the trial courts is required as a witness before *any court* or other tribunal in *any civil action* or proceeding in connection with a matter, event, or transaction concerning which he or she has expertise gained in the course of his or her duties, a subpoena requiring his or her attendance may be served by delivering a copy either to the person personally ...."  If sovereign immunity is waived by the state for testimony, it would also extend to subpoenas duces tecum, as a custodian of records could be required to testify regarding documents, a matter with which the employee will have gained expertise on account of his or her duties.  Nothing in the state statute precludes such document subpoenas from being the subject of response.

Eleventh Amendment "sovereign immunity" is not an easy nut to crack for litigants asserting a waiver of such immunity.  A court may  " 'find waiver only where stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction' " (quoting Edelman v. Jordan, 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (alteration in original))).  <u>Hibbs v. Department of Human Resources</u>, 273 F.3d 844, 851 (9th Cir. 2001).  By use of the word "any" in describing the court and action in which state officials could be compelled to testify, even including non-court tribunals, the only implication fairly drawn is that "any" actually meant any, to include, of course, federal courts.  Section 68907.1 continues: "As used in this section and in Sections 68097.2 and 68097.5, "tribunal" means any person or body before whom or which attendance of witnesses may be required by subpoena, including an arbitrator in arbitration proceedings."  Again, the state has indicated unequivocally that it is willing to have its employees subject to subpoenas in *any* legal proceedings.  Therefore, sovereign immunity has been waived.

1    The undersigned finds a second reason why Eleventh Amendment sovereign
2 immunity will not bar discovery herein. Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441 (1908),
3 holds that suits for injunctive relief against state officers who allegedly violate federal law are not
4 precluded by the Eleventh Amendment. This exception to the Eleventh Amendment is only
5 possible where the officers themselves are named, rather than the state or its agencies. This
6 dichotomy of avoiding sovereign immunity if the state were to be sued by the expedient of
7 naming state officials is now beyond question. Remaining to be decided here is whether such a
8 rubric can be used in a federal law question case where the state officials are not a party.

9    Although the official capacity claims have been previously dismissed, the court at
10 hearing suggested substituting the name of the state official instead of the CDCR on the
11 subpoenas so that the issue of sovereign immunity would be in the proper procedural posture vis
12 a vis Ex Parte Young. After much discussion, the court determined to make the ministerial
13 correction of substituting the Director of the CDCR as the official who had been served with the
14 subpoenas in his official capacity which is in essence service on the State of California, in order
15 to save the time it would take for plaintiffs to go out and re-serve the subpoenas with this name
16 change and then have to return to court with their motion. Therefore the court will adjudicate the
17 instant motion as if the state official had been served with the subpoenas instead of the state.

18    This court can discern no meaningful difference between a suit seeking injunctive
19 relief requiring a state official to act, and the instant case seeking a state official to produce
20 documents. If this were a suit against CDCR officials in their official capacities, discovery
21 would be appropriate under this exception. Therefore, the fact that the instant proceeding is only
22 a miscellaneous case and the main case is in another district is not a reason on which to base a
23 distinction. The fact that the official capacity claims were dismissed in the underlying action
24 does not change the result. Here, it is proper for plaintiffs to serve the instant subpoenas on the
25 state officials in their official capacities in order to obtain documents controlled by the state. In
26 U.S. v. Juvenile Male 1, 431 F. Supp.2d 1012, 1016 (D. Az. 2006), the court acknowledged it

was bound by James, but distinguished that case because the defendant in James had not raised constitutional challenges to the claim of immunity as had the Juvenile Male 1 defendant. Furthermore, the court emphasized that James acknowledged that immunity did not extend to individual members of the tribe, which was a technicality that had to be followed. Id. at 1018. The court stated that it would reject James if it could and explained in dicta,

> And the states of the Union enjoy immunity from suit without their consent. But it can hardly be contended that federal or state sovereign immunity from suit has any application to the enforcement of a federal subpoena on the custodian of records of a state or federal agency. Federal subpoenas routinely issue to state and federal employees to produce official records or appear and testify in court and are fully enforceable despite any claim of immunity.

Id. at 1016, 1018.

While the undersigned is not free to reject James, and has not, James can be limited to its facts, i.e., the case involved Indian sovereign immunity as opposed to Eleventh Amendment state immunity for which the rubric of proceeding against state officials in their official capacity has been recognized.

After the hearing, plaintiffs filed a supplemental declaration, pointing out that the individual defendants' previously filed summary judgment motion introduces "uncontroverted facts" supported by evidence submitted in support which pertains to the same subject matter that is sought by the instant subpoenas. Plaintiffs now argue that defendants waived their sovereign immunity as to documents disclosed in the main action. Defendants filed objections. The undersigned need not rule on this contention in that it has found discovery appropriate in general despite assertions of sovereign immunity for the above reasons.

II. Documents and Testimony Regarding Protective Vests

Plaintiffs have described 29 sought documents pertaining to the issue of protective vests that were ordered and procured for Gonzales and other correctional officers that would have saved his life on January 29, 2005 because they were stab resistant. Plaintiffs contend that on

1  September 9, 2004, 362 such vests were delivered to CIM, and that one of them had been
2  specifically fitted for Officer Gonzalez.  Plaintiffs claim that these vests were still in the
3  warehouse at CIM when Gonzalez was stabbed, and that defendants' actions were deliberate in
4  increasing Gonzalez's risk of harm because they were in the warehouse for such a long period of
5  time.

6         The trial court (Hon. Margaret Morrow) has spoken on this issue in ruling on
7  defendants' motion to dismiss.  Exhibit C to Joint Statement, at pp. 23-25.  In connection with
8  the claims at issue, the court held that the Due Process Clause of the Fourteenth Amendment
9  required an affirmative act to place a victim in danger or increase a risk of danger, and that
10 failure to act or failure to interfere does not constitute an affirmative act.  The court found only
11 two affirmative acts alleged in the complaint, that defendants improperly assigned Blaylock to
12 general population on arrival at CIM, and that they returned him to the general population after
13 he was detained in administrative segregation for assaulting another inmate.  Id. at 26.

14        At hearing, plaintiffs made a convincing argument that the failure to issue a
15 protective vest may yet prove to be an affirmative act.  If discovery shows that there was an intent
16 not to distribute the vests for a reason which supports plaintiffs' theory of due process violation,
17 that intent may be revealed in discovery showing an affirmative decision or act.  Furthermore, the
18 trial court's ruling was based on the complaint which requires only notice pleading.  Plaintiffs'
19 theory was not required to be fleshed out at that stage of the proceedings.  Based on the record
20 presented to the undersigned, it is possible that discovery may produce protective vest evidence
21 which comports with the district court's legal requirement of an affirmative act.  Therefore,
22 plaintiffs are permitted discovery in this area.[3]

23    III.  Defendants' Employment Records

---

[3]The court would not permit plaintiffs to simply fish for documents regarding the vests in the absence of any information indicating a possibility that the requisite information is available. Plaintiffs asserted sufficient facts to make the undersigned believe plaintiffs were not simply guessing that relevant information (as defined by the trial judge) existed.

7

1  The subpoena also seeks portions of each individual defendant's employment and
2  personnel files, including summaries of all hours worked, disciplinary reports, EMIS reports
3  (notices of adverse action), supervisory file, CDCR 1123 Employee Counseling Record,
4  Rainbow Sheets, attendance record, summary of their personnel assignments, and training
5  records.  Exh. A to Joint Statement, Attachment: Exh. "1," item 19; Attachment: Exh. "2," item
6  29.  The parties agree that any portions produced should be subject to a stipulated protective
7  order which is being lodged with Judge Morrow.

8  Plaintiffs claim the information sought is relevant, and they have narrowed the
9  scope so that personal information is not included to the extent possible.  Defendants claim
10 privacy over the personnel records which they assert includes unlisted addresses and phone
11 numbers, marital status, wage information, medical information, credit history, work related
12 information unrelated to these claims, salary, salary increases, promotions, bonuses, employee
13 benefits, awards, financial matters, medical/health matters, marital/familial matters, and other
14 personal and/or confidential matters.

15 The CDCR, as custodian of its employees' personnel records, has standing to
16 assert its employees' privacy rights.  Cook v. Yellow Freight System, Inc., 132 F.R.D. 548, 551,
17 n. 2 (E.D. Cal.1990).  However, as this court has previously concluded, "the compelling interest
18 analysis, as applied to complex privacy issues, is overly restricting" in the discovery context.
19 Rather, the following factors must be considered: "(1) the probable encroachment of the
20 individual's privacy right if the contested action is allowed to proceed, and the magnitude of that
21 encroachment; (2) whether the encroachment of the privacy right would impact an area that has
22 traditionally been off limits for most regulation; (3) whether the desired information is available
23 from other sources with less encroachment of the privacy right; (4) the extent to which the
24 exercise of the individual's privacy rights impinge on the rights of others; and (5) whether the
25 interests of society at large encourage a need for the proposed encroachment."  Pagano v.
26

Oroville Hospital, 145 F.R.D. 683, 698–699 (E.D. Cal. 1993).[4]

Defendants Di Carlo, Roddy and Mellott do not object to producing portions of their personnel files which pertain to their training, knowledge and experience as employees of CDCR, complaints made against them in this capacity, or any action taken in connection with their status as employees or officials, including facts and circumstances pertaining to the death of Correctional Officer Gonzalez. Therefore, these defendants shall produce such documents.

Analysis of these factors in the present case demonstrates that disclosure of the contested information would (1) encroach upon the privacy rights of individual high ranking officials located in Sacramento in a significant way without any foreseeable relevance to the underlying action which concerns acts at CIM; the factual context in this case is fairly unique, and the undersigned cannot conceive of how one's personnel file could reasonably contain infromation pertinent to this unique factual situation (2) although disclosure of personnel information of high ranking prison officials is not necessarily as intrusive as it would be for individuals in more private capacities, the fact remains that the information sought must at least be relevant to plaintiffs' claims, and most if not all of these files would not likely lead to admissible evidence; (3) the requested information is otherwise available through depositions where specific information can be obtained without invading privacy rights, and without the overbreadth and relevance problems involved in the files; (4) nondisclosure would not unreasonably foreclose plaintiffs' efforts to prosecute their case which can be achieved through more specific questions at deposition; and (5) disclosure does not necessarily further the interests of society at large where the prison has a qualified need to ensure security at prison facilities, as well as ensure employees and their families receive protection from inmates who may become aware of their private information. These factors do not support disclosure of the information sought.

---

[4] Contrary to the *ipse dixit* assertions of several district courts, Pagano has never been expressly, or impliedly overruled by any higher authority.

Defendants raised the issue of disclosure of administrative budget materials at the hearing. This category of documents is item number 20 of the documents requested in regard to Fed. R. Civ. P. 30(b)(6). Because this category was not raised in the joint statement, it will not be addressed.

To the extent disclosure has been agreed to by the Di Carlo, Roddy, and Mellott defendants, it shall be subject to the safeguards of the stipulated protective order filed in the Central District action.

### IV. Witness Fees

Plaintiffs contend that defendants are demanding witness fees for each designee appearance, pursuant to Cal. Govt. Code §§ 68096.1 and 68097.2. If, with respect to the sovereign immunity issue, the court had ruled solely on grounds that the State had waived its sovereign immunity, the issue would be a complex one. A waiver of sovereign immunity may be conditioned and such conditions must be observed. Hodge v. Dalton, 107 F.3d 705 (9th Cir. 1997. Cal. Govt. Code section 68097.2 appears sequentially with section 68097.1 and would be considered a condition of permitting state employees to be subpoenaed. However, because the court has found the requested discovery appropriate under the Ex parte Young rubric as well, only federal law need be followed. Plaintiffs are only obligated to pay witness fees as required under Federal law and have already done so.

### CONCLUSION

Accordingly, IT IS ORDERED that plaintiffs' motion to compel compliance with subpoenas, filed September 7, 2006, is granted in part and denied in part. Defendants shall produce documents in accordance with the terms of this opinion within ten days of this order.

DATED: November 6, 2006

                                              s/s Gregory G. Hollows
                                              GREGORY G. HOLLOWS
                                              U. S. MAGISTRATE JUDGE

GGH:076/Gonzalez0095.sbp.wpd